IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **UNITED CANVAS & SLING, INC.,** *et al.* | ) | Case No. 20-30781 |
| | ) | Jointly Administered[1] |
| | ) | |
| Debtors. | ) | |

## DISCLOSURE STATEMENT

Dated:  Charlotte, North Carolina
        November 5, 2020

Moon Wright & Houston, PLLC
Andrew T. Houston (Bar No. 36208)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for the Debtors*

---

[1] The following debtors' cases are being jointly administered: United Canvas & Sling, Inc. (Case No. 20-30781), Schwartz Family Properties North Carolina, LLC (Case No. 20-30782), and Rounders Pit Foam, LLC (Case No. 20-30783).

# ARTICLE I
## INTRODUCTION AND OVERVIEW

### A.      GENERAL

On August 25, 2020, United Canvas & Sling, Inc. ("UCS"), Rounders Pit Foam, LLC ("RPF"), and Schwartz Family Properties North Carolina LLC ("SFP," and together with UCS and RPF, the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court").   The Debtors continue in possession of their properties and the management of their business as "debtors in possession" pursuant to, among other provisions, sections 1107 and 1108 of the Bankruptcy Code.   The Honorable J. Craig Whitley, United States Bankruptcy Judge, has presided over this chapter 11 case (the "Chapter 11 Case") since its inception.

The Debtors have filed a Joint Plan of Reorganization (the "Plan"). The Plan sets forth the proposed reorganization of the Debtors' chapter 11 estates (the "Estates") and the proposed distributions to creditors (collectively, the "Creditors") of the Estates.  A copy of the Plan is attached as Exhibit A to this Disclosure Statement (the "Disclosure Statement").

Pursuant to § 1126 of the Bankruptcy Code, the Debtors are soliciting acceptances of the Plan from the Classes of Claims entitled to vote on the Plan.  This Disclosure Statement is submitted pursuant to § 1125 of the Bankruptcy Code in order to provide information of the kind necessary to enable a hypothetical reasonable investor to make an informed judgment in the exercise of his/her/its right to vote on the Plan.

### B.      PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement is provided in order to permit eligible parties to make an informed decision in voting to accept or reject the Plan.  The Disclosure Statement is presented to all Creditors in order to satisfy the requirements of section 1125 of the Bankruptcy Code.  Section 1125 requires a disclosure statement to provide information sufficient to enable a hypothetical and reasonable investor, typical of the Creditors, to make an informed judgment whether to accept or reject the Plan.  This Disclosure Statement may not be relied upon for any purpose other than that described above.  This Disclosure Statement and the Plan are an integral package, and they must be considered together for the reader to be adequately informed.

No representations concerning the Debtors or their property are authorized other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance of the Plan other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the Debtors, who shall in turn deliver such information to the Bankruptcy Court for such action as may be appropriate.

The information contained in this Disclosure Statement, including the information contained in any exhibits attached hereto, has not been subject to an audit or independent review.  Accordingly, the Debtors are unable to warrant or represent that the information concerning the Debtors or their financial condition is accurate or complete.  Any projected information contained in this Disclosure Statement has been presented for illustrative purposes only.  Because of the uncertainty and risk factors involved, the Debtors' actual results may not be as projected.

Although an effort has been made to be as accurate as possible under the circumstances, the Debtors do not warrant or represent that the information contained in this Disclosure Statement is correct. The Disclosure Statement contains only a summary of the Plan. Each Creditor who is entitled to vote on the Plan is urged to review the Plan in its entirety prior to casting its vote.

The statements contained in this Disclosure Statement are made as of the date the Disclosure Statement is filed unless another time is specified. The delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts set forth since the filing of the Disclosure Statement. Schedules of the assets and liabilities of the Debtors as of the Petition Date (collectively, as may be amended from time to time, the "Schedules") are on file with the Clerk of the Bankruptcy Court and may be inspected by interested parties during regular business hours.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities law or other applicable nonbankruptcy law. Entities holding or trading in or otherwise purchasing, selling, or transferring claims against, or interests in, the Debtors should evaluate this Disclosure Statement only in light of the purpose for which it was prepared. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission nor has the commission passed upon the accuracy or adequacy of the statements contained herein.

The Honorable J. Craig Whitley will hold a hearing on confirmation of the Plan (the "Confirmation Hearing") at the United States Bankruptcy Court, Charles Jonas Federal Building, 401 West Trade Street, Courtroom 1-4, Charlotte, North Carolina on December 17, 2020 at 9:30 a.m. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of Creditors, and will review the ballot report concerning votes cast for acceptance and rejection of the Plan.

## C.    OVERVIEW OF THE DEBTORS AND THE PLAN

### 1.    *Description of the Debtors*

The United Canvas & Sling business was originally founded in 1967 by the Schwartz family as a New Jersey corporation. In 2007, UCS became a North Carolina corporation. The company has an over 50-year history as the preeminent American manufacturer of athletic facility equipment. The company manufactures sporting and athletic equipment, primarily for track and field, speed and strength training, gymnastics and climbing.

The company has established a worldwide brand and reputation for its high quality, customized products that continue to be respected for their durability, longevity, and engineering centered around high performance and safety. The company is well known for being awarded the exclusive contract to supply the track and field equipment for the 1984 Olympic Games in Los Angeles, as well as subsequent Olympics in Barcelona, Seoul, and Sydney.

The company moved it operations to North Carolina in approximately 2004. Debtor UCS is currently headquartered in Gaston County, North Carolina. Debtor RPF is a small related family business that was formed in 2010. RPF makes pit foam for training gymnasts and action sports athletes. Debtors UCS and RPF both operate from a manufacturing facility located in Lincolnton, North Carolina. The manufacturing facility is owned by Debtor SFP. UCS currently employs 65 employees, many of which have been employed by the company for over ten years.

The Debtors are affiliates through common ownership by the Schwartz family. Debtor UCS is a North Carolina corporation. Lawrence "Larry" Schwartz owns 50% of the stock of UCS. The Estate of Jeffrey Schwartz owns 50% of the stock of UCS. Larry Schwartz and the late Jeffrey Schwartz were brothers.[2]

Debtor RPF is a North Carolina limited liability company. The Estate of Jeffrey Schwartz owns 50% of the membership interests in RPF. Larry Schwartz owns 25% of the membership interests in RPF. Jason Schwartz and Zachary Schwartz each own 12.5% of the membership interests in RPF. Jason Schwartz and Zachary Schwartz are Larry Schwartz' sons.

Debtor SFP is a North Carolina limited liability company. The Estate of Jeffrey Schwartz owns 50% of the membership interests in SFP. Larry Schwartz owns 37.5% of the membership interests in SFP. Jason Schwartz owns 12.5% of the membership interests in SFP.

## 2.      *Reasons for the Chapter 11 Filing*

Prior to the petition date, Aquesta Bank (the "Bank" or "Aquesta Bank") made four loans to certain of the Debtors. The prebankruptcy debt structure is fairly complicated and intertwined because the prebankruptcy loan documents included, among other things, inter-affiliate guarantees, cross-default provisions, and cross-collateralization provisions. In pertinent part, the Bank made three (3) loans to UCS on February 27, 2018 and May 9, 2018, respectively, in the original aggregate principal amount of $1,445,000 (the "Operating Loans"). In connection with the Operating Loans, UCS executed commercial security agreements granting the Bank a lien on, among other things, inventory, equipment, and accounts receivable.

The Operating Loans to UCS were guaranteed by, among others, debtor RPF. RPF is an affiliate of UCS through partial common ownership. In addition, the Bank made a loan to SFP on May 9, 2018 in the original stated principal balance of $3,760,000.00 (the "SFP Loan," and together with the Operating Loans, the "Bank Loans"). Upon information and belief, the purpose of the SFP Loan was to refinance the existing indebtedness encumbering the manufacturing facility. The SFP Loan was guaranteed by, among others, debtors RPF and UCS. RPF and UCS are affiliates of SFP through partial common ownership.

In May 2019, the Bank, the Debtors and the individual guarantors entered into a Modification Agreement regarding the foregoing loans that, among other things, contained cross collateralization and cross-default provisions. In addition, the Modification Agreement provided that SFP would guarantee the debts owed by UCS to the Bank.[3]

On December 17, 2019, the Bank filed an action against the Debtors in Gaston County Superior Court seeking the appointment of a Receiver for the Debtors in the case captioned *Aquesta Bank v. Schwartz Family Properties North Carolina, LLC et al.*, Case No. 19-CVS-5137. The same day, the Superior Court of Gaston County entered the *Consent Order Appointing Receiver* and appointed ABTV Receivership Services, LLC ("ABTVRS") as the Receiver for the Debtors. ABTVRS implemented several measures that stabilized the operations of debtor UCS and it is currently operating as a profitable going concern in spite of the global coronavirus pandemic.

---

[2] The company was originally founded by Jeffrey Schwartz and Lou and Margaret Schwartz (Jeffrey and Larry Schwartz's parents).

[3] The foregoing recitation is only intended as a summary of the loan documents and transactions and it is not intended as an admission about the validity, priority or extent of any lien asserted by the Bank. Nor is it intended as an admission about the amount of any debt owed by the Debtors to the Bank.

After stabilizing the operations of the company, the Receiver was investigating various options for restructuring the company's debts for the benefit of all stakeholders. Before the Receiver had a complete picture of all reasonable restructuring options, on Friday August 14, 2020, the Bank demanded the immediate shut down of the Debtors and a forced liquidation of their assets.

The Receiver did not believe that the forced liquidation of the Debtors was the best way to maximize the value of their businesses or its assets for the benefit of all stakeholders. Accordingly, each Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code to prevent the forced liquidation of their assets in order to maximize the value of their assets for all stakeholders.

### 3.    The Debtor's Summary of the Plan and Disclosures regarding Plan Feasibility

Pursuant to the terms of the Plan, and as specifically discussed in Articles 2 & 3 of the Plan, the Debtors intend to make distributions to Creditors in these Chapter 11 Cases from, among other sources, the following: (a) the revenues generated during the Debtors' post-petition operations, (b) the Debtors' continued business operations and future revenue generated post-confirmation, (c) certain sale and refinance transactions identified below (if applicable), and (d) equity contributions made by the Schwartz Family.

To assist Creditors and the Court in evaluating the feasibility of the Plan, the Debtors attach Financial Projections to the Plan as Exhibits 1A & 1B. The Debtors provide two (2) sets of projections because the Plan provides alternative treatment for the payment of the Bank's claims as set forth in Section 3.2.2 of the Plan.

Under Option 1, the Bank's claims are paid in full at a fixed rate of interest of 4.25% per annum, with the balance of the restructured loans amortized over a period of thirty (30) years. The restructured loan will mature five (5) years from the Effective Date of the Plan. The Financial Projections attached to the Plan as Exhibit 1A correspond to the Option 1 treatment of the Bank's claims.

Under Option 2, which is a settlement option, the proposed stipulated Bank Claims will be paid to the Bank in full satisfaction of all claims asserted by the Bank related to the Bank Loans. The payments to be made to the Bank under Option 2 will be made from the net proceeds of a Sale and Leaseback Transaction sometime between January 1, 2021 and December 31, 2021, monthly interest payments to the Bank on the Remaining Balance to be paid from the continued operations of the Reorganized Debtors, and potentially through further sale or refinance transactions. The Financial Projections attached to the Plan as Exhibit 1B correspond to the Option 2 treatment of the Bank's claims.

Under the Plan, the Debtors will satisfy the allowed claims of its other secured creditors by restructuring their indebtedness based on the appraised value of the collateral and retaining the equipment and vehicles.

The Plan also proposes to pay the unsecured claims of the Debtors' employees in full shortly after the Effective Date of the Plan, to pay up to $75,000.00 to certain unsecured creditors after the Effective Date and to pay the Debtors' critical unsecured creditors in full over time by making quarterly installment payments to these critical vendors with unsecured claims.

As shown in the Financial Projections attached as Exhibits 1A & 1B to the Plan, the Debtors believe they can make the distributions contemplated under the Plan under either treatment of the Bank's claims. Financial Projections are not guarantees of performance, however, and you should consult with your attorney, accountant, or financial advisor if you have any questions about the Financial Projections.

Please take note that the Debtors' estates will be deemed substantively consolidated for voting and distribution purposes only. As set forth in Section 3 of the Plan, the holders of Claims and Equity Interests in classes 1-12 are entitled to vote on the Plan. The Debtors are soliciting votes from Creditors and Equity Holders in those classes on the Plan and the Debtors submit that the proposed Plan is a better alternative for Creditors than a liquidation of the Debtors' assets.

## D.      DISTRIBUTIONS UNDER THE PLAN

Summaries of the classification and treatment of Claims under the Plan, and the distributions that holders of Claims may expect to receive under the Plan, are set forth in Article III of the Plan.  The amounts listed are merely estimates based on information available as of the filing of this Disclosure Statement.  The actual amounts could be substantially different, causing the ultimate distributions to Creditors to be significantly higher or lower than estimated.  Creditors and other parties in interest are urged to review the contents of the Plan itself, which is attached as **Exhibit A** to this Disclosure Statement, in its entirety.  To the extent that any provisions of this Disclosure Statement are inconsistent with the provisions of the Plan, the terms of the Plan shall control; provided, however, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.   For a more detailed description, other significant terms, and provisions of the Plan, please refer to Article III below and the Plan itself.

## E.      CREDITORS ENTITLED TO VOTE ON THE PLAN

Holders of Claim or Interests in Classes 1-12 are impaired by the Plan and, as such, the Debtors are soliciting votes from holders of Allowed Claims in these classes as set forth in Article III of the Plan. The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met.  However, the Plan proponents may seek to "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code on any Class of claimants that vote to reject the Plan.  (For more information on "cram down," please refer to Article V, Section C below).  The requisite majority for confirmation of the Plan by a particular Class without "cram down" is acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number based on Allowed Claims that are actually voted.

## F.      INSTRUCTIONS REGARDING VOTING, CONFIRMATION,
##         AND OBJECTIONS TO CONFIRMATION

### 1.      *Voting Instructions*

Before voting, you should read this Disclosure Statement and its exhibits, including the Plan and its exhibits, in their entirety.  Ballots must be received no later than _____, 2020.
You may vote on the Plan by completing and mailing the enclosed Ballots to:

<div align="center">

Moon Wright & Houston, PLLC
Attention: Andrew T. Houston
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202

</div>

You should use the ballots sent to you with this Disclosure Statement to cast your votes for or against the Plan.  You may not cast ballots or votes orally.  In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the time designated in the notice accompanying this Disclosure Statement.  If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot with this Disclosure Statement, you may obtain a ballot by contacting Moon

Wright & Houston, PLLC at the address shown above.

Only holders of Allowed Claims in impaired Classes are entitled to vote on the Plan. In addition, the record date of all Claims against the Debtor for voting purposes shall be November 3, 2020. Persons holding Claims transferred after such date will not be permitted to vote on the Plan. An impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims in the Class that are actually voted are cast in favor of the Plan. Pursuant to the provisions of Section 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith. A Creditor's failure to vote on the Plan will not affect such Creditor's right to a distribution under the Plan.

If the voting members of an impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount of Allowed Claims in that Class and one-half (1/2) in number of Allowed Claims actually voted in that Class, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Estates were liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Court established November 3, 2020 as the deadline by which all proofs of claim (other than those of governmental units or unknown holders of Collection Claims) must be filed in these Chapter 11 Cases. The Debtors may dispute proofs of claim that have been filed or that the Debtors listed in their Schedules filed with the Bankruptcy Court. Persons whose Claims are disputed may vote on, or otherwise participate in, distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. The Schedules, which list the Claims and whether such Claims are disputed, can be inspected at the Office of the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, Charles Jonas Federal Building, 401 West Trade Street, Room 111, Charlotte, North Carolina.

Whether or not a claimant votes on the Plan, such Persons will be bound by the Plan, including the terms and treatment of Claims set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed down" and confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does not necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of distribution under the Plan.

### 2.    *Confirmation of the Plan*

Once it is determined which impaired Classes, if any, have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in section 1129(a) of the Bankruptcy Code are satisfied. These are complex statutory provisions, and the preceding paragraphs are not intended to be a complete summary of the law. If you do not understand any of these provisions, please consult with an attorney.

IF ALL CLASSES DO NOT ACCEPT THE PLAN, THE PLAN PROPONENTS INTEND TO RELY UPON THE "CRAM DOWN" PROVISIONS OF § 1129(b) OF THE BANKRUPTCY CODE.

The Bankruptcy Court may confirm the Plan, even if all impaired Classes do not accept the Plan, if the Bankruptcy Court finds that certain additional conditions are met. Accordingly, if the Plan is not accepted by the requisite amount of Claims in their respective impaired Classes, the Plan proponents will seek confirmation of the Plan as to such non-accepting Classes pursuant to § 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code is generally referred to as the "cram down" provision.

The Bankruptcy Court may confirm a Plan over the objection of a non-accepting Class if the Plan satisfies one of the alternative requirements of § 1129(b)(2)(A)-(C) of the Bankruptcy Code.  The Bankruptcy Court may confirm the Plan over the objection of a non-accepting Class if the non-accepting members of the Class receive the full value of their Claims, or, if the non-accepting members of the Class stand to receive less than full value, no Classes of junior priority will receive anything on account of their respective Claims.

### 3.    Objections to Confirmation

Any objections to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court and served upon (a) Andrew T. Houston, Moon Wright & Houston, PLLC, 121 West Trade Street, Suite 1950, Charlotte, North Carolina 28202; and (b) Shelley K. Abel, United States Bankruptcy Administrator, 402 West Trade Street, Charlotte, North Carolina 28202, in such a manner as will cause such objections to be filed with the Bankruptcy Court and received by the aforementioned parties no later than December_____, 2020.

### 4.    Confirmation Hearing

A hearing on confirmation of the Plan is scheduled before the Honorable J. Craig Whitley, United States Bankruptcy Judge, in the United States Bankruptcy Court, Charles Jonas Federal Building, 401 West Trade Street, Courtroom 1-4, Charlotte, North Carolina on December ___, 2020 at _____ __.m. Announcement of the adjournment or continuance of such hearing, if any, may be made in writing or in open court.  No further written notice is required to be sent to claimants, interest holders, or other parties in interest.

## ARTICLE II
## INFORMATION REGARDING THE CHAPTER 11 CASE

### A.    COMMENCEMENT OF THE CHAPTER 11 CASE

### 1.    Filing of the Petition

The Debtors filed for relief under Chapter 11 of the Bankruptcy Code on August 25, 2020.  Each Debtor was initially designated as a small business debtor under Subchapter V of Chapter 11.  The Court subsequently redesignated debtors UCS and SFP as non-small business Chapter 11 debtors by entry of an order in November 2020.  Debtor RPF remains as a Subchapter V debtor.

### 2.    Unsecured Creditors Committee

No Official Committee of Unsecured Creditors was appointed in these Chapter 11 Cases.

### 3.    Retention of Professionals by the Debtor

The Debtors are represented by Moon Wright & Houston, PLLC.

### 4.    Imposition of the Automatic Stay

Upon the filing of the chapter 11 petition, substantially all claims against the Debtors that existed prior to the Petition Date became subject to the automatic stay provisions under section 362 of the Bankruptcy Code.  Imposition of the automatic stay generally prevents Creditors from pursuing collection activities, including proceeding with lawsuits, against the Debtors while the company works to reorganize

its affairs as a debtor in possession.

## B.     SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE

### 1.     *Filing of Schedules*

The Debtors filed their Schedules of Assets and Liabilities, and its Statement of Financial Affairs on September 18, 2020 (the "Schedules").   Debtors UCS and SFP filed amended Schedules on October 8, 2020.

### 2.     *Bar Date for Filing of Claims*

The Bankruptcy Court established November 3, 2020 (the "Claims Bar Date") as the deadline by which all proofs of Claim (other than those of governmental units or unknown holders of Collection Claims) must be filed in this Chapter 11 Case.  The Clerk of the Bankruptcy Court transmitted notices of the Bar Date to all known actual or potential claimants and informed them of their need to file a proof of Claim on or before the Claims Bar Date.

### 3.     *Approved Use of Cash Collateral*

The Debtor filed an *Emergency Motion for the Debtor for Authority to Use Cash Collateral Pursuant to Sections 361 and 363 of the Bankruptcy Code* on August 25, 2020 [Doc. 3].  Debtor UCS sought authority to use pre-petition cash collateral, encumbered by the liens of the Bank, in order to operate during the Chapter 11 Cases.  Following a series of hearings, the use of cash collateral was allowed on certain terms and conditions, including the implementation of an approved expense budget.

## ARTICLE III
## THE PLAN OF REORGANIZATION

The following is a summary of the provisions of the Plan and, accordingly, is not as complete as the full text of the Plan that accompanies this Disclosure Statement.  The Plan itself, attached as <u>Exhibit A</u> hereto, should be read in its entirety.

## A.     SUMMARY OF PAYMENT PROVISIONS OF THE PLAN

### 1.     *Impairment of Claims*

A Class of Claims or interests is deemed "impaired" under a Chapter 11 plan unless, in general, the rights of the holders of the Claims or interests of such Class are not altered or, with respect to interests, the holders receive cash equal to the greater of (a) any liquidation preference or (b) the redemption price, if either is applicable.  Pursuant to § 1129(b) of the Bankruptcy Code, any Class deemed to be impaired must accept the plan by the requisite majority before the plan can be confirmed, unless the Bankruptcy Court finds that the plan is fair and equitable and does not discriminate unfairly with respect to each Class that is impaired and has not accepted the plan.

### 2.     *Treatment of Claims*

The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan will be in full settlement, release, and discharge of their respective Allowed Claims relating to the Debtor and other Persons, as applicable, as specified in the Plan.

**B.      CLASSIFIED CLAIMS UNDER THE PLAN**

The Plan divides the Claims against the Debtors into various Classes and designations.  Below is a table containing a description of the general Classes and designations of Claims against the Debtors and the corresponding treatment thereof under the Plan.   Allowed Administrative Claims and Allowed Priority Tax Claims are not designated as classes of Claims for purposes of the Plan and pursuant to sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.

All amounts listed for each class of claim are merely estimates and are subject to change through the Claims review and objection process.

All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[Remainder of Page Intentionally Left Blank]

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Allowed Administrative Claims*<br><br>Any cost or expense of administration of the Chapter 11 Cases (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently. Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estates incurred during the Chapter 11 Cases, (ii) any actual and necessary expenses of operating the Debtors' businesses incurred during the Chapter 11 Cases, (iii) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business as debtors in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtors as debtors in possession, (iv) obligations pursuant to executory contracts assumed by the Debtors pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, including any funds owed to the Trustee, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estates under chapter 123 of Title 28, United States Code.<br><br>It is estimated that, after completion of the claim reconciliation process, the amount of Allowed Administrative Claims will not exceed $10,000.00. | *Not Classified in Plan; Not Entitled to Vote*<br><br>Except as provided herein or to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) on (a) the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Allowed Priority Tax Claims*<br><br>An Allowed Priority Tax Claim is any Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.<br><br>It is estimated that the amount of Allowed Priority Tax Claims will be up to $920,155. The Debtors expect these amounts to be much lower, however, as a result of potential tax refunds and setoffs. | *Not Classified in Plan; Not Entitled to Vote*<br><br>Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtors; or (c) in equal, quarterly Cash payments starting the year following the Effective Date, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim is paid in full within five (5) years from the Petition Date. | 100% |
| *Class 1: Allowed Secured Tax Claims*<br><br>Class 1 consists of all Allowed Secured Tax Claims.<br><br>It is estimated that the total amount of Allowed Class 1 Claims will be $20,971. | *Impaired; Entitled to Vote*<br><br>These Claims shall be treated as secured obligations of the Reorganized Debtors. Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the Reorganized Debtor; or (c) in equal, annual Cash payments starting the year following the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section 1129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Secured Tax Claim is paid in full within five (5) years from the Petition Date. Each holder of an Allowed Secured Tax claim shall retain its existing liens, which shall retain the same priority that existed on the Petition Date. | 100% |
| *Class 2: Allowed Secured Claims of Aquesta Bank*<br><br>Class 2 consists of the Allowed Secured Claim of Aquesta Bank<br><br>It is estimated that the total amount of the Allowed | Overview: The Debtors provide Aquesta Bank with two options for restructuring the Bank Loans. Option 1 provides for the payment in full of the Bank's Allowed Secured Claims over a five (5) year term. Option 2 provides for a shorter term restructuring of the Bank's Allowed Secured Claims, which consists of a substantial paydown of the | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| Class 2 Claim is $5,170,468 based on the proof of claim filed by the Bank. | Bank's Allowed Claims from the net proceeds of the Sale and Leaseback Transaction and a restructuring of the Remaining Balance over a two (2) year term. In the event the Bank rejects both options, then the Debtors intend to proceed to cramdown on Option 1.<br><br>Option 1: Under Option 1, the Bank's Allowed Secured Claims shall be treated as oversecured. Payments on account of the Bank's Allowed Secured Claim shall begin in the first full month following the Effective Date and shall be made in equal monthly installments at the fixed rate of interest of 4.25% per annum, with the principal balance of the restructured loans amortized over a period of thirty (30) years. The restructured loan will mature five (5) years from the Effective Date of the Plan, with no prepayment penalty. Payments under the restructured loan shall be due on the first day of each month as contemplated herein, provided however, that monthly payments shall be considered timely if they are actually received by the Bank on or before the fifteenth day of the month. The Bank shall retain its liens on the Bank's collateral with the priority thereof, as it existed on the Petition Date pursuant to §§1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is paid as set forth in the Plan.<br><br>Option 2: Under Option 2, the Bank's Allowed Secured Claims shall be deemed to be Allowed Claims and the Bank Loans will be deemed to be satisfied in full in exchange for the treatment provided herein. On the Effective Date, the Bank will release and discharge all claims against the Debtors, the Estates, and the individual guarantors of the Bank Loans and their respective assets in exchange for: (a) the Plan treatment set forth herein, and (b) and the payment of the Stipulated Payoff Amount on the terms set forth herein. Under this option, the Debtors will pay the Stipulated Payoff Amount to the Bank as follows: (a) in part from the net proceeds of the Sale and Leaseback Transaction on the Sale Closing Date, and (b) the Remaining Balance will be paid as follows: (i) in full when the Remaining Balance matures two (2) years from the Effective Date of the Plan (the "Maturity Date"), and (ii) the Debtors will make monthly interest only payments on the Remaining Balance at the fixed rated of interest of 4.5% per annum from the Sale Closing Date through the Maturity Date. The Debtor forecasts that the Sale Closing Date will occur on or | |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| | before January 31, 2021.

In the event that the Sale Closing Date fails to occur on or before January 31, 2021, then the Debtors will make a payment of $30,000 per month to the Bank starting in February 2021 and extending through the Sale Closing Date (the "Extension Period"). The Extension Period will expire no later than December 31, 2021. If the Sale Closing Date occurs during the Extension Period, then the Debtors will pay the Stipulated Payoff Amount to the Bank as follows: (a) in part from the net proceeds of the Sale and Leaseback Transaction on the Sale Closing Date, plus any monthly payment of $30,000.00 that accrued from February 2021 through the Sale Closing Date but which monthly payment was unpaid as of the Sale Closing Date, and (b) the Remaining Balance will be paid as follows: (i) in full on the Maturity Date (defined above), and (ii) the Debtors will make monthly interest only payments on the Remaining Balance at the fixed rated of interest of 4.5% per annum from the Sale Closing Date through the Maturity Date.

If the Sale Closing Date fails to occur on or before December 31, 2021, then the Debtors and the Bank shall reopen the Chapter 11 Cases and conduct the sale as provided for in Section 7.11 of the Plan.

The Bank shall release its lien on the SFP real property for the purpose of facilitating the Sale and Leaseback Transaction, but shall otherwise retain its liens on the Bank's collateral with the priority thereof, as it existed on the Petition Date pursuant to §§1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is paid as set forth in the Plan. | |
| *Class 3: Allowed Secured Claim of Marlin Leasing*

Class 3 consists of the Allowed Secured Claim of Marlin Leasing.

It is estimated that the total amount of Allowed Class 3 Claims is $TDB | *Impaired; Entitled to Vote*

This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to Marlin Leasing during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and Marlin Leasing. Payments on account of Marlin Leasing's Allowed Secured Claim shall begin within 60 days | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| | following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. Marlin Leasing shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 3 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of Marlin Leasing resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan. | |
| *Class 4: Allowed Secured Claim of CIT Bank, N.A.*<br><br>Class 4 consists of the Allowed Secured Claim of CIT Bank, N.A.<br><br>It is estimated that the total amount of Allowed Class 4 Claims is $TBD | *Impaired; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to CIT Bank during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and CIT Bank. Payments on account of CIT Bank's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. CIT Bank shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 4 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of CIT Bank resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan. | 100% |
| *Class 5: Allowed Secured Claim of Balboa Capital Corp.*<br><br>Class 5 consists of the Allowed Secured Claim of Balboa Capital Corp.<br><br>It is estimated that the total amount of Allowed Class 5 Claims is $TBD | *Impaired; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to Balboa Capital Corp. during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and Balboa Capital Corp. Payments on account of Balboa Capital | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| | Corp.'s Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. Balboa Capital Corp. shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 5 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of Balboa Capital Corp. resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan. | |
| *Class 6: Allowed Secured Claim of TCF Equipment Finance.*<br><br>Class 6 consists of the Allowed Secured Claim of TCF Equipment Finance.<br><br>It is estimated that the total amount of Allowed Class 6 Claims is $TBD | *Impaired; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to TCF Equipment Finance during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and TCF Equipment Finance. Payments on account of TCF Equipment Finance's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. TCF Equipment Finance shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 6 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of TCF Equipment Finance resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan. | 100% |
| *Class 7: Allowed General Unsecured Claims*<br><br>Class 7 consists of all Allowed General Unsecured Claims.<br><br>It is estimated that the amount of Allowed Class 7 Claims is $2,062,157. | *Impaired; Entitled to Vote*<br><br>Holders of Allowed General Unsecured Claims shall be bifurcated into two sub-classes for the purposes of distributions under the Plan. Sub-Class 7A shall consist of the holders of Allowed Critical Vendor and Service Provider Claims. The holders of Allowed Critical Vendor and Service Provider Claims shall receive a pari passu distribution of the | Sub-Class 7-A<br>Up to 100%<br><br>Sub-Class 7-B<br>Up to 10% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| | actual disposable income of the Reorganized Debtors for a period of three years from the Effective Date of the Plan. Payments to the holders of Allowed Critical Vendor and Service Provider Claims shall be paid in quarterly installments with payments to be made within thirty (30) days of the end of the applicable quarter. It is anticipated that the first distribution to be made on account of Sub-Class 7-A Claims will be made within thirty (30) days of March 31, 2021.<br><br>Sub-Class 7B shall consist of Allowed Noncritical Vendor and Service Provider Claims. The holders of Allowed Noncritical Vendor and Service Provider Claims shall receive a pari passu distribution from the sum of the lesser of: (a) $75,000.00, or (b) the amount necessary to make a 10% distribution to the holders of Allowed Noncritical Vendor and Service Provider Claims. The distribution to the holders of Allowed Noncritical Vendor and Service Provider Claims shall be made within 60 days of the Effective Date of the Plan. | |
| *Class 8: Insider Claims*<br><br>Class 8 consists of consists of all Insider Claims.<br><br>It is estimated that the amount of Allowed Class 8 Claims is $1,060,268. | *Impaired; Entitled to Vote*<br><br>On the Plan's Effective Date, and except as otherwise set forth specifically in Section 3.10.2, Insider Claims shall be deemed subordinated to the holders of Allowed Claims under the Plan. Except as expressly set forth herein and in Section 3.10.2, Insider Claims shall not receive any distributions under the Plan until the Reorganized Debtors have fully performed their obligations under the Plan. | Unknown |
| *Class 9: Intercompany Claims*<br><br>Class 9 consists of consists of all Intercompany Claims.<br><br>It is estimated that the amount of Allowed Class 9 Claims is $546,471. | *Impaired; Entitled to Vote*<br><br>On the Effective Date, all Intercompany Claims shall be deemed disallowed and cancelled and holders of Intercompany Claims shall not receive any distribution on account of such Intercompany Claim under the Plan.<br><br>Class 9 is impaired by the Plan. Because holders of Intercompany Claims will receive no distributions under the Plan, the holders of Class 9 Claims are deemed to reject the Plan. | 0% |
| *Class 10: Employee Claims*<br><br>Class 10 consists of consists of Employee Claims.<br><br>It is estimated that the amount of Allowed Class | *Impaired; Entitled to Vote*<br><br>On the Effective Date, the Debtors shall be deemed to have assumed and reaffirmed their obligations to pay the Employee Claims. The distributions to the | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| 10 Claims is $133,104. | holders of Employee Claims shall be paid to or for the benefit of the affected employees within 60 days of the Effective Date. | |
| *Class 11: Allowed Secured Claim of Mercedes Benz Financial Services.*<br><br>Class 11 consists of the Allowed Secured Claim of *Mercedes Benz Financial Services USA, LLC.*<br><br>It is estimated that the total amount of Allowed Class 11 Claims is $TBD | *Impaired; Entitled to Vote*<br><br>This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to Mercedes Benz Financial Services USA, LLC during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and Mercedes Benz Financial Services USA, LLC.  Payments on account of Mercedes Benz Financial Services USA, LLC's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 2.90% per annum, over 60 months with no prepayment penalty.  Mercedes Benz Financial Services USA, LLC shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 11 Claim is satisfied as set forth in the Plan.  Any Allowed Unsecured Deficiency Claim of Mercedes Benz Financial Services USA, LLC resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan. | 100% |
| *Class 12: Equity Interests in the Debtors*<br><br>Class 12 consists of the Equity Interests in the Debtors. | *Impaired; Entitled to Vote*<br><br>All Equity Interests held prior to the Petition Date shall be retained. The holders of Debtor's Equity Interests will not receive any distributions until all senior classes are paid in full, except to the extent necessary to pay income taxes related to their ownership interest in the applicable Debtor. | N/A |

## ARTICLE IV
## OTHER PROVISIONS OF THE PLAN

### A.    ADMINISTRATIVE BAR DATE

In accordance with section 2.2 of the Plan, and except as otherwise ordered by the Bankruptcy Court (including any order providing for an earlier date), requests for payment of Administrative Claims,

including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Debtor no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

## B.   EXECUTORY CONTRACTS

### 1.   *Generally*

In accordance with Article 5 of the Plan, as of the Confirmation Date, all executory contracts and unexpired leases of the Debtor that (1) have not previously been assumed or rejected by the Debtors by Order of the Bankruptcy Court, or (2) are not the subject of a motion to assume/reject pending on the Confirmation Date, shall be deemed rejected by the Debtors. Due to the rejection of its executory contracts and unexpired leases, the Debtors do not anticipate paying any cure costs associated with the assumption of such obligations.

### 2.   *Rejection Claims*

If not otherwise resolved by the parties, the Bankruptcy Court shall determine any dispute pertaining to the assumption and assignment of any Assumed Agreement, and any required disputed cure payment shall be paid promptly following the entry of a Final Order resolving such dispute. In accordance with section 5.4 of the Plan and except to the extent a prior order of the Bankruptcy Court provides for an earlier date, in which case such earlier date shall control, all proofs of Claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall be filed with the Bankruptcy Court within thirty (30) days after the Confirmation Date. Any rejection Claims not filed within such time shall be released and discharged and forever barred from assertion against the Debtors and/or the Estate.

## C.   AVOIDANCE ACTIONS AND OTHER CAUSES OF ACTION

Except as otherwise provided in the Plan, the Reorganized Debtors shall retain their rights and they are authorized to commence and pursue, as the Reorganized Debtors deem appropriate, any and all claims and causes of action, including, but not limited to, Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases, and including but not limited to, any claims and causes of action specified in the Plan. The Debtors' Schedules disclosed pre-petition transactions with trade creditors within ninety (90) days of filing the petitions and transfers with insiders within one (1) year of the petition date. These transactions potentially give rise to claims against these persons, but those persons may also have legal and factual defenses to any claims or offsets to any such claims based on amounts owed by the Debtors to those persons. Any unsecured creditor who wants to obtain copies of the Schedules should contact Debtors' counsel: Andrew T. Houston, Moon Wright & Houston, PLLC, 121 West Trade Street, Suite 1950, Charlotte, North Carolina 28202, (704) 944-6563.

## D.   DISTRIBUTIONS

All distributions to Creditors will be made as set forth in Articles 3 and 6 of the Plan.

### E.    OBJECTIONS TO CLAIMS

The Debtors shall be authorized to object, or to succeed or otherwise join in any pending objection to Claims, so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan (excluding Claims previously allowed by Final Order of the Bankruptcy Court).  Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one (1) year after the Effective Date; provided, however, that this deadline may be extended by order of the Bankruptcy Court.  An objection to the allowance of a Claim must be filed with the Bankruptcy Court and served upon the holder of the Claim and all parties who have requested notice.

Unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtors filed after the Confirmation Date shall be automatically disallowed as a late-filed claim without any action by the Debtors, unless and until the party filing such Claim obtains (i) the written consent of the Debtors to file such Claim late, or (ii) approval from the Bankruptcy Court upon notice to the Debtors that permits the late filing of the Claim, in which event, the Debtor shall have 180 days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon *ex parte* motion of the Debtor.

The Debtors may litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against them as they may choose.  Prior to the expiration of thirty (30) days from the date of service of the objection, the claimant whose Claim was the subject of an objection must file a response to the objection with the Bankruptcy Court and serve the response upon the objecting party.  If the claimant whose Claim was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding claimant without further notice or hearing.  All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court.

### F.    MISCELLANEOUS

#### 1.    *Retention of Jurisdiction*

The Bankruptcy Court will retain jurisdiction after entry of the Confirmation Order to resolve all outstanding matters in the Chapter 11 Case.

#### 2.    *Discharge*

The consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any kind against the Estate and/or the Debtors.  The Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Estate and Debtors, except as otherwise specifically provided in the Plan.  On the Confirmation Date, as to every discharged Claim and other debt of the Debtors, the holder of such Claim or other debt of the Debtors shall be permanently enjoined from asserting against the Debtors, or against its assets or properties or any transferee thereof, any other or further Claim or other debt of the Debtors based upon any document, instrument, or act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date except as expressly set forth in the Plan.

### 3.     *Release of Certain Claims and Actions*

As of and on the Effective Date, all Persons who have held, hold, or may hold Claims against the Estate and/or the Debtors shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Effective Date against the Estate and/or the Debtors, except as otherwise provided for in the Plan (including the documents filed as schedules or exhibits to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to performance or nonperformance under the Plan or related instruments, securities, agreements or documents, or to any action or omission that constitutes actual fraud or criminal behavior.

In addition, and in consideration for consideration provided under the Plan, the individual guarantors shall be released and discharged of any liability arising out of or related to the operation of the Debtors.   These releases and discharges shall be construed as broadly as possible consistent with applicable law and are to include, *inter alia*, any and all liability in the nature of actions, claims or rights to recover attorneys' fees, causes of action, choses in action, objections, motions, contracts, guarantees, indemnity, contribution, subrogation, costs, damages, debts, demands, expenses, interest, liabilities, losses, stock ownership or membership rights, obligations, rights, royalties and warranties, of every kind and nature whatsoever, that was or could have been asserted by the Debtor, the Estates, and/or Creditors, in law or in equity, in contract or in tort, whether the facts upon which the same may be based are now known or unknown, and the holders of any such claims or rights shall be forever barred, enjoined, and prohibited from pursuing the same.   The Plan represents a negotiated settlement.   Accordingly, the filing of the Plan shall constitute a motion for approval of such settlement pursuant to Bankruptcy Rule 9019.

### 4.     *Conditions Precedent to Confirmation*

The Plan shall not be confirmed unless and until the Bankruptcy Court has entered the Confirmation Order.

### ARTICLE V
### CONFIRMATION OF THE PLAN

## A.     FEASIBILITY

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtors unless liquidation is contemplated under the Plan.   In connection therewith, the Debtors are confident that there will be sufficient funds on hand to satisfy the minimum distributions required under section 1129(a)(9) of the Bankruptcy Code.

## B.     ACCEPTANCE

As a condition to Confirmation, section 1129(a) of the Bankruptcy Code, with certain exceptions, requires that each impaired Class accept the Plan.   In general, a Class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims of that class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash.   The Bankruptcy Code defines acceptance of a plan (a) by a Class of Creditors entitled to vote thereon as acceptance by holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that Class and (b) by a Class of equity holders entitled to vote thereon by acceptance two-thirds in amount of such interests.   Each calculation, however, includes only those holders of Allowed Claims who actually vote to accept or reject the Plan.

Under section 1126(f) of the Bankruptcy Code, Classes of Allowed Claims that are not "impaired" are conclusively deemed to have accepted the Plan. Under § 1126(g) of the Bankruptcy Code, Classes that receive no distributions under the Plan are conclusively deemed to have rejected the Plan. For these reasons, acceptances of the Plan are being solicited from all Classes impaired pursuant to the Plan.

## C.      NON-ACCEPTANCE AND CRAM DOWN

If any Class of impaired Claims fails to accept the Plan, the Debtors will seek to effect a "cram down" on such dissenting Class and all Classes that are junior to such dissenting Class under section 1129(b) of the Bankruptcy Code.  The Debtors also reserve the right to amend the Plan and request confirmation of the Plan as further amended.  If an amendment to the Plan is material, the Plan proponents may have to re-solicit acceptances from any Class affected by the change(s), unless that Class can be deemed to have accepted or rejected the Plan.  The Plan's treatment of Classes is consistent with the foregoing.  Consequently, the Debtors believe that if any of the holders in Classes that are impaired reject the Plan, the Plan may be confirmed over such opposition.  Pursuant to section 1129(b) of the Bankruptcy Code, the Debtors will seek Confirmation of the Plan notwithstanding the possible rejection of the Plan by holders of Claims in any Class.

## D.      BEST INTERESTS TEST (LIQUIDATION ANALYSIS)

Notwithstanding acceptance of the Plan in accordance with section 1126 of the Bankruptcy Code, the Court must find that each member of an impaired Class of Creditors, if any, has each accepted the Plan, or will receive or retain property of a value, as of the Effective Date of the Plan, that is not less than the amount such Creditor or interest holder would have received or retained if the Estate were liquidated under Chapter 7 of the Bankruptcy Code.  The Debtors believe that the Plan complies with this "best interests" test.

To determine what Creditors would receive if the Estates were liquidated under Chapter 7, the dollar amount that would be generated from the liquidation of the Estate assets must be considered.  The amount available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of the Estates assets.  The Estates' interest would necessarily be reduced by the amount of any Secured Claims, the costs and expenses of liquidation, and such additional administrative and priority claims that may result from the liquidation of the assets (including a statutory trustee's commission).  These calculations are set forth in the Liquidation Analysis attached to the Plan as Exhibit 2.

Conversion of these Chapter 11 Cases to cases administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would also involve greater expense and risk than the reorganization contemplated by the Plan.

For example, conversion of the Chapter 11 Cases would require the appointment of a trustee to conduct the liquidation of the Estates.  Such trustee would likely have limited knowledge of the Chapter 11 Case or the Debtor's records, assets, or business.  Fees charged by the trustee and any professionals he or she would hire (such as legal counsel, accountants, appraisers, brokers, and the like) could impose additional administrative costs on the Estates that will not be incurred under the Plan, and which would be paid ahead of administrative and priority Claims arising in the Chapter 11 Cases.

When coupled with the inevitable delay caused by the appointment of a Chapter 7 trustee and retention of the trustee's professionals, distributions to holders of Allowed Claims that would otherwise be made on or after the Effective Date of the Plan would be delayed for an indefinite period.

Further, the Debtors anticipate that a trustee could not obtain fair market values for the Estates' real and personal property, but would instead recover reduced amounts arising from "distressed" sales of the assets.  In contrast to consummation of the Plan, the Debtors believe that liquidation of the Estates in Chapter 7 would leave no funds available for distribution to holders of allowed unsecured Claims after only a partial satisfaction of Allowed Secured Claims.

This analysis is set forth on the Liquidation Analysis attached as Exhibit 2 of the Plan.  As set forth on Exhibit 2 to the Plan, a liquidation of the Debtors' assets would likely leave approximately $3,968,538 in net proceeds to be distributed to Creditors in these Chapter 11 Cases. This sum would be insufficient to satisfy the Bank's claims in full and would leave no available funds to be distributed to the holders of priority unsecured claims (including taxes), the holders of general unsecured claims (such as trade creditors) or the claims of employees.

By contrast, the Plan provides for the payment in full of the Bank's claims and substantial distributions to be made to the holders of all unsecured claims. The Debtor therefore concludes that reorganization under the Plan, and continued operation of the Reorganized Debtors as a going concern, will yield greater distributions to Creditors.

 Note that the Liquidation Analysis reflects a hypothetical liquidation of the Debtors' Estates. This analysis is grounded on assumptions that the Debtor believes to be reasonable based on the best information available.  However, there are economic, legal, and other uncertainties that could change the forecasted results.  Nevertheless, for the reasons described above, the Debtors believe that the Plan provides Creditors with recoveries that have a present value greater than the present value of distributions they would receive if the Estates were liquidated under Chapter 7.

Accordingly, the Debtors believe that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code.

## ARTICLE VI
## MATERIAL UNCERTAINTIES AND RISK FACTORS

Holders of Claims against the Debtors should read and carefully consider the risk factors set forth below, as well as other information set forth in the Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein).  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and implementation thereof.

## A.      CERTAIN DISPUTED CLAIMS

The feasibility of the Plan is predicated upon the levels of the Claims not being materially in excess of the amounts estimated herein and in the Plan.  If such Claims are substantially in excess of the estimated amounts, the Debtor's ability to satisfy its payment obligations under the Plan could be impacted.  Moreover, the stated amounts of Claims in each Class listed above are estimates only based on the Debtor's Schedules, the current claims register published by the Clerk of the Bankruptcy Court, and the Debtors' projections regarding the amount of filed Claims that will be ultimately disallowed.  All amounts are subject to change upon the completion of the Claims review and objection process.

## B.      CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE

If any conditions precedent to Confirmation and the Effective Date are not satisfied, the Plan may be withdrawn and the Confirmation Order vacated.

## C. TAX MATTERS

Implementation of the Plan is not anticipated to cause material federal income tax consequences for the Debtors or the holders of Claims. However, nothing in the Plan or Disclosure Statement should be considered a representation or advice concerning such possible tax consequences.

## ARTICLE VII
## CONCLUSION

For the reasons set forth in this Disclosure Statement, the Debtors believe that confirmation and consummation of the Plan is preferable to all other alternatives. The Debtors thus urge all Creditors entitled to vote to accept the Plan and to evidence such acceptance by returning their ballots so that they will be received by ___________, 2020.

Dated: Charlotte, North Carolina
November 5, 2020

Respectfully submitted,

**United Canvas & Sling, Inc.**

By: *_/s/ Edward J. Sanz_*
ABTV Receivership Services, LLC
Independent Manager
By: Edward J. Sanz

**Rounders Pit Foam, LLC**

By: *_/s/ Edward J. Sanz_*
ABTV Receivership Services, LLC
Independent Manager
By: Edward J. Sanz

**Schwartz Family Properties North Carolina, LLC**

By: *_/s/ Edward J. Sanz_*
ABTV Receivership Services, LLC
Independent Manager
By: Edward J. Sanz

**MOON WRIGHT & HOUSTON, PLLC**

By: *_/s/ Andrew T. Houston_*
Andrew T. Houston (Bar No. 36208)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
*Counsel for the Debtors*

# EXHIBIT A
# JOINT PLAN OF REORGANIZATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **UNITED CANVAS & SLING, INC.,** *et al.* | ) | Case No. 20-30781 |
| | ) | Jointly Administered[1] |
| | ) | |
| Debtors. | ) | |

## JOINT PLAN OF REORGANIZATION

United Canvas & Sling, Inc. ("UCS"), Rounders Pit Foam, LLC ("RPF"), and Schwartz Family Properties North Carolina LLC ("SFP," and together with UCS and RPF, the "Debtors") submit this Plan of Reorganization pursuant to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

## ARTICLE I
## DEFINITIONS

As used in this chapter 11 plan, the following terms shall have the respective meanings specified below:

1.1     <u>ABTVRS</u>.  Refers to ABTV Receivership Services, LLC.

1.2     <u>Administrative Claim</u>.  Any cost or expense of administration of the Chapter 11 Cases (a) required to be asserted by filing an application with the Bankruptcy Court on or before the Administrative Bar Date, or (b) Allowed under section 503(b) of the Bankruptcy Code, except to the extent the holder of such Claim agrees to be treated differently.  Administrative Claims include, but are not limited to, (i) any actual and necessary expenses of preserving the Estates incurred during the Chapter 11 Cases, (ii) any actual and necessary expenses of operating the Debtors' businesses incurred during the Chapter 11 Cases, (iii) any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business as debtors in possession, or for the acquisition or lease of property by, or for the rendition of services to, the Debtors as debtors in possession, (iv) obligations pursuant to executory contracts assumed by the Debtors pursuant to an order of the Bankruptcy Court, (v) all Claims as provided by section 507(b) of the Bankruptcy Code, (vi) all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court, including any funds owed to the Trustee, (vii) any Allowed Contingent Claims which are granted administrative priority status by Final Order of the Bankruptcy Court, (viii) all fees payable and unpaid under section 1930 of Title 28, United States Code, and (ix) any fees or charges assessed against the Estates under chapter 123 of Title 28, United States Code.

---

[1] The following debtors' cases are being jointly administered: United Canvas & Sling, Inc. (Case No. 20-30781), Schwartz Family Properties North Carolina, LLC (Case No. 20-30782), and Rounders Pit Foam, LLC (Case No. 20-30783).

1.3     <u>Administrative Claims Bar Date</u>.  The date thirty (30) days after the Effective Date or such other date(s), if any, as determined by order of the Bankruptcy Court, by which all requests for allowance of Administrative Claims must be filed with the Bankruptcy Court.  The Administrative Claims Bar Date shall not apply to fees and expenses of the Debtors' Professionals incurred after the Confirmation Date.

1.4     <u>Allowed Administrative Claim</u>.  All or that portion of any Administrative Claim that is or has become an Allowed Claim.

1.5     <u>Allowed Claim</u>.  Any Claim against the Debtors (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claims against the Debtors or, if no proof of claim is filed, which has been or hereafter is listed by the Debtors in their Schedules, as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim), or (iii) any Claim as to which the Bankruptcy Court has entered a Final Order allowing the Claim.  A Disputed Claim shall be an Allowed Claim if, and only to the extent that, a Final Order has been entered allowing such Disputed Claim.  The term "Allowed," when used to modify a reference in this Plan to any Claim or class of Claims, shall mean a Claim (or any Claim in any such class) that is allowed (e.g., an Allowed Secured Claim is a Claim that has been Allowed to the extent of the value of any interest in property of the Estates securing such Claim), as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code.  Unless otherwise specified in this Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

1.6     <u>Assumed Agreement</u>.   The Debtors' unexpired leases and other executory contracts that are being assumed pursuant to the Plan.

1.7     <u>Avoidance Action</u>.  Any and all actions which a trustee, debtor in possession, or other appropriate party in interest may assert on behalf of the Estates under the Bankruptcy Code, including actions pursuant to sections 542, 543, 544, 545, 546, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code.

1.8     <u>Avoidance Action Claims</u>.  Claims asserted by parties pursuant to sections 502(d) and/or 502(h) of the Bankruptcy Code in connection with any Avoidance Action(s) brought by the Debtors against such parties.

1.9     <u>Ballot</u>.  The document used in voting on the Plan that must be executed and delivered by holders of Claims entitled to vote on the Plan.

1.10    <u>Bank</u>.  Refers to Aquesta Bank.

1.11    <u>Bankruptcy Administrator</u>.  The United States Bankruptcy Administrator for the Western District of North Carolina.

1.12   <u>Bankruptcy Code</u>.   The Bankruptcy Reform Act of 1978, as amended, and memorialized in Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.13   <u>Bankruptcy Court</u>.  The United States Bankruptcy Court for the Western District of North Carolina.

1.14   <u>Bankruptcy Rules</u>.  The Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

1.15   <u>Business Day</u>.  Any day other than a Saturday, Sunday, or other day on which commercial banks in the State of North Carolina are authorized or required by law to close.

1.16   <u>Cash</u>.  Cash and readily marketable securities or instruments including, without limitation, readily marketable direct obligations of the United States of America or agencies or instrumentalities thereof, time certificates of deposit issued by any bank, and commercial paper.

1.17   <u>Cause of Action</u>.  Any right, claim, proof of claim, motion, objection, and/or other legal cause of action, including, but not limited to Avoidance Actions, which the Debtors and/or the Reorganized Debtors may pursue in any court of competent jurisdiction or other forum.

1.18   <u>Chapter 11 Cases</u>.  The jointly administered Chapter 11 bankruptcy cases of United Canvas & Sling, Inc. (Case No. 20-30781), Schwartz Family Properties North Carolina, LLC (Case No. 20-30782), and Rounders Pit Foam, LLC (Case No. 20-30783).

1.19   <u>Claim</u>.  Any right to payment from the Estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Estates, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and arising at any time before the Effective Date or relating to any event that occurred before the Effective Date.

1.20   <u>Class</u>.  Means a classification of Allowed Claims for the purposes of treatment and distributions under this Plan.

1.21   <u>Confirmation Date</u>.  The date upon which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.22   <u>Confirmation Hearing</u>.  The hearing before the Bankruptcy Court to consider confirmation of this Plan.

1.23   <u>Confirmation Order</u>.  An order of the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.24   <u>Contingent Claim</u>.  A Claim that is either contingent or unliquidated on or immediately before the Confirmation Date.

1.25   <u>Creditor</u>. Any Person that holds a Claim against the Estates.

1.26   <u>Critical Vendor and Service Provider Claims</u>.   Consist of the Allowed General Unsecured Claims of vendors and service providers that have extended credit terms to the Debtors and that the Debtors will continue to do business with after the Effective Date, and which are listed on Exhibit 3 hereto.

1.27   <u>Debtors</u>. Means and refers collectively to United Canvas & Sling, Inc., Schwartz Family Properties North Carolina, LLC, and Rounders Pit Foam, LLC.

1.28   <u>Disputed Claim</u>. A Claim which is the subject of a timely objection interposed by the Debtors, if at such time such objection remains unresolved; provided, however, that the Bankruptcy Court may determine the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, further, that the Debtors, in its sole discretion, may elect to treat the portion of a Disputed Claim, if any, that is not in dispute as an Allowed Claim, with the disputed portion remaining a Disputed Claim.

1.29   <u>Effective Date</u>.   The Business Day on which all of the conditions set forth in Article 10 of this Plan shall have been satisfied or waived.

1.30   <u>Employee Claims</u>.   Refers to the Unsecured Claims of certain employees of debtor UCS related to unpaid contributions to UCS's 401k plan.   The only Insiders that are holders of Employee Claims are Jason Schwartz, Adam Schwartz and Zachary Schwartz.

1.31   <u>Equity Contribution.</u>   Refers to an equity contribution in the amount of $150,000.00 to be made by the Schwartz Family to fund the Reorganized Debtors' operations and to provide additional working capital to the Reorganized Debtors.

1.32   <u>Equity Interest</u>. Any interest in the Debtors represented by any class or series of capital stock or membership interests of the Debtors prior to the Petition Date, and any and all warrants, options, convertible, or exchangeable securities, subscriptions, rights (including any preemptive rights), appreciation rights, calls, or commitments of any character whatsoever relating to any such interest in the Debtors. Equity Interests also include, without limitation, all Claims arising from rescission of a purchase or sale of an Equity Interest, for damages arising from the purchase or sale of such an Equity Interest, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

1.33   <u>Estates</u>.   The bankruptcy estates of the Debtors, including all interests in property that the Debtors hold.

1.34   <u>Final Order</u>.   An order that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.35   <u>Financial Projections</u>. The forecast that projects the Reorganized Debtors' ability to make the payments required by the Plan.   The Financial Projections are attached hereto as Exhibits 1-A & 1-B.  Exhibit 1-A corresponds to the treatment of the Bank's Allowed Claims

under Section 3.2.2 (Option 1) of the Plan. Exhibit 1-B corresponds to the treatment of the Bank's Allowed Claims under Section 3.2.2 (Option 2) of the Plan.

1.36   <u>General Unsecured Claim</u>. Any Unsecured Claim, other than an Administrative Claim, an Other Priority Claim, or a Priority Tax Claim. Subject to the provisions of this Plan, Allowed General Unsecured Claims may include, without limitation, Allowed Unsecured Deficiency Claims, and any Claim in favor of any Person arising from a judgment against such Person in any Avoidance Action (if the effect of such judgment gives such Person an Allowed General Unsecured Claim).

1.37   <u>Insider Claims</u>. Means a Claim of the following persons: (a) Lawrence Schwartz, (b) the Estate of Jeffrey Schwartz, (c) Iris Schwartz, (d) Adam Schwartz, (e) Jason Schwartz, (f) Zachary Schwartz, (g) 3070 State Highway LLC, (h) New Nevada Plastics, LLC, and (i) Yaffa Lukash.

1.38   <u>Intercompany Claim(s)</u>. Means a Claim or Cause of Action held by any Debtor against any other Debtor accruing before or after the Petition Date including, but not limited to, any claim for reimbursement, payment as guarantor or surety, any claim for contribution and expenses that were allocable between multiple Debtors. All such Intercompany Claims are disallowed for the purposes of distributions as provided in Sections 3.9 & 6.1 of the Plan.

1.39   <u>Interest</u>. Any right, claim, or entitlement arising out of or against an Equity Interest.

1.40   <u>Judgment</u>. A judgment that is no longer subject to appeal, certiorari proceeding or other proceeding for review or rehearing, and as to which no appeal, certiorari proceeding, or other proceeding for review or rehearing shall then be pending.

1.41   <u>Liquidation Analysis</u>. The forecast that projects the distributions to creditors if these cases are converted to Chapter 7 of the Bankruptcy Code. The Liquidation Analysis is Exhibit 2 of the Plan.

1.42   <u>Noncritical Vendor and Service Provider Claims</u>. Consists of all Allowed General Unsecured Claims other than Critical Vendor and Service Provider Claims, Intercompany Claims, Insider Claims and Employee Claims. Noncritical Vendor and Service Provider Claims also includes Unsecured Deficiency Claims.

1.43   <u>Other Priority Claims</u>. Any Claim to the extent entitled to priority in payment under sections 507(a)(2) through 507(a)(7) of the Bankruptcy Code.

1.44   <u>Person</u>. An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government, governmental unit or any subdivision thereof or any other entity.

1.45   <u>Petition Date</u>. August 25, 2020, the date the Chapter 11 Cases were filed.

1.46   <u>Plan</u>. This Plan of Reorganization, as it may be from time to time modified, amended or supplemented, together with any exhibits thereto.

1.47   Priority Non-Tax Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under Sections 507(a)(1)-(a)(7) of the Bankruptcy Code.

1.48   Priority Tax Claim.  Any Claim arising prior to the Petition Date entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

1.49   Pro Rata Share.  As of any certain date, with respect to any Allowed Claim in any Class, the proportionate share that such Allowed Claim bears to the aggregate amount of all Claims, including Disputed Claims, in such Class.

1.50   Professional.   Any attorney, accountant, appraiser, auctioneer, or other professional person retained and employed by the Estates in the Chapter 11 Cases in accordance with sections 327 and/or 328 of the Bankruptcy Code.

1.51   Remaining Balance.   Refers to the balance of the Bank's Stipulated Payoff Amount under Section 3.2.2 (Option 2) of the Plan after the application and payment of the net proceeds from the Sale and Leaseback Transaction to the Bank in partial satisfaction of its Allowed Claims on the Sale Closing Date.

1.52   Reorganized Debtors.  The Debtors, as reorganized and re-vested with all of the assets of the Estates pursuant to this Plan.

1.53   Sale and Leaseback Transaction.   Refers to a series of transactions whereby debtor SFP will sell its real property to a third party purchaser (the "Buyer") and debtor UCS will lease the property from the Buyer.

1.54   Sale Closing Date.  Refers to the date of the closing of the Sale and Leaseback Transaction.

1.55   Schedules.  The Schedules of Assets and Liabilities, and any amendments thereto, filed by the Debtors in the Chapter 11 Cases under section 521 of the Bankruptcy Code.

1.56   Secured Claim.  A Claim to the extent of the value, of any interest in property of the Estates securing such Claim, as determined pursuant to section 506(a) or 1111(b) of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such Claim is an Unsecured Deficiency Claim unless, in any such case, the class of which such Claim is a part makes a valid and timely election under section 1111(b) of the Bankruptcy Code to have such Claim treated as a Secured Claim to the extent allowed.

1.57   Stipulated Payoff Amount.  Refers to the amount of the Bank's Allowed Secured Claims under Section 3.2.2 (Option 2) of the Plan.  The Stipulated Payoff Amount is determined by taking: (i) the aggregate principal balance of the Bank Loans ($4,819,759.00) plus (ii) the Bank's out-of-pocket expenses per the affidavit submitted by the Bank on October 26, 2020 ($65,132) for a total of $4,884,891.00, and then subtracting the following sums from that amount: (a) the sum of $38,464.81 that was removed from the RPF bank account pre-petition, and (b) all non-default interest payments or adequate protection payments made by the Debtors to the Bank from the Petition Date through January 31, 2021.  For example, if the Debtors make

four (4) $30,000.00 interest payments to the Bank between the Petition Date and January 31, 2021, the balance of the Stipulated Payoff Amount will be $4,726,426.19.

1.58    Stump.  Refers to The Stump Corporation a real estate broker that has marketed SFP's real property for sale prior to the Petition Date.

1.59    Taxes.    All income, franchise, excise, sales, use, employment, withholding, property, payroll, and other taxes, assessments, and governmental charges, together with any interest, penalties, additions to tax, fines, and similar amounts relating thereto, imposed or collected by any federal, state, local, or foreign governmental authority.

1.60    Trustee.  Michael Martinez, Esq., who was appointed in the Chapter 11 Cases pursuant to section 1183 of the Bankruptcy Code.   Mr. Martinez was discharged as the Subchapter V Trustee in the UCS and SFP cases.

1.61    Unsecured Claim.  A Claim not secured by a charge against or interest in property in which the Estates have an interest, including any Unsecured Deficiency Claim, and any Claim arising at any time under Bankruptcy Rule 3002(c)(3).

1.62    Unsecured Deficiency Claim.   A Claim by a Creditor arising out of the same transaction as a Secured Claim to the extent that the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or by stipulation, of such Creditor's interest in property of the Estates securing such Claim is less than the amount of the Claim which has the benefit of such security as provided by section 506(a) of the Bankruptcy Code.

1.63    Voting Deadline.  The date set in an order of the Bankruptcy Court as the deadline for the return of Ballots accepting or rejecting the Plan.

1.64    Other Definitions.  Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code or Bankruptcy Rules shall have the meaning set forth therein.  Wherever from the context it appears appropriate, each term stated in either of the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and others of similar inference refer to this Plan as a whole and not to any particular article, section, subsection, or clause contained in this Plan.  The word "including" shall mean "including without limitation."

## ARTICLE 2
## PROVISIONS REGARDING ALLOWED ADMINISTRATIVE
## CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1    ***Administrative Claims and Priority Tax Claims are Not Classified in this Plan***.
Administrative Claims and Priority Tax Claims are not classified and are not entitled to vote to accept or reject the Plan.   The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Tax Claims pursuant to this Article 2 of the Plan shall be in full and complete satisfaction, settlement, release, and discharge of such Claims.  The Debtors' obligations in respect of such Allowed Administrative and Priority Tax

Claims shall be satisfied in accordance with the terms of this Plan.

2.2 ***Administrative Claims Bar Date***. Unless otherwise ordered by the Bankruptcy Court, requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals and the Trustee incurred before the Confirmation Date, must be filed and served no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals or the Trustee incurred after the Confirmation Date.

2.3 ***Treatment of Administrative Claims***. Except as provided herein or to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) on (a) the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due.

2.4 ***Treatment of Priority Tax Claims***. Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the Reorganized Debtors; or (c) in equal, quarterly Cash payments starting the year following the Effective Date, in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section l129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Priority Tax Claim is paid in full within five (5) years from the Petition Date.

## ARTICLE 3
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

3.1 ***Class 1: Allowed Secured Tax Claims***

3.1.1 *Classification.*

Class 1 consists of all Allowed Secured Tax Claims.

3.1.2 *Treatment.*

These Claims shall be treated as secured obligations of the Reorganized Debtors. Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Reorganized Debtors: (a) in full, in Cash, on the Effective Date or as soon as practicable thereafter; (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the Reorganized Debtor; or

(c) in equal, annual Cash payments starting the year following the Effective Date, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at such rate as required by Section 511 of the Bankruptcy Code or otherwise as required by Section l129(a)(9)(C) or (D) of the Bankruptcy Code, such that the full amount of each Allowed Secured Tax Claim is paid in full within five (5) years from the Petition Date.  Each holder of an Allowed Secured Tax claim shall retain its existing liens, which shall retain the same priority that existed on the Petition Date.

### 3.1.3 *Impairment and Voting*

Class 1 is impaired by the Plan. The holders of Class 1 Claims are entitled to vote to accept or reject the Plan.  For purposes of voting, each holder of a Secured Tax Claim shall be considered to be the sole member of a separate Class.

### 3.2 *Class 2:  Allowed Secured Claims of Aquesta Bank*

### 3.2.1 *Classification*

Class 2 consists of the Allowed Secured Claims of Aquesta Bank.

### 3.2.2 *Treatment*

***Overview***: The Debtors provide Aquesta Bank with two options for restructuring the Bank Loans.  Option 1 provides for the payment in full of the Bank's Allowed Secured Claims over a five (5) year term.  Option 2 provides for a shorter term restructuring of the Bank's Allowed Secured Claims, which consists of a substantial paydown of the Bank's Stipulated Allowed Secured Claims from the net proceeds of the Sale and Leaseback Transaction and a restructuring of the Remaining Balance over a two (2) year term.  In the event the Bank rejects both options, then the Debtors intend to proceed to cramdown on Option 1.

**Option 1**: Under Option 1, the Bank's Allowed Secured Claims shall be treated as oversecured. Payments on account of the Bank's Allowed Secured Claim shall begin in the first full month following the Effective Date and shall be made in equal monthly installments at the fixed rate of interest of 4.25% per annum, with the principal balance of the restructured loans amortized over a period of thirty (30) years.  The restructured loan will mature five (5) years from the Effective Date of the Plan, with no prepayment penalty.  Payments under the restructured loan shall be due on the first day of each month as contemplated herein, provided however, that monthly payments shall be considered timely if they are actually received by the Bank on or before the fifteenth day of the month.  The Bank shall retain its liens on the Bank's collateral with the priority thereof, as it existed on the Petition Date pursuant to §§1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is paid as set forth herein.

**Option 2**: Under Option 2, the Bank's Allowed Secured Claims shall be deemed to be Allowed Claims and the Bank Loans will be deemed to be satisfied in full in exchange for the treatment provided herein.  On the Effective Date, the Bank will release and discharge all claims against the Debtors, the Estates, and the individual guarantors of the Bank Loans and their respective

assets in exchange for: (a) the Plan treatment set forth herein, and (b) and the payment of the Stipulated Payoff Amount on the terms set forth herein.  Under this option, the Debtors will pay the Stipulated Payoff Amount to the Bank as follows: (a) in part from the net proceeds of the Sale and Leaseback Transaction on the Sale Closing Date, and (b) the Remaining Balance will be paid as follows: (i) in full when the Remaining Balance matures two (2) years from the Effective Date of the Plan (the "Maturity Date"), and (ii) the Debtors will make monthly interest only payments on the Remaining Balance at the fixed rated of interest of 4.5% per annum from the Sale Closing Date through the Maturity Date.  The Debtor forecasts that the Sale Closing Date will occur on or before January 31, 2021.

In the event that the Sale Closing Date fails to occur on or before January 31, 2021, then the Debtors will make a payment of $30,000 per month to the Bank starting in February 2021 and extending through the Sale Closing Date (the "Extension Period").  The Extension Period will expire no later than December 31, 2021.  If the Sale Closing Date occurs during the Extension Period, then the Debtors will pay the Stipulated Payoff Amount to the Bank as follows: (a) in part from the net proceeds of the Sale and Leaseback Transaction on the Sale Closing Date, plus any monthly payment of $30,000.00 that accrued from February 2021 through the Sale Closing Date but which monthly payment was unpaid as of the Sale Closing Date, and (b) the Remaining Balance will be paid as follows: (i) in full on the Maturity Date (defined above), and (ii) the Debtors will make monthly interest only payments on the Remaining Balance at the fixed rated of interest of 4.5% per annum from the Sale Closing Date through the Maturity Date.

If the Sale Closing Date fails to occur on or before December 31, 2021, then the Debtors and the Bank shall reopen the Chapter 11 Cases and conduct the sale as provided for in Section 7.11 of the Plan.

The Bank shall release its lien on the SFP real property for the purpose of facilitating the Sale and Leaseback Transaction, but shall otherwise retain its liens on the Bank's collateral with the priority thereof, as it existed on the Petition Date pursuant to §§1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is paid as set forth herein.

### 3.2.3    *Impairment and Voting*

Class 2 is impaired by the Plan. The holder of the Class 2 Claims is entitled to vote to accept or reject the Plan.

### 3.3    ***Class 3:  Allowed Secured Claim of Marlin Leasing***

### 3.3.1    *Classification*

Class 3 consists of the Allowed Secured Claim of Marlin Leasing.

### 3.3.2    *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the

Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to Marlin Leasing during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and Marlin Leasing. Payments on account of Marlin Leasing's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. Marlin Leasing shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 3 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of Marlin Leasing resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan.

### 3.3.3    *Impairment and Voting*

Class 3 is impaired by the Plan. The holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

## 3.4    *Class 4:  Allowed Secured Claim of CIT Bank*

### 3.4.1    *Classification*

Class 4 consists of the Allowed Secured Claim of CIT Bank, N.A.

### 3.4.2    *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to CIT Bank during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and CIT Bank. Payments on account of CIT Bank's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. CIT Bank shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 4 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of CIT Bank resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan.

### 3.4.3    *Impairment and Voting*

Class 4 is impaired by the Plan. The holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

## 3.5    *Class 5:  Allowed Secured Claim of Balboa Capital Corp.*

### 3.5.1    *Classification*

Class 5 consists of the Allowed Secured Claim of Balboa Capital Corp.

### 3.5.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to Balboa Capital Corp. during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and Balboa Capital Corp. Payments on account of Balboa Capital Corp.'s Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. Balboa Capital Corp. shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 5 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of Balboa Capital Corp. resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan.

### 3.5.3 *Impairment and Voting*

Class 5 is impaired by the Plan. The holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

## 3.6 **Class 6: Allowed Secured Claim of TCF Equipment Finance**

### 3.6.1 *Classification*

Class 6 consists of the Allowed Secured Claim of TCF Equipment Finance.

### 3.6.2 *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to TCF Equipment Finance during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and TCF Equipment Finance. Payments on account of TCF Equipment Finance's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 4.25% per annum, over 60 months with no prepayment penalty. TCF Equipment Finance shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 6 Claim is satisfied as set forth in the Plan. Any Allowed Unsecured Deficiency Claim of TCF Equipment Finance resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan.

### 3.6.3 *Impairment and Voting*

Class 6 is impaired by the Plan. The holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

3.7 **Class 7:  Allowed General Unsecured Claims**

    3.7.1 *Classification*

Class 7 consists of consists of all Allowed General Unsecured Claims.

    3.7.2 *Treatment*

Holders of Allowed General Unsecured Claims shall be bifurcated into two sub-classes for the purposes of distributions under the Plan.

Sub-Class 7A shall consist of the holders of Allowed Critical Vendor and Service Provider Claims.  The holders of Allowed Critical Vendor and Service Provider Claims shall receive a *pari passu* distribution of the actual disposable income of the Reorganized Debtors for a period of three years from the Effective Date of the Plan.  Payments to the holders of Allowed Critical Vendor and Service Provider Claims shall be paid in quarterly installments with payments to be made within thirty (30) days of the end of the applicable quarter.  It is anticipated that the first distribution to be made on account of Sub-Class 7-A Claims will be made within thirty (30) days of March 31, 2021.

Sub-Class 7B shall consist of Allowed Noncritical Vendor and Service Provider Claims. The holders of Allowed Noncritical Vendor and Service Provider Claims shall receive a *pari passu* distribution from the sum of the lesser of: (a) $75,000.00, or (b) the amount necessary to make a 10% distribution to the holders of Allowed Noncritical Vendor and Service Provider Claims.  The distribution to the holders of Allowed Noncritical Vendor and Service Provider Claims shall be made within 60 days of the Effective Date of the Plan.

    3.7.3 *Impairment and Voting*

Class 7 is impaired by the Plan. The holders of Class 7 Claims are entitled to vote to accept or reject the Plan.

3.8 **Class 8:  Insider Claims**

    3.8.1 *Classification*

Class 8 consists of consists of all Insider Claims.

    3.8.2 *Treatment*

On the Plan's Effective Date, and except as otherwise set forth specifically in Section 3.10.2, Insider Claims shall be deemed subordinated to the holders of Allowed Claims under the

Plan. Except as expressly set forth herein and in Section 3.10.2, Insider Claims shall not receive any distributions under the Plan until the Reorganized Debtors have fully performed their obligations under the Plan.

### 3.8.3 *Impairment and Voting*

Class 8 is impaired by the Plan. The holders of Class 8 Claims are entitled to vote to accept or reject the Plan.

### 3.9 *Class 9: Intercompany Claims*

#### 3.9.1 *Classification*

Class 9 consists of consists of all Intercompany Claims.

#### 3.9.2 *Treatment*

On the Effective Date, all Intercompany Claims shall be deemed disallowed and cancelled and holders of Intercompany Claims shall not receive any distribution on account of such Intercompany Claim under the Plan.

#### 3.9.3 *Impairment and Voting*

Class 9 is impaired by the Plan. The holders of Class 9 Claims are the plan proponents and hereby accept the Plan.

### 3.10 *Class 10: Employee Claims*

#### 3.10.1 *Classification*

Class 10 consists of Employee Claims.

#### 3.10.2 *Treatment*

On the Effective Date, the Debtors shall be deemed to have assumed and reaffirmed their obligations to pay the Employee Claims. The distributions to the holders of Employee Claims shall be paid to or for the benefit of the affected employees within 60 days of the Effective Date.

#### 3.10.3 *Impairment and Voting*

Class 10 is impaired by the Plan. The holders of Class 10 Claims are entitled to vote to accept or reject the Plan.

### 3.11 *Class 11: Allowed Secured Claim of Mercedes Benz Financial Services*

#### 3.11.1 *Classification*

Class 11 consists of the Allowed Secured Claim of Mercedes Benz Financial Services USA, LLC.

### 3.11.2      *Treatment*

This Claim shall be treated as a secured obligation of the Reorganized Debtors as follows: (i) in the amount of the value of the collateral securing the Claim as determined by the Bankruptcy Court at the confirmation hearing or upon the Debtors' motion pursuant to section 506 of the Bankruptcy Code, less any payments made by the Debtors to Mercedes Benz Financial Services USA, LLC during the Chapter 11 Cases, or (ii) as otherwise agreed upon by the Debtors and Mercedes Benz Financial Services USA, LLC.   Payments on account of Mercedes Benz Financial Services USA, LLC's Allowed Secured Claim shall begin within 60 days following the Effective Date and shall be made in equal monthly installments of principal and interest, with interest at 2.90% per annum, over 60 months with no prepayment penalty. Mercedes Benz Financial Services USA, LLC shall retain its lien with the priority thereof, as it existed on the Petition Date pursuant to §1129(b)(2)(A)(i)(I) of the Bankruptcy Code until this Allowed Class 11 Claim is satisfied as set forth in the Plan.  Any Allowed Unsecured Deficiency Claim of Mercedes Benz Financial Services USA, LLC resulting from bifurcation of its Claim shall be treated in Class 7-B of the Plan.

### 3.11.3      *Impairment and Voting*

Class 11 is impaired by the Plan. The holder of the Class 11 Claim is entitled to vote to accept or reject the Plan.

### 3.12      *Class 12:  Equity Interests in the Debtors*

### 3.12.1      *Classification*

Class 12 consists of the Equity Interests in the Debtors.

### 3.12.2      *Treatment*

All Equity Interests held prior to the Petition Date shall be retained.  The holders of Debtor's Equity Interests will not receive any distributions until all senior classes are paid in full, except to the extent necessary to pay income taxes related to their ownership interest in the applicable Debtor.

### 3.12.3      *Impairment and Voting*

Class 12 is impaired by the Plan. The holders of Class 12 Equity Interests are entitled to vote to accept or reject the Plan.

# ARTICLE 4
## ACCEPTANCE OR REJECTION OF THE PLAN

4.1     ***Consolidated Voting***.   The Debtors' Estates will be deemed substantively consolidated for the purpose of voting on the Plan.

4.2     ***Impaired Classes Vote.***   Each holder of a Claim or Interest in an impaired Class receiving or retaining anything under this Plan is entitled to vote to accept or reject this Plan to the extent and in the manner provided in the Plan, the Bankruptcy Code and the Bankruptcy Rules, or in any voting procedures order.

4.3     ***Acceptance by Impaired Classes of Claims.***   Acceptance of this Plan by any Impaired Class entitled to vote shall be determined in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any voting procedures order entered by the Bankruptcy Court

4.4     ***Designation of Classes Entitled to Vote.***   Holders of Claims and Interests in those Classes which are impaired are entitled to vote on the Plan.

4.5     ***Nonconsensual Confirmation.***   With respect to any Impaired Class, including any Class of Claims or Interests created pursuant to amendments or modifications to this Plan, that does not accept the Plan, the Debtors will request that the Bankruptcy Court confirm this Plan by cramdown with respect to any such non-accepting Class or Classes at the Confirmation Hearing, *and the filing of this Plan shall constitute a motion for such relief.*

# ARTICLE 5
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1     ***Assumption.***   Each executory contract or unexpired lease of the Debtors that has not expired by its own terms before the Effective Date, been terminated prior to the Effective Date or previously been assumed by the Debtors pursuant to an order of the Bankruptcy Court, shall be assumed by the Debtors as of the Effective Date pursuant to Sections 365 and 1123 of the Bankruptcy Code, except for any executory contract or unexpired lease (i) that is listed on a "Schedule of Executory Contracts and Unexpired Leases to be Rejected" (to be Filed on or before the day that is seven (7) days prior to the Confirmation Hearing), (ii) that has been previously rejected by the Debtors pursuant to an order of the Bankruptcy Court, (iii) as to which a motion for rejection of such executory contract or unexpired lease is filed prior to the Effective Date, or (iv) added to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" prior to the Effective Date. Nothing in the Plan, any Exhibit to the Plan, or any document executed or delivered in connection with the Plan or any such Exhibit creates any obligation or liability on the part of the Debtors, the Reorganized Debtors, or any other person or entity that is not currently liable for such obligation, with respect to any executory contract or unexpired lease except as may otherwise be provided in the Plan.

Any executory contract or unexpired lease assumed pursuant to the Plan shall be and hereby is assumed by the Debtor(s) as of the Effective Date and shall be fully enforceable by the Debtor(s) in accordance with its terms thereof, and shall include all written modifications,

amendments, supplements of said executory contract or unexpired lease and, as with respect to executory contracts or unexpired leases that relate to real property, shall include all written agreements and leases appurtenant to the premises, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easements, and any other interests in real property or rights *in rem* related to such premises. Listing a contract or lease on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" is not deemed an admission by the Debtors or Reorganized Debtors that such contract is an executory contract or unexpired lease or that the Debtors or Reorganized Debtors has any liability thereunder.

The Debtors reserve the right at any time before the Effective Date to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to: (a) delete any executory contract or unexpired lease listed on the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its assumption under the Plan, or (b) add any executory contract or unexpired lease to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," thus providing for its rejection under the Plan. The Debtors shall provide notice of any such amendment of the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to the other party or parties to the affected executory contract and/or unexpired lease, and to the Office of the Bankruptcy Administrator.

5.2    ***Cure Payments, Compensation for Pecuniary Loss, and Adequate Assurance.*** All payments, including any and all cure payments, adequate assurance or compensation for actual pecuniary loss, that are required to be paid or provided by Sections 365(b)(1)(A)-(C) of the Bankruptcy Code (collectively, all cure payments, and any and all provisions for adequate assurance and/or compensation for actual pecuniary loss due or required to be paid under Section 365(b)(l)(A)-(C) of the Bankruptcy Code (the "Cure Payments") for any executory contract or unexpired lease that is being assumed under the Plan, unless disputed by the Debtor, shall be made by the Reorganized Debtor on the Effective Date. **The Debtors hereby give notice that there are no Cure Payments due with respect to any executory contracts and unexpired leases to be assumed by the Debtors under the Plan. Any non-Debtor party to any executory contract or unexpired lease to be assumed under the Plan that objects to assumption of the executory contract or unexpired lease or believes that a Cure Payment is due in connection with such assumption must file a written objection to the assumption of such executory contract or unexpired lease with no Cure Payment and state in the written objection the grounds for such objection and specifically set forth the amount of any request for a Cure Payment by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan.** Unless the non-debtor party to any executory contract or unexpired lease to be assumed files and serves on the Debtors and their counsel an objection to assumption of such executory contract or unexpired lease for any reason, or asserting that a Cure Payment is required or owed in connection with such assumption, by the deadline established by the Bankruptcy Court for filing objections to confirmation of the Plan, then the executory contracts and unexpired leases shall be assumed, and any default then existing in the executory contract and/or unexpired lease shall be deemed cured as of the Effective Date, and there shall be no other cure obligation or Cure Payment due or owed by anyone, including the Debtors and the Reorganized Debtors, in connection with such assumption of the executory contract or unexpired lease unless otherwise set forth in this Plan. Any Claims for Cure

Payments not Filed as part of a written objection to the proposed assumption within such time period will be forever barred from assertion against the Debtors, the Estates, the applicable Reorganized Debtor(s), and their assets, and the holders of any such Claims are barred from recovering any distributions under the Plan on account thereof unless provided otherwise in this Plan. In the event of an objection to the assumption of executory contracts or unexpired leases regarding the amount of any Cure Payment, or the ability of the applicable Reorganized Debtor(s) to provide adequate assurance of future performance or any other matter pertaining to assumption, (a) the Bankruptcy Court will hear and determine such dispute at the Confirmation Hearing, and (b) in the discretion of the Debtors, the Debtors (i) may assume such disputed executory contract or unexpired lease by curing any default or providing adequate assurance in the manner determined by the Bankruptcy Court, or (ii) the Debtors may reject such executory contract or unexpired lease as of the Effective Date. The Reorganized Debtors shall make any Cure Payment on the later of the Effective Date or the date such Cure Payment is due pursuant to a Final Order, provided however that the applicable Reorganized Debtor(s) shall have ten (10) Business Days after any order determining the amount of a disputed Cure Payment becomes a Final Order in which to amend the "Schedule of Executory Contracts and Unexpired Leases to be Rejected" to provide for the rejection of such executory contract or unexpired lease and, in such an event, such executory contract or unexpired lease shall be deemed rejected as of the Effective Date.

5.3     ***Effect of Confirmation Order on Executory Contracts and Unexpired Leases.*** Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumptions pursuant to Section 365(a) and 1123(b)(2) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of the Debtors, the Estates, and all parties in interest. In addition, the Confirmation Order shall constitute a finding of fact and conclusion of law that (i) there are no defaults of the Debtor(s), no Cure Payments owing (including that there is no compensation due for any actual pecuniary loss), (ii) there is adequate assurance of future performance with respect to each such assumed executory contract or unexpired lease, (iii) such assumption is in the best interest of the Debtor(s) and the Estates, (iv) upon the Effective Date, the assumed executory contracts or unexpired leases constitute legal, valid, binding and enforceable contracts in accordance with the terms thereof, and (v) the non-Debtor counter party to each assumed executory contract or unexpired lease is required to and ordered to perform under and honor the terms of the assumed executory contract or unexpired lease. All executory contracts and unexpired leases assumed under the Plan or during the Chapter 11 Cases constitute valid contracts and leases, as applicable, enforceable by the Debtors against the non-Debtor counterparties regardless of any cross-default or change of control provisions in any contracts or leases assumed or rejected under the Plan or during the Chapter 11 Cases.  Subject to the occurrence of the Effective Date, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection as of the Effective Date of all executory contracts and unexpired leases which are not assumed under this Plan, with the rejection effective as of the day before the Petition Date, as being burdensome and not in the best interest of the estate.

5.4     ***Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.***  Any Claims for damages arising from the rejection of an executory contract or unexpired lease under this Plan must be Filed within

fourteen (14) days after the Confirmation Date or, with respect to any executory contracts or unexpired leases which are rejected after the Confirmation Date, by amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," no later than fourteen (14) days after the date of such amendment to the "Schedule of Executory Contracts and Unexpired Leases to be Rejected," or such Claims will be forever barred and unenforceable against the Debtors, Reorganized Debtors, and their assets and the holders of any such Claims are barred from receiving any distributions under the Plan.

**ARTICLE 6**
**DISTRIBUTIONS UNDER THE PLAN**

6.1    *Consolidated Distribution Pool*.  Subject to the occurrence of the Effective Date, the Debtors' Estates will be deemed substantively consolidated for the purposes of making distributions under the Plan.  All Intercompany Claims shall be deemed disallowed and no distributions will be made under the Plan on account of Intercompany Claims.  The assets and liabilities of the Debtors shall be pooled and all claims shall be satisfied from the assets of a single consolidated estate.  Any claims against one or more of the Debtors (including Claims based upon guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor) shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under the Plan only with respect to such single Claim.

6.2    *Distributions Under the Plan.*  The Reorganized Debtors or any distribution agent the Reorganized Debtors may retain shall make all distributions to the holders of Allowed Claims and Allowed Interests that are required under this Plan.  If any litigation now pending is resolved by Final Order or settlement, and the Debtor is ordered to pay any sums to the successful litigant, then such party shall become a creditor, and shall share in distributions to the appropriate Class. Whenever any distribution to be made under this Plan shall be due on a day other than a Business Day, such distribution shall instead be made, without the accrual of any interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

6.3    *Delivery of Distributions.*  Distributions to a holder of an Allowed Claim or Allowed Interest shall be made at the address of such holder as indicated on the Debtors' records. In the event that any such distribution is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of the applicable holder, and no distribution to such holder shall be made unless and until the Reorganized Debtors have determined such then current address, provided, however, that if any distribution remains unclaimed after three (3) months after distribution, such distribution shall be deemed unclaimed property pursuant to Section 347(b) of the Bankruptcy Code and shall become vested in the Reorganized Debtors. In such event, the Claim of the holder for such distribution shall no longer be deemed to be Allowed, and such holder shall be deemed to have waived its rights to any further distributions under this Plan pursuant to Section 1143 of the Bankruptcy Code, shall have no further claim or right thereto, and shall not participate in any further distributions under this Plan with respect to such Claim. Checks issued by the Reorganized Debtors in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  The Reorganized Debtors shall have the right to defer making any interim de

minimis distribution of less than $250 to the holder of an Allowed Claim until the total amount of interim distributions to that Creditor exceed $250.

   6.4  ***Third-Party Agreements.*** Distributions to Creditors hereunder will not affect the right of any Entity to levy, garnish, attach, or employ other legal process with respect to such distributions. All subordination agreements entered into by any parties in interest shall be enforceable to the extent permitted by applicable law, and all distributions and payments made pursuant to the Plan shall be subject to applicable law.

   6.5  ***Manner of Payment Under the Plan.*** At the option of the Reorganized Debtors, any payment to be made under the Plan may be made by check, ACH or wire transfer from a domestic bank or as otherwise required by applicable agreement.

   6.5  ***No Fractional Distributions.*** For purposes of distributions, Cash distributions may be rounded up or down, as applicable, to the nearest whole dollar.

<div align="center">

**ARTICLE 7**
**MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN**

</div>

   7.1  ***Sources of Funding.*** The Plan contemplates that distributions will be funded by revenues generated during the Debtors' post-petition operations, the Reorganized Debtors' continued business operations and future revenue, and a $150,000.00 Equity Contribution from the holders of the Debtors' Equity Interests. Depending on the elections made by the Bank, the Plan may also be funded through the net proceeds of the Sale and Leaseback Transaction.

   7.2  ***Consolidated Distribution Pool***. Subject to the occurrence of the Effective Date, the Debtors' Estates will be deemed substantively consolidated for voting and distribution purposes only. No distributions will be made under the Plan on account of Intercompany Claims. The assets and liabilities of the Debtors shall be pooled and all claims shall be satisfied from the assets of a single consolidated estate. Any claims against one or more of the Debtors (including Claims based upon guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor) shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to distributions under the Plan only with respect to such single Claim. Nothing contained in the Plan should be deemed to be a corporate merger of the Debtors, to alter their organizational or corporate structures, or to alter the Debtors' individual tax attributes or status.

   7.3  ***Motion to Appoint Broker/Approve Purchase Agreement***. In the event that the Bank votes to accept Option 2 under Section 3.2.2 above, then this provision of the Plan shall be deemed to be a motion to: (a) appoint Stump as the real property broker to the Debtors, (b) approve Stump's compensation for serving as real property broker, (c) approve the Sale and Leaseback Transaction pursuant to, inter alia, sections 363 and 1123(a)(5)(D) of the Bankruptcy Code, and (d) approve an Agreement for Purchase and Sale of Real Property related to the Sale and Leaseback Transaction. In the event the Bank does not vote to accept Option 2, then this motion shall be deemed moot.

7.4      *Insider Salaries*.  It is anticipated that the following insiders will remain as employees of debtor UCS after the Effective Date: Larry Schwartz, Jason Schwartz, Zach Schwartz, and Adam Schwartz.  The aggregate annual salaries to be paid to these insider employees is $600,000.00 per year.  These employees shall be entitled to an annual percentage cost of living adjustment.

7.5      *Independent CFO*.  Debtor UCS shall hire an independent chief financial officer (the "Independent CFO") with customary duties such as planning, implementing, managing and running all of the financial activities of the company.  ABTVRS is actively interviewing candidates to serve as the Independent CFO.  In the event that an Independent CFO is not hired prior to the Effective Date, then ABTVRS will serve as the initial interim Independent CFO until a successor is hired.

7.6      *Independent Director.*  On the Effective Date, an independent director (the "Independent Director") will be appointed to monitor and oversee the Reorganized Debtors' financial affairs and to ensure compliance with the Plan.  The Independent Director shall be entitled to receive reasonable and customary compensation, expense reimbursement, and indemnification from the Debtors.  The Independent Director shall have the right to seek to reopen the Chapter 11 Cases to seek orders of the Bankruptcy Court to ensure compliance with the Plan and the fees and costs of the Independent Director shall be paid by the Reorganized Debtors.

7.7      *Insider Officers/Directors.*  Pursuant to 11 U.S.C. § 1129(a)(5)(A), Jason Schwartz, Zach Schwartz, and Adam Schwartz will serve as officers and directors of the Reorganized Debtors post-confirmation.  Larry Schwartz shall no longer be an officer or director of the Reorganized Debtors.  Nor will Larry Schwartz have signatory authority over the Reorganized Debtors' bank accounts during the life of the Plan, and he will be subject to the terms of the Plan, and the oversight of the Independent Director.

7.8      *Authority to Act Following Confirmation Date.* Upon confirmation of this Plan, the Debtors shall be authorized to take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Plan including, without limitation, the execution and filing of all documents required or contemplated by this Plan. In connection with the occurrence of the Effective Date, the Reorganized Debtors are authorized to execute, deliver, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

7.9      *Authority to Act Following Effective Date.* The Reorganized Debtors shall be authorized to execute, deliver, file, or record such contracts, instruments, articles, releases, indentures, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

7.10      *Status of Liens of Secured Tax Claims and Other Lien Claimants.*  Unless otherwise provided in this Plan or by Order of the Bankruptcy Court, on the Effective Date, all

existing liens held by any Class or Classes on the Debtor's assets shall retain the same priority that existed on the Petition Date, provided that such liens shall not extend to property acquired by the Debtors after commencement of the Chapter 11 Cases as set forth in section 552 of the Bankruptcy Code.  Section 552 of the Bankruptcy Code shall continue to apply to all such liens and security interests following confirmation of the Plan. All other liens and encumbrances not specifically provided for in the Plan shall be deemed automatically canceled, terminated and of no further force or effect without further act or action under any applicable agreement, law, regulation, order, or rule.  Post-confirmation, the Reorganized Debtors are permitted to liquidate any assets subject to a lien as provided herein.  Any creditor holding such a lien shall release the same immediately upon its receipt of the proceeds of such sale up to the full amount of its Allowed Secured Claim related to the asset sold.

     7.11     ***Reopening of Bankruptcy Case, Sale Process***.

In the event the Bank selects Option 2 and the Sale Closing Date fails to occur on or before December 31, 2021, then the following shall occur:

     7.11.1     *Re-Opening of Bankruptcy Case.*

The Reorganized Debtors or the Bank shall file an *ex parte* motion to reopen the Chapter 11 Cases, pursuant to section 350(b) of the Bankruptcy Code and Bankruptcy Rule 5010 to allow the Reorganized Debtors to sell the Reorganized Debtors business and real property pursuant to, *inter alia*, sections 363 and 1123(a)(5)(D) of the Bankruptcy Code.  Neither the Reorganized Debtors nor any of their affiliated entities, owners, management or any other related or affiliated parties will object, in any way, to the sale process or any motion to reopen the Chapter 11 Cases.

     7.11.2     *Continuation of Business Operations.*

As provided below, and until the sale closing, the Reorganized Debtors shall continue their business operations.

     7.11.3     *Appointment of Broker or Investment Banker.*

(a)     The Reorganized Debtors shall seek appointment of a broker and/or investment banker (a "Broker," or collectively "Brokers") by formal motion (the "Broker Motion") with the Bankruptcy Court.  Subject to the oversight of the Bank and upon approval of its retention by the Court, Broker(s) shall have the rights and powers set forth in a brokerage agreement in a form agreeable to Reorganized Debtors and Bank in their reasonable discretion (the "Brokerage Agreement").

(b)     Broker(s), in consultation with the Bank and Reorganized Debtors, will formulate an advertising and marketing plan in accordance with the Brokers' expertise and market conditions.  The Reorganized Debtors and the Bank will identify Broker(s) that will conduct a robust marketing process and will negotiate to minimize, to the extent possible,

compensation paid to such Broker(s).  Broker(s) shall be governed in all things by the terms of Brokerage Agreement and the Plan.

7.11.4     *Sale and Sale Closing.*

(a)     The Reorganized Debtors shall file a motion to sell the Debtors' business and real property assets with reasonable and customary sale and bidding procedures to be established by the Bankruptcy Court.  (the "Sale Motion").

(b)     The sale shall be (i) deemed made pursuant to the Plan, (ii) free and clear of all Liens, Claims, and Encumbrances pursuant to sections 363(f) and 1123(a)(5)(D) of the Bankruptcy Code, with all such liens, claims, and encumbrances attaching to the net sale proceeds of such sales subject to the terms and conditions of the Plan; and (iii) deemed made pursuant to Bankruptcy Code section 1146(a) and therefore not subject to any a stamp or similar taxes under applicable non-bankruptcy law.

7.11.5     *Distributions Following Sale Closing.*

Upon the closing of the sale, the Reorganized Debtors shall distribute all Cash, including all proceeds from the sale, as follows: (a) *first*, to pay all trailing operating expenses that were incurred and unpaid by the Reorganized Debtors prior to the closing of the sale; (b) the costs and expenses of the sale, including, without limitation, attorney's fees, satisfaction of any liens on or Allowed Claims for set off or recoupment against the property, and all fees payable to Broker(s) on account of the sale; (b) *second*, to pay any unpaid administrative claims under the Plan or otherwise allowed as part of the Chapter 11 Cases; (c) *third*, to pay the Bank the aggregate amount of (i) the Stipulated Payoff Amount, plus (ii) any monthly payment of $30,000.00 that accrued from February 2021 through the closing date but which monthly payment was unpaid as of the closing date, and (iii) the Bank's reasonable attorney's fees associated with reopening the Bankruptcy Case and prosecuting the sale contemplated in this Section 7.11, (d) *fourth*, to pay each Holder of an Allowed Priority Tax Claim, (e) *fifth*, to pay a Pro Rata Share to each Holder of an Allowed General Unsecured Claim as provided in Sub-Class 7A of Section 3.7.2 hereof; (e) *sixth*, to pay a Pro Rata Share to each Holder of an Insider Claim; and (f) *seventh*, to pay to pay a Pro Rata Share to each Holder of an Equity Interest.

## ARTICLE 8
## RESOLUTION OF DISPUTED CLAIMS AND INTERESTS

8.1     ***Objections to Claims and Interests; Prosecution of Disputed Claims and Interests.***  The Debtors and, after the Effective Date, the Reorganized Debtors, shall have the exclusive right to object to the allowance, amount or classification of Claims and Interests asserted in the Chapter 11 Cases, and such objections may be litigated to Final Order by the Debtors or Reorganized Debtors, as applicable, or compromised and settled in accordance with the business judgment of the Debtors or Reorganized Debtors, as applicable, without further order of the Bankruptcy Court. Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections to Claims and Interests shall be filed no later than one year after the Effective Date, subject to any extensions granted pursuant to a further order of the Bankruptcy

Court, which extensions may be obtained by the Reorganized Debtors upon *ex parte* motion.

8.2 ***Estimation of Disputed Claims and Interests.*** The Debtors and, after the Effective Date, the Reorganized Debtors, may at any time request that the Bankruptcy Court estimate for all purposes, including distributions under this Plan, any Disputed, contingent or unliquidated Claim or Interest pursuant to Section 502(c) of the Bankruptcy Code whether or not the Debtors or the Reorganized Debtors have previously objected to such Claim or Interest. The Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest at any time, including, without limitation, during the pendency of an appeal relating to such objection.

8.3 ***No Distribution on Account of Disputed Claims and Interests.*** Notwithstanding anything else contained in this Plan, except with respect to any undisputed, non-contingent and liquidated portion of General Unsecured Claims, no distribution shall be due or made with respect to all or any portion of any Disputed, contingent, or unliquidated Claim until the Claim becomes an Allowed Claim by Final Order.

## ARTICLE 9
## EFFECT OF CONFIRMATION OF PLAN

9.1 ***Vesting of Assets and Retained Causes of Action.*** On the Confirmation Date, pursuant to § 1141(b) of the Bankruptcy Code, all assets of the Debtors and Debtors in Possession shall vest in the applicable Reorganized Debtor free and clear of any and all Claims, Liens, Interests, and other interests, charges and encumbrances, except as otherwise expressly provided in this Plan or in the Confirmation Order. From and after the Confirmation Date, the Reorganized Debtors may operate their businesses and may own, use, acquire and dispose of their assets free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if the Chapter 11 Cases had never been filed. Except as otherwise specifically provided in this Plan, the Reorganized Debtors shall retain all rights and are authorized to commence and pursue, as they deem appropriate, any and all claims and causes of action, including, but not limited to Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases, and including but not limited to, the claims and causes of action specified in the Plan.

9.2 ***Binding Effect.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of the Plan, on and after the occurrence of the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or an Interest in, the Debtors and such holder's successors and assigns, whether or not such holder's Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan.

9.3 ***Discharge of the Debtors.*** Except as otherwise provided in this Plan or the Confirmation Order, the rights afforded in this Plan and the treatment of Claims and Interests herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims against and Interests in the Debtors, the Debtors in Possession, the Reorganized Debtors or the assets, interests in, or property of the Debtors, the Debtors in Possession or the Reorganized

Debtors of any nature whatsoever, including any Interest accrued on any Claim from and after the Petition Date.  Except as expressly otherwise provided herein or in the Confirmation Order, all Claims arising before the Effective Date (including those arising under Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code) against the Debtors and the Debtors in Possession (including any based on acts or omissions that constituted or may have constituted ordinary or gross negligence or reckless, willful, or wanton misconduct of any of the Debtors' officers, directors, employees, or agents, or any conduct for which the Debtors may be deemed to have strict liability under any applicable law), and all Interests shall be irrevocably satisfied, discharged, cancelled and released in full.

For the avoidance of doubt, the Reorganized Debtors shall be responsible only for (a) those payments and Distributions expressly provided for or due under this Plan and (b) Claims and Interests that are not cancelled and discharged pursuant to specific and express provisions of this Plan, and then only to the extent and in the manner specifically and expressly provided in this Plan. All Entities are precluded and forever barred from asserting against the Debtors, the Debtors in Possession, or the Reorganized Debtors, or the assets, properties, or Interests in or property of the Debtors, the Debtors in Possession, or the Reorganized Debtors of any nature whatsoever, any Claims or Interests based upon any act or omission, transaction, or other activity, event, or occurrence of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases there for were known or existed prior to the Effective Date, except for (a) those payments and distributions expressly due under this Plan and (b) Claims and Interests, if any, that are not cancelled and discharged under the Plan, but instead survive pursuant to specific and express provisions of this Plan.

9.4     ***Indemnification Obligations.*** Subject to the occurrence of the Effective Date as set forth in Article 10 of this Plan, the obligations of the Debtors to indemnify, reimburse or limit liability of any person who is serving or has served as one of its directors, officers, employees or agents by reason of such person's prior or current service in such capacity as provided in the applicable articles of organization, operating agreements, partnership agreements, or bylaws, by statutory law or by written agreement, policies or procedures of or with the applicable company, shall be deemed to be and treated as executory contracts that are assumed by the Debtors and assigned to the Reorganized Debtors pursuant to the Plan and section 365 of the Bankruptcy Code and shall not be affected by or discharged by this Plan. Nothing in the Plan shall be deemed to affect any rights of any director or officer or any other person against any insurer with respect to any directors or officers liability insurance policies.

9.5     ***Term of Certain Injunctions.*** Unless otherwise provided herein or in the Confirmation Order, all injunctions and/or stays provided for in, or in connection with, these Chapter 11 Cases, whether pursuant to the provisions of the Bankruptcy Code or other applicable law, in existence on the Confirmation Date, shall remain in full force and effect through the Effective Date and thereafter if so provided by this Plan, the Confirmation Order, or by their own terms ; *provided that* any holder of an Allowed Secured Claim whose collateral is surrendered to it pursuant to the terms of this Plan, or, any holder of an Allowed Secured Claim whose collateral is retained by the Reorganized Debtor pursuant to the terms of this Plan but with respect to which there is a post-confirmation default by the Reorganized Debtors in their obligations hereunder, shall not be enjoined nor prohibited from exercising its *in rem* rights as to

such collateral under applicable state law following occurrence of the Effective Date upon written notice to the Reorganized Debtors of its intent to do so and the passage of thirty (30) days to give the Reorganized Debtors the opportunity to cure the default or seek an order from the Bankruptcy Court. In addition, on and after the Confirmation Date, the Debtors may seek such further orders as it deems necessary or appropriate to preserve the *status quo* during the time between the Confirmation Date and the Effective Date.

9.6   ***No Successor Liability.*** Except as otherwise stated in the Plan or Confirmation Order, neither the Debtors nor the Reorganized Debtors will have any responsibilities for any liabilities or obligations of the Debtors or any of the Debtors' past or present subsidiaries relating to or arising out of the operations of or assets of the Debtors or any of the Debtors' past or present subsidiaries, whether arising prior to, or resulting from actions, events, or circumstances occurring or existing at any time prior to the Effective Date. The Reorganized Debtors shall have no successor or transferee liability of any kind or character, for any Claims; provided, however, that the Reorganized Debtors shall have the obligations for the payments specifically and expressly provided, and solely in the manner stated, in this Plan.

9.7   ***Preservation of Claims Not Settled or Released.*** Without limiting any other provisions of this Plan, unless a Claim or cause of action against a Creditor or other Entity is expressly and specifically waived, released, compromised or settled in this Plan or any Final Order, the Reorganized Debtors reserve the same for pursuit by the Reorganized Debtors after the Effective Date. No preclusion doctrine, including, without limitation, res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or causes of action upon or after the Confirmation Date or the Effective Date of the Plan. The Reorganized Debtors reserve the right to pursue or adopt any claims (and any defenses), causes of action, or objections of the Debtors or Debtors in Possession as trustee for or on behalf of its Creditors, not specifically waived, released, compromised or settled in this Plan or any Final Order against any Entity, including, without limitation, the plaintiffs or codefendants in any lawsuits. The Reorganized Debtors shall be a representative of the Estates appointed for the purposes of pursuing any and all such claims and Causes of Action under 11 U.S.C. § 1123(b)(3)(B).

Any Entity to whom the Debtors have incurred an obligation (on account of services, purchase or sale of goods, tort, breach of contract or otherwise), or who has received services or otherwise transacted business with the Debtors in any capacity should assume that such obligation, transfer, or other transaction may be reviewed by the Reorganized Debtors subsequent to the Effective Date and may, to the extent not theretofore specifically waived, relinquished, released, compromised or settled in this Plan or any Final Order, be the subject of an action, claim, demand, or objection after the Effective Date, whether or not (a) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases, (b) such Entity's proof of claim has been objected to, (c) such Entity's Claim was included in the Debtors' Schedules, or (d) such Entity's scheduled Claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent, or unliquidated.

9.8   ***Plan as Settlement; Release of Individual Guarantors.*** Upon the Effective Date, and in consideration for the consideration provided herein, the individual guarantors shall be

released and discharged of any liability arising out of or related to the operation of the Debtors. These releases and discharges shall be construed as broadly as possible consistent with applicable law and are to include, *inter alia*, any and all liability in the nature of actions, claims or rights to recover attorneys' fees, causes of action, choses in action, objections, motions, contracts, guarantees, indemnity, contribution, subrogation, costs, damages, debts, demands, expenses, interest, liabilities, losses, stock ownership or membership rights, obligations, rights, royalties and warranties, of every kind and nature whatsoever, that was or could have been asserted by the Debtor, the Estates, and/or Creditors, in law or in equity, in contract or in tort, whether the facts upon which the same may be based are now known or unknown, and the holders of any such claims or rights shall be forever barred, enjoined, and prohibited from pursuing the same.

Upon the Effective Date, Larry Schwartz, the Estate of Jeffery Schwartz, and Iris Schwartz shall be deemed to have released the Debtors, the Estates and the Reorganized Debtors from any liability arising out of or related to the operations of the Debtors. These releases and discharges shall be construed as broadly as possible consistent with applicable law and are to include, *inter alia*, any and all liability in the nature of actions, claims or rights to recover attorneys' fees, causes of action, choses in action, objections, motions, contracts, guarantees, indemnity, contribution, subrogation, costs, damages, debts, demands, expenses, interest, liabilities, losses, obligations, rights, royalties and warranties, of every kind and nature whatsoever, that was or could have been asserted by Larry Schwartz, the Estate of Jeffery Schwartz, and Iris Schwartz, in law or in equity, in contract or in tort, whether the facts upon which the same may be based are now known or unknown, and they shall be forever barred, enjoined, and prohibited from pursuing the same.

The Plan represents a negotiated settlement. Accordingly, the filing of the Plan shall constitute a motion for approval of such settlement pursuant to Bankruptcy Rule 9019.

## ARTICLE 10
## THE EFFECTIVE DATE OF THE PLAN

10.1     ***Conditions to Occurrence of Effective Date of Plan.*** The "effective date of the plan," as used in Section 1129 of the Bankruptcy Code, shall not occur until the Effective Date as defined herein. The Effective Date shall occur upon satisfaction of the following conditions precedent (or conditions subsequent with respect to actions that are to be taken contemporaneously with, or immediately upon, the occurrence of the Effective Date):

10.1.1 The Confirmation Order shall have been entered by the Bankruptcy Court.

10.1.2   All actions, agreements and instruments, or other documents necessary to implement the terms and provisions of the Plan, if any, shall have been executed and delivered by any applicable non-debtor parties in form and substance satisfactory to the Debtors.

10.1.3   All fees and expenses due to or incurred by Professionals for the Debtors through the Effective Date not previously paid pursuant to interim or Final Orders shall have been paid into and shall be held in trust, free and clear of Liens, Claims and encumbrances (other

than the rights of such Professionals) until due and payable in accordance with applicable court order.

      10.2    ***Revocation of Confirmation Order or Withdrawal of Plan.*** The Debtors may revoke or withdraw the Plan prior to the Confirmation Date by filing a Notice of Withdrawal of Plan in the record of the Chapter 11 Cases. If the Plan is withdrawn prior to the Confirmation Date or if the Effective Date does not occur as set forth in Article 10, then the Plan shall be deemed withdrawn and the Confirmation Order (if any has been entered) shall be automatically revoked without the need for any action by any party in interest or the Bankruptcy Court. In such event, the Plan and the Confirmation Order shall be of no further force or effect and, the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the filing of the Plan, and (ii) all the Debtors' respective obligations with respect to the Claims and Interests shall remain unchanged, all of the Debtors' rights and claims against all Entities shall be fully preserved and nothing contained herein shall be deemed to constitute an admission or statement against interest or to constitute a waiver or release of any claims by or against the Debtors or any other persons or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors or any other persons.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

      11.1 ***Payment of Statutory Fees.*** All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid by the Reorganized Debtors, as, when and in the amount as required by applicable law. The Bankruptcy Administrator shall not be obligated to file an application authorizing the payment of all such fees.

      11.2 ***Notice.*** Any notice required or permitted to be provided to the Debtors or Reorganized Debtors under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

<div align="center">

Moon Wright & Houston, PLLC.
c/o Andrew T. Houston
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202

</div>

      11.3 ***Headings.*** The headings used in this Plan are inserted for convenience only and do not in any manner affect the construction of the provisions of this Plan.

      11.4 ***Governing Law***. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of North Carolina, without giving effect to any conflicts of law principles thereof that would result in the application of the laws of any other jurisdiction, shall govern the construction of this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise expressly provided in such instruments, agreements, or documents.

11.5 ***Additional Documents.*** The Debtors have the authority to take any and all actions and to execute (and perform) any agreements and documents as the Debtors deem necessary or appropriate in their reasonable discretion to effectuate and further evidence the terms and conditions of this Plan.

11.6 ***Compliance with Tax Requirements.*** In connection with this Plan, the Debtors and the Reorganized Debtors will comply with all applicable withholding and reporting requirements imposed by federal, state, and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

11.7 ***Exemption from Transfer Taxes.*** Pursuant to § 1146(a) of the Bankruptcy Code, to the extent applicable, the issuance, transfer, or exchange of any securities under this Plan, the making or delivery of any mortgage, deed of trust, other security interest, or other instrument of transfer under, in furtherance of, or in connection with this Plan, shall be exempt from all taxes as provided in such section of the Bankruptcy Code.

11.8 ***Further Authorizations.*** The Debtors, and after the Effective Date, the Reorganized Debtors, may seek such orders, judgments, injunctions, and rulings they deem necessary or useful to carry out the intention and purpose of, and to give full effect to, the provisions of this Plan.

11.9 ***Successors and Assigns.*** The rights, benefits and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor or assign of such Entity.

11.10 ***Modification and Amendment of the Plan.*** Subject to the restrictions in section 1193 of the Bankruptcy Code, this Plan may be amended or modified by the Debtors, and, after the Effective Date, by the Reorganized Debtors.

11.11 ***Termination of Trustee.*** The Trustee shall be terminated upon the substantial consummation of the Plan, and the Reorganized Debtors shall file a notice of substantial consummation of the Plan on the docket in the Bankruptcy Case.

11.12 ***506(b), (c) Claims.*** Unless otherwise specifically provided for herein, no party shall be entitled to fees, expenses, or compensation pursuant to Section 506(b) or (c) of the Bankruptcy Code.

11.13 ***Remedies.***

Upon default by the Debtors of any required payments for an allowed Secured Claim set forth in Article 3, and upon Debtor's failure to cure the default within 30 days from the date written notice of default is mailed to the Debtor's last known address, the holder of the Allowed Secured Claim for which payment is in default may, notwithstanding anything in the Plan or in the Order Confirming Plan to the contrary, pursue all of its state law remedies including, without limitation, repossession and sale, lease, or other disposition of its collateral.

Except as otherwise provided in the Plan, the exclusive remedy for breach of the Plan shall be to bring an action to enforce the Plan in Bankruptcy Court.

## ARTICLE 12
## RETENTION OF JURISDICTION

Pursuant to §§ 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and have jurisdiction to the fullest extent provided by applicable law over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases or this Plan, including, without limitation, the following:

12.1 *Executory Contracts and Unexpired Leases.* To hear and determine any and all motions or applications (i) for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which one or more of the Debtors is a party or with respect to which the Debtors may be liable, (ii) to review and determine all Cure Payments under any such assumed executory contract or unexpired lease, and (iii) to review and determine any Claims resulting from the rejection of any executory contract or unexpired lease.

12.2 *Causes of Action.* To determine any and all Causes of Action, including all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Reorganized Debtors after the Effective Date.

12.3 *Disputed Claims, Contingent Claims and Unliquidated Claims Allowance/Disallowance.* To hear and determine any objections to the allowance of Claims or Interests (other than Claims that are Allowed pursuant to the Plan or by prior, Final Order of the Bankruptcy Court), including but not limited to any objections to the classification of any Claim, and to allow or disallow any contingent Claim, Disputed Claim, unliquidated Claim, contingent Interest, disputed Interest in whole or in part, and to determine any and all disputes among Creditors and holders of Interests with respect to their Claims and Interests.

12.4 *Enforcement/Modification of Plan.*

12.4.1 To hear and determine any requests to modify this Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order.

12.4.2 To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with this Plan or any other Plan documents or their interpretation, implementation, enforcement, or consummation.

12.4.3 To hear and determine other matters that may be set forth in the Plan and Confirmation Order or that relate to any transaction required or contemplated by the Plan.

12.4.4 To hear and determine any other matters related hereto, including matters related to the implementation and enforcement of the Plan, the Confirmation Order, and all

orders entered by the Bankruptcy Court in the Chapter 11 Cases.

        12.4.5 To hear and determine any issue relating to distributions under the Plan.

        12.4.6 To enter such orders as are necessary to implement and enforce the injunctions described herein, including orders extending the protections afforded under Section 105 of the Bankruptcy Code.

        12.4.7 To issue such orders in aid of execution of this Plan to the fullest extent authorized or contemplated by Section 1142 of the Bankruptcy Code.

        12.5     ***Compensation of Professionals.*** To hear and determine all applications for allowance of compensation and reimbursement of expenses of Professionals, any other fees and expenses authorized to be paid or reimbursed under this Plan (whether pursuant to order of the Court, agreement, or otherwise), and to approve the reasonableness of any payments made or to be made as provided in Section 1129(a)(4) of the Bankruptcy Code. To the extent not fully paid on the Effective Date, the Reorganized Debtors (and/or its assigns) are permitted and authorized to reimburse Professionals in installments.

        12.6     ***Settlements.*** To the extent that Bankruptcy Court approval is required, to consider and act on any compromise and settlement of any Claim against or Cause of Action by the Debtors or the Reorganized Debtors.

        12.7     ***Taxes.*** To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, Debtors in Possession or Reorganized Debtors may be liable, directly or indirectly.

        12.9     ***Specific Purposes.*** To hear and determine such other matters as may be provided for in the Confirmation Order or may be appropriate under applicable law.

        12.10    ***Final Decree.*** To enter an order or final decree closing the Chapter 11 Cases.

<div align="center">

**[SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

</div>

Dated: Charlotte, North Carolina
      November 5, 2020

Respectfully submitted,

United Canvas & Sling, Inc.

By:         */s/ Edward J. Sanz*
ABTV Receivership Services, LLC
Independent Manager
By: Edward J. Sanz

Rounders Pit Foam, LLC

By:         */s/ Edward J. Sanz*
ABTV Receivership Services, LLC
Independent Manager
By: Edward J. Sanz

Schwartz Family Properties North Carolina, LLC

By:         */s/ Edward J. Sanz*
ABTV Receivership Services, LLC
Independent Manager
By: Edward J. Sanz

**MOON WRIGHT & HOUSTON, PLLC**

        */s/ Andrew T. Houston*
Andrew T. Houston (Bar No. 36208)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone:  (704) 944-6560
*Counsel for the Debtors*

# EXHIBIT 1-A

## Financial Projections Related to Aquesta Bank Option 1

MWH: 10725.001; 00024049.4

| UCS, Inc. - Exhibit 1A | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | 2021B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Income Statement | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | | |
| Sales-Sewing | | | | | | | | | | | | | 0 | 0.0% |
| Sales Metals | | | | | | | | | | | | | 0 | 0.0% |
| Sales-Buy and Sells | | | | | | | | | | | | | 0 | 0.0% |
| Total Sales-Ucs | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.0% |
| | | | | | | | | | | | | | | |
| SPS-Metal | | | | | | | | | | | | | - | 0.0% |
| Total Sales-SPS | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| | | | | | | | | | | | | | | |
| Sales Returns | | | | | | | | | | | | | - | 0.0% |
| Sales Adjustment | | | | | | | | | | | | | - | 0.0% |
| Total Sales Returns and Allowances | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| | | | | | | | | | | | | | | |
| Management Fee Income | | | | | | | | | | | | | - | 0.0% |
| Interest Income | | | | | | | | | | | | | - | 0.0% |
| Discount Earned | | | | | | | | | | | | | - | 0.0% |
| Other Income | | | | | | | | | | | | | - | 0.0% |
| Total Other Income | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total Revenue | 1,063,624 | 1,023,705 | 1,183,211 | 1,100,316 | 907,256 | 962,257 | 881,991 | 690,099 | 905,034 | 893,760 | 959,997 | 928,750 | 11,500,000 | 100.0% |
| | | | | | | | | | | | | | | |
| Materials | 319,087 | 307,112 | 354,963 | 330,095 | 272,177 | 288,677 | 264,597 | 207,030 | 271,510 | 268,128 | 287,999 | 278,625 | 3,450,000 | 30.0% |
| Applied Labor-OH | | | | | | | | | | | | | - | 0.0% |
| Direct Labor | 162,974 | 155,213 | 178,495 | 170,735 | 162,974 | 170,735 | 170,735 | 170,735 | 170,735 | 162,974 | 170,735 | 178,495 | 2,025,533 | 17.6% |
| Freight In | 10,636 | 10,237 | 11,832 | 11,003 | 9,073 | 9,623 | 8,820 | 6,901 | 9,050 | 8,938 | 9,600 | 9,288 | 115,000 | 1.0% |
| Total Cost of Shipment | 492,697 | 472,562 | 545,291 | 511,833 | 444,223 | 469,034 | 444,152 | 384,665 | 451,295 | 440,039 | 468,334 | 466,408 | 5,590,533 | 48.6% |
| | | | | | | | | | | | | | | |
| Outside Processing | 1,424 | 1,370 | 1,584 | 1,473 | 1,214 | 1,288 | 1,181 | 924 | 1,211 | 1,196 | 1,285 | 1,243 | 15,393 | 0.1% |
| Production Supplies | 21,272 | 20,474 | 23,664 | 22,006 | 18,145 | 19,245 | 17,640 | 13,802 | 18,101 | 17,875 | 19,200 | 18,575 | 230,000 | 2.0% |
| R & D Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 0.3% |
| Payroll Taxes | 22,168 | 21,206 | 24,461 | 23,376 | 22,168 | 23,376 | 23,253 | 23,376 | 23,376 | 22,168 | 23,376 | 24,338 | 276,644 | 2.4% |
| Depreciation | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 159,409 | 1.4% |
| Insurance | 43,225 | 45,805 | 48,575 | 45,805 | 43,225 | 48,405 | 27,195 | 34,805 | 45,805 | 43,225 | 45,805 | 43,225 | 515,101 | 4.5% |
| Utilities | 6,453 | 6,265 | 19,599 | 7,063 | 7,256 | 20,669 | 6,915 | 8,158 | 10,329 | 17,983 | 6,602 | 9,210 | 126,501 | 1.1% |
| Rep & Maint | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 | 0.8% |
| Rent | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 228,915 | 2.0% |
| Property Taxes | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 38,090 | 0.3% |
| Lease Expense | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 63,981 | 0.6% |
| Factory Expense | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 62,918 | 0.5% |
| Licenses & Fees | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 | 0.1% |
| Employee Benefit (401k) | 3,273 | 2,618 | 2,618 | 2,618 | 3,273 | 2,618 | 3,273 | 2,618 | 2,618 | 3,273 | 2,618 | 3,273 | 34,689 | 0.3% |
| Computer Exp | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 | 0.1% |
| Installations | 1,330 | 1,280 | 1,479 | 1,375 | 1,134 | 1,203 | 1,102 | 863 | 1,131 | 1,117 | 1,200 | 1,161 | 14,375 | 0.1% |
| Total Overhead Expense | 158,149 | 160,054 | 177,919 | 162,721 | 157,450 | 172,744 | 139,563 | 145,580 | 158,511 | 165,841 | 161,121 | 156,964 | 1,916,615 | 16.7% |
| Total COGS | 650,846 | 632,615 | 723,210 | 674,553 | 601,673 | 641,778 | 583,715 | 530,245 | 609,806 | 605,881 | 629,454 | 623,372 | 7,507,148 | 65.3% |
| Gross Profit/(Loss) | 412,778 | 391,090 | 460,001 | 425,763 | 305,583 | 320,479 | 298,276 | 159,854 | 295,228 | 287,879 | 330,543 | 305,378 | 3,992,852 | 34.7% |
| | | | | | | | | | | | | | | |
| Salaries | 54,555 | 51,957 | 59,750 | 57,153 | 54,555 | 57,153 | 57,153 | 57,153 | 57,153 | 54,555 | 57,153 | 59,750 | 678,038 | 5.9% |
| Depreciation | | | | | | | | | | | | | - | 0.0% |
| Freight Out | 21,272 | 20,474 | 23,664 | 22,006 | 18,145 | 19,245 | 17,640 | 13,802 | 18,101 | 17,875 | 19,200 | 18,575 | 230,000 | 2.0% |
| Telephone | | | | | | | | | | | | | - | 0.0% |
| Trade Shows | 3,300 | 3,450 | 4,300 | 7,955 | 20,325 | 9,360 | 7,100 | 1,000 | - | 3,000 | 3,750 | 19,700 | 83,240 | 0.7% |
| Auto Expense | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 131,354 | 1.1% |
| Travel and Ent | 20,000 | 16,000 | 16,000 | 16,000 | 20,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 208,000 | 1.8% |
| Commissions | 5,318 | 5,119 | 5,916 | 5,502 | 4,536 | 4,811 | 4,410 | 3,450 | 4,525 | 4,469 | 4,800 | 4,644 | 57,500 | 0.5% |
| Cash Discount | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 1,724 | 0.0% |
| Computer Exp | 9,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 68,946 | 0.6% |
| Advertising | 37,000 | 5,000 | 40,000 | 5,000 | 30,000 | 5,000 | 5,000 | 5,000 | 50,000 | 5,000 | 30,000 | 5,000 | 267,000 | 2.3% |
| Promotional | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Total Sales and Marketing | 167,364 | 122,918 | 172,049 | 134,534 | 168,480 | 133,988 | 132,221 | 117,324 | 168,197 | 170,817 | 151,821 | 146,088 | 1,785,802 | 15.5% |

| UCS, Inc. - Exhibit 1A Income Statement | Forecast Jan-21 | Forecast Feb-21 | Forecast Mar-21 | Forecast Apr-21 | Forecast May-21 | Forecast Jun-21 | Forecast Jul-21 | Forecast Aug-21 | Forecast Sep-21 | Forecast Oct-21 | Forecast Nov-21 | Forecast Dec-21 | 2021B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries | 80,290 | 76,466 | 87,936 | 84,113 | 80,290 | 84,113 | 84,113 | 84,113 | 84,113 | 80,290 | 84,113 | 87,936 | 997,887 | 8.7% |
| Depreciation | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 50,462 | 0.4% |
| Office Exp | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Legal and Accounting | 35,000 | 35,000 | 35,000 | 55,000 | 35,000 | 35,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 265,000 | 2.3% |
| Dues and Subscriptions | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 61,556 | 0.5% |
| Contribution | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Penalty Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Interest Exp | 4,979 | 4,966 | 4,953 | 4,940 | 4,926 | 4,913 | 4,900 | 4,887 | 4,874 | 4,860 | 4,847 | 4,834 | 58,878 | 0.5% |
| Bank Charges | 8,808 | 8,211 | 9,008 | 8,594 | 8,027 | 7,903 | 7,900 | 6,543 | 7,617 | 7,959 | 7,892 | 7,736 | 96,199 | 0.8% |
| Bad Debt Expense | - | - | - | - | - | 14,375 | - | - | - | - | - | 14,375 | 28,750 | 0.3% |
| Management Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total G&A Expense | 140,782 | 136,348 | 156,491 | 164,352 | 139,948 | 165,899 | 113,619 | 112,248 | 126,198 | 109,814 | 113,558 | 139,475 | 1,618,732 | 14.1% |
| Total Operating Expense | 308,146 | 259,266 | 328,541 | 298,886 | 308,428 | 299,887 | 245,840 | 229,572 | 294,395 | 280,632 | 265,379 | 285,563 | 3,404,534 | 29.6% |
| Operating Income/(Loss) | 104,632 | 131,824 | 131,461 | 126,877 | (2,845) | 20,592 | 52,437 | (69,718) | 833 | 7,247 | 65,164 | 19,815 | 588,318 | 5.1% |
| Net Income Before Taxes/(Loss) | 104,632 | 131,824 | 131,461 | 126,877 | (2,845) | 20,592 | 52,437 | (69,718) | 833 | 7,247 | 65,164 | 19,815 | 588,318 | 5.1% |
| Fed Income Tax | | | | | | | | | | | | | 123,547 | 1.1% |
| ST Income Tax | | | | | | | | | | | | | 14,708 | 0.1% |
| Total Income Taxes | - | - | - | - | - | - | - | - | - | - | - | - | 138,255 | 1.2% |
| Total Income Tax | | | | | | | | | | | - | | 138,255 | 1.2% |
| Net Income/(Loss) | 104,632 | 131,824 | 131,461 | 126,877 | (2,845) | 20,592 | 52,437 | (69,718) | 833 | 7,247 | 65,164 | (118,440) | 450,063 | 3.9% |
| EBITDA | 127,100 | 154,278 | 153,902 | 149,306 | 19,571 | 42,995 | 74,826 | (47,341) | 23,196 | 29,597 | 87,500 | 42,138 | 857,068 | 7.5% |

note: 2021B includes $180,000 in consulting fees

**UCS Cash Flow Bridge**

| | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EBITDA | 127,100 | 154,278 | 153,902 | 149,306 | 19,571 | 42,995 | 74,826 | (47,341) | 23,196 | 29,597 | 87,500 | 42,138 | 857,068 | |
| (-) Federal Income Tax Reserve | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 10,296 | 123,547 | |
| (-) State Income Tax Reserve | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 1,226 | 14,708 | |
| (-) Aquesta Operating Loans Payment | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 76,312 | |
| (-) IRS Payment Plan / Downpayment | 587,655 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 587,655 | |
| (-) NC Payment Plan / Downpayment | 73,526 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 93,277 | |
| (-) CA Payment Plan / Downpayment | 51,882 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 65,819 | |
| (+) NOL Refund | 710,000 | | | | | | | | | | | | | |
| Net Cash Flow Available for Plan Payments | 106,157 | 133,335 | 132,959 | 128,363 | (1,372) | 22,052 | 53,883 | (68,285) | 2,253 | 8,654 | 66,557 | 21,195 | 605,749 | |

**CASH FLOW SWEEP**

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash, BB | 361,828 | 469,732 | 604,814 | 425,000 | 555,110 | 555,485 | 425,000 | 480,630 | 414,093 | 418,093 | 428,494 | 496,799 | | |
| Net Cash Flow (+/-) | 106,157 | 133,335 | 132,959 | 128,363 | (1,372) | 22,052 | 53,883 | (68,285) | 2,253 | 8,654 | 66,557 | 21,195 | | |
| Cash Flow from SFP, NC LLC | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | (19,223) | | |
| Cash Flow from Rounders Pit Foam, LLC | | | | | | | | | | | | | | |
| Quarterly Cash Sweep - BK Plan | - | - | (314,521) | - | - | (154,284) | - | - | - | - | - | (73,771) | | |
| Cash, EB | 469,732 | 604,814 | 425,000 | 555,110 | 555,485 | 425,000 | 480,630 | 414,093 | 418,093 | 428,494 | 496,799 | 425,000 | | |
| Min Cash Balance | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | | |

| Total Unsecured - Critical A/P Balance | 1,399,953 | | | | | | | | | | | | | |

| Unsecured Critical Vendors Paydown | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BB | 1,399,953 | 1,399,953 | 1,399,953 | 1,085,432 | 1,085,432 | 1,085,432 | 931,147 | 931,147 | 931,147 | 931,147 | 931,147 | 931,147 |
| Paydown | - | - | (314,521) | - | - | (154,284) | - | - | - | - | - | (73,771) |
| EB | 1,399,953 | 1,399,953 | 1,085,432 | 1,085,432 | 1,085,432 | 931,147 | 931,147 | 931,147 | 931,147 | 931,147 | 931,147 | 857,376 |

**UCS, Inc. - Exhibit 1A**

| Income Statement | Forecast Jan-22 | Forecast Feb-22 | Forecast Mar-22 | Forecast Apr-22 | Forecast May-22 | Forecast Jun-22 | Forecast Jul-22 | Forecast Aug-22 | Forecast Sep-22 | Forecast Oct-22 | Forecast Nov-22 | Forecast Dec-22 | 2022B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales-Sewing | | | | | | | | | | | | | 0 | 0.0% |
| Sales Metals | | | | | | | | | | | | | 0 | 0.0% |
| Sales-Buy and Sells | | | | | | | | | | | | | 0 | 0.0% |
| **Total Sales-Ucs** | | | | | | | | | | | | | **0** | **0.0%** |
| | | | | | | | | | | | | | | |
| SPS-Metal | | | | | | | | | | | | | - | 0.0% |
| **Total Sales-SPS** | | | | | | | | | | | | | **-** | **0.0%** |
| | | | | | | | | | | | | | | |
| Sales Returns | | | | | | | | | | | | | - | 0.0% |
| Sales Adjustment | | | | | | | | | | | | | - | 0.0% |
| **Total Sales Returns and Allowances** | | | | | | | | | | | | | **-** | **0.0%** |
| | | | | | | | | | | | | | | |
| Management Fee Income | | | | | | | | | | | | | - | 0.0% |
| Interest Income | | | | | | | | | | | | | - | 0.0% |
| Discount Earned | | | | | | | | | | | | | - | 0.0% |
| Other Income | | | | | | | | | | | | | - | 0.0% |
| **Total Other Income** | | | | | | | | | | | | | **-** | **0.0%** |
| **Total Revenue** | $ 1,109,868.16 | $ 1,068,213.98 | $ 1,234,655.40 | $ 1,148,156.07 | $ 946,702.04 | $ 1,004,093.93 | $ 920,338.69 | $ 720,103.30 | $ 944,383.49 | $ 932,618.72 | $ 1,001,735.64 | $ 969,130.59 | 12,000,000 | 100.0% |
| | | | | | | | | | | | | | | |
| Materials | 332,960 | 320,464 | 370,397 | 344,447 | 284,011 | 301,228 | 276,102 | 216,031 | 283,315 | 279,786 | 300,521 | 290,739 | 3,600,000 | 30.0% |
| Applied Labor-OH | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Direct Labor | 167,863 | 159,870 | 183,850 | 167,863 | 157,857 | 175,857 | 167,863 | 183,850 | 135,889 | 207,831 | 175,857 | 175,857 | 2,078,305 | 17.3% |
| Freight In | 11,099 | 10,682 | 12,347 | 11,482 | 9,467 | 10,041 | 9,203 | 7,201 | 9,444 | 9,326 | 10,017 | 9,691 | 120,000 | 1.0% |
| **Total Cost of Shipment** | $ 511,922 | $ 491,016 | $ 566,593 | $ 523,791 | $ 469,334 | $ 487,126 | $ 453,168 | $ 407,082 | $ 428,648 | $ 496,942 | $ 486,395 | $ 476,287 | 5,798,305 | 48.3% |
| | | | | | | | | | | | | | | |
| Outside Processing | 1,486 | 1,430 | 1,653 | 1,537 | 1,267 | 1,344 | 1,232 | 964 | 1,264 | 1,248 | 1,341 | 1,297 | 16,062 | 0.1% |
| Production Supplies | 22,197 | 21,364 | 22,963 | 22,963 | 18,934 | 20,082 | 18,407 | 14,402 | 18,888 | 18,652 | 20,035 | 19,383 | 240,000 | 2.0% |
| R & D Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 0.3% |
| Payroll Taxes | 22,863 | 21,751 | 25,088 | 22,741 | 23,976 | 23,976 | 22,741 | 25,088 | 18,415 | 28,301 | 23,976 | 23,853 | 282,767 | 2.4% |
| Depreciation | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 159,409 | 1.3% |
| Insurance | 45,805 | 45,805 | 48,575 | 43,225 | 45,805 | 48,405 | 27,195 | 34,805 | 45,805 | 43,225 | 45,805 | 43,225 | 517,682 | 4.3% |
| Utilities | 6,453 | 6,265 | 19,599 | 7,063 | 7,256 | 20,669 | 6,915 | 8,158 | 10,329 | 17,983 | 6,602 | 9,210 | 126,501 | 1.1% |
| Rep & Maint | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 | 0.8% |
| Rent | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 228,915 | 1.9% |
| Property Taxes | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 38,090 | 0.3% |
| Lease Expense | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 63,981 | 0.5% |
| Factory Expense | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 62,918 | 0.5% |
| Licenses & Fees | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 | 0.1% |
| Employee Benefit (401k) | 2,697 | 2,697 | 2,697 | 3,371 | 2,697 | 2,697 | 3,371 | 2,697 | 2,697 | 3,371 | 2,697 | 3,371 | 35,056 | 0.3% |
| Computer Exp | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 | 0.1% |
| Installations | 1,387 | 1,335 | 1,543 | 1,435 | 1,183 | 1,255 | 1,150 | 900 | 1,180 | 1,166 | 1,252 | 1,211 | 15,000 | 0.1% |
| **Total Overhead Expense** | 161,893 | 161,682 | 179,787 | 161,338 | 162,153 | 174,367 | 140,015 | 148,048 | 154,517 | 172,950 | 162,741 | 157,489 | 1,936,980 | 16.1% |
| **Total COGS** | 673,815 | 652,698 | 746,380 | 685,130 | 631,487 | 661,492 | 593,183 | 555,130 | 583,165 | 669,893 | 649,136 | 633,776 | 7,735,285 | 64.5% |
| **Gross Profit/(Loss)** | $ 436,053 | $ 415,516 | $ 488,276 | $ 463,026 | $ 315,215 | $ 342,602 | $ 327,156 | $ 164,974 | $ 361,219 | $ 262,726 | $ 352,600 | $ 335,355 | 4,264,715 | 35.5% |
| | | | | | | | | | | | | | | |
| Salaries | 56,191 | 53,516 | 61,543 | 56,191 | 58,867 | 58,867 | 56,191 | 61,543 | 45,488 | 69,570 | 58,867 | 58,867 | 695,703 | 5.8% |
| Depreciation | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Freight Out | 22,197 | 21,364 | 24,693 | 22,963 | 18,934 | 20,082 | 18,407 | 14,402 | 18,888 | 18,652 | 20,035 | 19,383 | 240,000 | 2.0% |
| Telephone | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Trade Shows | 3,300 | 3,450 | 4,300 | 7,955 | 20,325 | 9,360 | 7,100 | 1,000 | - | 3,000 | 3,750 | 19,700 | 83,240 | 0.7% |
| Auto Expense | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 131,354 | 1.1% |
| Travel and Ent | 16,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 20,000 | 208,000 | 1.7% |
| Commissions | 5,549 | 5,341 | 6,173 | 5,741 | 4,734 | 5,020 | 4,602 | 3,601 | 4,722 | 4,663 | 5,009 | 4,846 | 60,000 | 0.5% |
| Cash Discount | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 1,724 | 0.0% |
| Computer Exp | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 63,946 | 0.5% |
| Advertising | 37,000 | 5,000 | 40,000 | 5,000 | 30,000 | 5,000 | 5,000 | 5,000 | 50,000 | 50,000 | 30,000 | 5,000 | 267,000 | 2.2% |
| Promotional | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| **Total Sales and Marketing** | 161,157 | 125,590 | 175,128 | 138,769 | 169,778 | 136,748 | 132,219 | 122,464 | 157,517 | 186,804 | 154,579 | 150,214 | 1,810,967 | 15.1% |

**UCS, Inc. - Exhibit 1A**
**Income Statement**

| | Forecast Jan-22 | Forecast Feb-22 | Forecast Mar-22 | Forecast Apr-22 | Forecast May-22 | Forecast Jun-22 | Forecast Jul-22 | Forecast Aug-22 | Forecast Sep-22 | Forecast Oct-22 | Forecast Nov-22 | Forecast Dec-22 | 2022B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries | 81,245 | 77,376 | 88,982 | 81,245 | 85,113 | 85,113 | 81,245 | 88,982 | 65,769 | 100,589 | 85,113 | 85,113 | 1,005,885 | 8.4% |
| Depreciation | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 50,462 | 0.4% |
| Office Exp | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Legal and Accounting | 5,000 | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 85,000 | 0.7% |
| Dues and Subscriptions | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 61,556 | 0.5% |
| Contribution | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Penalty Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Interest Exp | 4,820 | 4,807 | 4,793 | 4,780 | 4,766 | 4,753 | 4,739 | 4,725 | 4,712 | 4,698 | 4,684 | 4,670 | 56,947 | 0.5% |
| Bank Charges | 8,642 | 8,433 | 9,265 | 9,231 | 7,826 | 8,113 | 8,092 | 6,693 | 7,814 | 8,153 | 8,101 | 8,336 | 98,699 | 0.8% |
| Bad Debt Expense | - | - | - | - | - | 15,000 | - | - | - | - | - | 15,000 | 30,000 | 0.3% |
| Management Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| **Total G&A Expense** | **111,412** | **107,321** | **127,635** | **131,961** | **114,411** | **137,573** | **110,781** | **117,105** | **107,889** | **130,145** | **114,603** | **137,714** | **1,448,549** | **12.1%** |
| **Total Operating Expense** | **272,568** | **232,911** | **302,763** | **270,730** | **284,189** | **274,321** | **242,999** | **239,570** | **265,406** | **316,949** | **269,183** | **287,928** | **3,259,516** | **27.2%** |
| **Operating Income/(Loss)** | **163,485** | **182,605** | **185,512** | **192,297** | **31,026** | **68,280** | **84,156** | **(74,596)** | **95,813** | **(54,223)** | **83,417** | **47,427** | **1,005,199** | **8.4%** |
| **Net Income Before Taxes/(Loss)** | **163,485** | **182,605** | **185,512** | **192,297** | **31,026** | **68,280** | **84,156** | **(74,596)** | **95,813** | **(54,223)** | **83,417** | **47,427** | **1,005,199** | **8.4%** |
| Fed Income Tax | | | | | | | | | | | | | 211,092 | 1.8% |
| ST Income Tax | | | | | | | | | | | | | 25,130 | 0.2% |
| **Total Income Taxes** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **236,222** | **2.0%** |
| **Total Income Tax** | | | | | | | | | | | | | **236,222** | **2.0%** |
| **Net Income/(Loss)** | **163,485** | **182,605** | **185,512** | **192,297** | **31,026** | **68,280** | **84,156** | **(74,596)** | **95,813** | **(54,223)** | **83,417** | **(188,795)** | **768,977** | **6.4%** |
| **EBITDA** | **185,794** | **204,901** | **207,795** | **214,566** | **53,282** | **90,522** | **106,385** | **(52,381)** | **118,014** | **(32,036)** | **105,590** | **69,586** | **1,272,017** | **10.6%** |

note: 2021B includes $180,000 in consulting fees

**UCS Cash Flow Bridge**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EBITDA | 185,794 | 204,901 | 207,795 | 214,566 | 53,282 | 90,522 | 106,385 | (52,381) | 118,014 | (32,036) | 105,590 | 69,586 | 1,272,017 |
| (-) Federal Income Tax Reserve | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 17,591 | 211,092 |
| (-) State Income Tax Reserve | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 2,094 | 25,130 |
| (-) Aquesta Operating Loans Payment | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 76,312 |
| (-) IRS Payment Plan / Downpayment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - |
| (-) NC Payment Plan / Downpayment | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 21,547 |
| (-) CA Payment Plan / Downpayment | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 15,204 |
| (+) NOL Refund | | | | | | | | | | | | | - |
| **Net Cash Flow Available for Plan Payments** | **156,687** | **175,794** | **178,688** | **185,459** | **24,174** | **61,415** | **77,278** | **(81,489)** | **88,906** | **(61,143)** | **76,483** | **40,479** | **922,731** |

**CASH FLOW SWEEP**

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash, BB | 425,000 | 583,435 | 760,976 | 425,000 | 612,206 | 638,128 | 425,000 | 504,025 | 424,284 | 450,264 | 390,868 | 469,099 | |
| Net Cash Flow (+/-) | 156,687 | 175,794 | 178,688 | 185,459 | 24,174 | 61,415 | 77,278 | (81,489) | 88,906 | (61,143) | 76,483 | 40,479 | |
| Cash Flow from SFP, NC LLC | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | (19,223) | |
| Cash Flow from Rounders Pit Foam, LLC | | | | | | | | | | | | | |
| Quarterly Cash Sweep - BK Plan | - | - | (516,411) | - | - | (276,291) | - | - | (64,674) | - | | | |
| **Cash, EB** | **583,435** | **760,976** | **425,000** | **612,206** | **638,128** | **425,000** | **504,025** | **424,284** | **450,264** | **390,868** | **469,099** | **490,355** | |
| Min Cash Balance | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | |

**Total Unsecured - Critical A/P Balance**

| **Unsecured Critical Vendors Paydown** | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BB | 857,376 | 857,376 | 857,376 | 340,965 | 340,965 | 340,965 | 64,674 | 64,674 | 64,674 | 0 | 0 | 0 |
| Paydown | - | - | (516,411) | - | - | (276,291) | - | - | (64,674) | - | - | - |
| **EB** | **857,376** | **857,376** | **340,965** | **340,965** | **340,965** | **64,674** | **64,674** | **64,674** | **0** | **0** | **0** | **0** |

| UCS, Inc. - Exhibit 1A | Forecast Jan-23 | Forecast Feb-23 | Forecast Mar-23 | Forecast Apr-23 | Forecast May-23 | Forecast Jun-23 | Forecast Jul-23 | Forecast Aug-23 | Forecast Sep-23 | Forecast Oct-23 | Forecast Nov-23 | Forecast Dec-23 | 2023B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income Statement** | | | | | | | | | | | | | | |
| Sales-Sewing | | | | | | | | | | | | | 0 | 0.0% |
| Sales Metals | | | | | | | | | | | | | 0 | 0.0% |
| Sales-Buy and Sells | | | | | | | | | | | | | 0 | 0.0% |
| **Total Sales-Ucs** | | | | | | | | | | | | | **0** | **0.0%** |
| | | | | | | | | | | | | | | |
| SPS-Metal | | | | | | | | | | | | | - | 0.0% |
| **Total Sales-SPS** | | | | | | | | | | | | | **-** | **0.0%** |
| | | | | | | | | | | | | | | |
| Sales Returns | | | | | | | | | | | | | - | 0.0% |
| Sales Adjustment | | | | | | | | | | | | | - | 0.0% |
| **Total Sales Returns and Allowances** | | | | | | | | | | | | | **-** | **0.0%** |
| | | | | | | | | | | | | | | |
| Management Fee Income | | | | | | | | | | | | | - | 0.0% |
| Interest Income | | | | | | | | | | | | | - | 0.0% |
| Discount Earned | | | | | | | | | | | | | - | 0.0% |
| Other Income | | | | | | | | | | | | | - | 0.0% |
| **Total Other Income** | | | | | | | | | | | | | **-** | **0.0%** |
| **Total Revenue** | $ 1,156,112.67 | $ 1,112,722.90 | $ 1,286,099.37 | $ 1,195,995.90 | 986,147.96 | $ 1,045,931.18 | 958,686.14 | $ 750,107.60 | 983,732.80 | 971,477.83 | $ 1,043,474.62 | $ 1,009,511.03 | **12,500,000** | **100.0%** |
| | | | | | | | | | | | | | | |
| Materials | 346,834 | 333,817 | 385,830 | 358,799 | 295,844 | 313,779 | 287,606 | 225,032 | 295,120 | 291,443 | 313,042 | 302,853 | 3,750,000 | 30.0% |
| Applied Labor-OH | - | - | - | - | - | - | - | - | - | - | - | - | - | |
| Direct Labor | 172,899 | 164,666 | 189,366 | 164,666 | 189,366 | 181,132 | 172,899 | 189,366 | 172,899 | 181,132 | 181,132 | 172,899 | 2,132,421 | 17.1% |
| Freight In | 11,561 | 11,127 | 12,861 | 11,960 | 9,861 | 10,459 | 9,587 | 7,501 | 9,837 | 9,715 | 10,435 | 10,095 | 125,000 | 1.0% |
| **Total Cost of Shipment** | $ 531,294 | $ 509,610 | $ 588,056 | $ 535,424 | 495,071 | $ 505,371 | 470,092 | $ 421,899 | 477,856 | 482,290 | $ 504,609 | $ 485,847 | **6,007,421** | **48.1%** |
| | | | | | | | | | | | | | | |
| Outside Processing | 1,547 | 1,489 | 1,721 | 1,601 | 1,320 | 1,400 | 1,283 | 1,004 | 1,317 | 1,300 | 1,397 | 1,351 | 16,731 | 0.1% |
| Production Supplies | 23,122 | 22,254 | 25,722 | 23,920 | 19,723 | 20,919 | 19,174 | 15,002 | 19,675 | 19,430 | 20,869 | 20,190 | 250,000 | 2.0% |
| R & D Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 0.2% |
| Payroll Taxes | 23,453 | 22,313 | 25,610 | 22,313 | 25,733 | 24,470 | 23,453 | 25,733 | 23,330 | 24,593 | 24,593 | 23,330 | 288,925 | 2.3% |
| Depreciation | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 159,409 | 1.3% |
| Insurance | 45,805 | 45,805 | 45,995 | 45,805 | 45,805 | 45,825 | 29,776 | 34,805 | 43,225 | 45,805 | 45,805 | 43,225 | 517,682 | 4.1% |
| Utilities | 6,453 | 6,265 | 19,599 | 7,063 | 7,256 | 20,669 | 6,915 | 8,158 | 10,329 | 17,983 | 6,602 | 9,210 | 126,501 | 1.0% |
| Rep & Maint | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 | 0.8% |
| Rent | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 19,076 | 228,915 | 1.8% |
| Property Taxes | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 38,090 | 0.3% |
| Lease Expense | 3,116 | 7,707 | 2,612 | 3,116 | 7,707 | 2,612 | 2,612 | 6,559 | 1,464 | 1,968 | 6,559 | 1,464 | 47,494 | 0.4% |
| Factory Expense | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 62,918 | 0.5% |
| Licenses & Fees | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 | 0.1% |
| Employee Benefit (401k) | 2,777 | 2,777 | 2,777 | 3,472 | 2,777 | 2,777 | 3,472 | 2,777 | 2,777 | 3,472 | 2,777 | 3,472 | 36,107 | 0.3% |
| Computer Exp | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 | 0.1% |
| Installations | 1,445 | 1,391 | 1,608 | 1,495 | 1,233 | 1,307 | 1,198 | 938 | 1,230 | 1,214 | 1,304 | 1,262 | 15,625 | 0.1% |
| **Total Overhead Expense** | 161,047 | 163,330 | 178,972 | 162,112 | 164,882 | 173,307 | 141,210 | 148,304 | 156,673 | 169,093 | 163,235 | 156,832 | **1,938,996** | **15.5%** |
| **Total COGS** | 692,341 | 672,940 | 767,028 | 697,536 | 659,954 | 678,678 | 611,302 | 570,203 | 634,530 | 651,383 | 667,844 | 642,679 | **7,946,417** | **63.6%** |
| **Gross Profit/(Loss)** | $ 463,772 | $ 439,783 | $ 519,071 | $ 498,460 | 326,194 | $ 367,253 | 347,384 | $ 179,905 | 349,203 | 320,095 | $ 375,630 | $ 366,832 | **4,553,583** | **36.4%** |
| | | | | | | | | | | | | | | |
| Salaries | 57,877 | 55,121 | 63,389 | 55,121 | 63,389 | 60,633 | 57,877 | 63,389 | 57,877 | 60,633 | 60,633 | 57,877 | 713,818 | 5.7% |
| Depreciation | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Freight Out | 23,122 | 22,254 | 25,722 | 23,920 | 19,723 | 20,919 | 19,174 | 15,002 | 19,675 | 19,430 | 20,869 | 20,190 | 250,000 | 2.0% |
| Telephone | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Trade Shows | 3,300 | 3,450 | 4,300 | 7,955 | 20,325 | 9,360 | 7,100 | 1,000 | | 3,000 | 3,750 | 19,700 | 83,240 | 0.7% |
| Auto Expense | 10,946 | 10,946 | 10,946 | 10,946 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 119,965 | 1.0% |
| Travel and Ent | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 208,000 | 1.7% |
| Commissions | 5,781 | 5,564 | 6,430 | 5,980 | 4,931 | 5,230 | 4,793 | 3,751 | 4,919 | 4,857 | 5,217 | 5,048 | 62,500 | 0.5% |
| Cash Discount | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 1,724 | 0.0% |
| Computer Exp | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 63,946 | 0.5% |
| Advertising | 37,000 | 5,000 | 40,000 | 5,000 | 30,000 | 5,000 | 5,000 | 5,000 | 50,000 | 50,000 | 30,000 | 5,000 | 267,000 | 2.1% |
| Promotional | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| **Total Sales and Marketing** | 163,999 | 128,308 | 182,260 | 134,895 | 173,863 | 142,136 | 129,439 | 123,637 | 173,465 | 173,415 | 155,965 | 148,810 | **1,830,193** | **14.6%** |

| UCS, Inc. - Exhibit 1A | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | |
| Income Statement | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | 2023B | % of sales |
| | | | | | | | | | | | | | | |
| Salaries | 82,228 | 78,312 | 90,059 | 78,312 | 90,059 | 86,144 | 82,228 | 90,059 | 82,228 | 86,144 | 86,144 | 82,228 | 1,014,146 | 8.1% |
| Depreciation | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 50,462 | 0.4% |
| Office Exp | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Legal and Accounting | 5,000 | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 85,000 | 0.7% |
| Dues and Subscriptions | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 61,556 | 0.5% |
| Contribution | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Penalty Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Interest Exp | 4,656 | 4,642 | 4,628 | 4,614 | 4,600 | 4,586 | 4,572 | 4,558 | 4,543 | 4,529 | 4,515 | 4,500 | 54,944 | 0.4% |
| Bank Charges | 8,873 | 8,656 | 9,523 | 9,470 | 8,023 | 8,322 | 8,284 | 6,843 | 8,011 | 8,348 | 8,310 | 8,538 | 101,199 | 0.8% |
| Bad Debt Expense | - | - | - | - | - | 15,625 | - | - | - | - | - | 15,625 | 31,250 | 0.3% |
| Management Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Total G&A Expense | 112,462 | 108,316 | 128,804 | 129,102 | 119,388 | 139,271 | 111,789 | 118,165 | 124,377 | 115,726 | 115,673 | 135,485 | 1,458,557 | 11.7% |
| Total Operating Expense | 276,461 | 236,624 | 311,065 | 263,997 | 293,251 | 281,407 | 241,228 | 241,802 | 297,842 | 289,141 | 271,638 | 284,295 | 3,288,750 | 26.3% |
| Operating Income/(Loss) | 187,311 | 203,159 | 208,006 | 234,463 | 32,944 | 85,846 | 106,156 | (61,897) | 51,361 | 30,954 | 103,992 | 82,537 | 1,264,833 | 10.1% |
| Net Income Before Taxes/(Loss) | 187,311 | 203,159 | 208,006 | 234,463 | 32,944 | 85,846 | 106,156 | (61,897) | 51,361 | 30,954 | 103,992 | 82,537 | 1,264,833 | 10.1% |
| | | | | | | | | | | | | | | |
| Fed Income Tax | | | | | | | | | | | | 265,615 | 265,615 | 2.1% |
| ST Income Tax | | | | | | | | | | | | 31,621 | 31,621 | 0.3% |
| Total Income Taxes | - | - | - | - | - | - | - | - | - | - | - | 297,236 | 297,236 | 2.4% |
| Total Income Tax | - | - | - | - | - | - | - | - | - | - | - | 297,236 | 297,236 | 2.4% |
| Net Income/(Loss) | 187,311 | 203,159 | 208,006 | 234,463 | 32,944 | 85,846 | 106,156 | (61,897) | 51,361 | 30,954 | 103,992 | (214,699) | 967,597 | 7.7% |
| | | | | | | | | | | | | | | |
| EBITDA | 209,456 | 225,291 | 230,124 | 256,567 | 55,033 | 107,921 | 128,217 | (39,850) | 73,394 | 52,972 | 125,996 | 104,526 | 1,529,648 | 12.2% |
| note: 2021B includes $180,000 in consulting fees | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| UCS Cash Flow Bridge | | | | | | | | | | | | | | |
| EBITDA | 209,456 | 225,291 | 230,124 | 256,567 | 55,033 | 107,921 | 128,217 | (39,850) | 73,394 | 52,972 | 125,996 | 104,526 | 1,529,648 | |
| (-) Federal Income Tax Reserve | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 22,135 | 265,615 | |
| (-) State Income Tax Reserve | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 2,635 | 31,621 | |
| (-) Aquesta Operating Loans Payment | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 6,359 | 76,312 | |
| (-) IRS Payment Plan / Downpayment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | |
| (-) NC Payment Plan / Downpayment | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 1,796 | 21,547 | |
| (-) CA Payment Plan / Downpayment | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 1,267 | 15,204 | |
| (+) NOL Refund | | | | | | | | | | | | | | |
| Net Cash Flow Available for Plan Payments | 175,265 | 191,099 | 195,932 | 222,375 | 20,841 | 73,730 | 94,026 | (74,042) | 39,202 | 18,781 | 91,805 | 70,335 | 1,119,348 | |
| | | | | | | | | | | | | | | |
| CASH FLOW SWEEP | | | | | | | | | | | | | | |
| Cash, BB | 490,355 | 667,367 | 860,214 | 1,057,893 | 1,282,016 | 1,304,605 | 1,380,082 | 1,475,855 | 1,403,561 | 1,444,511 | 1,465,039 | 1,558,591 | | |
| Net Cash Flow (+/-) | 175,265 | 191,099 | 195,932 | 222,375 | 20,841 | 73,730 | 94,026 | (74,042) | 39,202 | 18,781 | 91,805 | 70,335 | | |
| Cash Flow from SFP, NC LLC | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | (19,223) | | |
| Cash Flow from Rounders Pit Foam, LLC | | | | | | | | | | | | | | |
| Quarterly Cash Sweep - BK Plan | - | | | - | | | - | | | - | | | | |
| Cash, EB | 667,367 | 860,214 | 1,057,893 | 1,282,016 | 1,304,605 | 1,380,082 | 1,475,855 | 1,403,561 | 1,444,511 | 1,465,039 | 1,558,591 | 1,609,703 | | |
| | | | | | | | | | | | | | | |
| Min Cash Balance | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | | |
| | | | | | | | | | | | | | | |
| Total Unsecured - Critical A/P Balance | | | | | | | | | | | | | | |

| Unsecured Critical Vendors Paydown | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Paydown | - | - | - | - | - | - | - | - | - | - | - | - |
| EB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| | Exhibit 1A - Key Assumptions |
|---|---|
| 1 | Total Revenue: $11.5m for 2021, $12.0m for 2022, $12.5m for 2023 |
| 2 | Materials: 30.0% of sales |
| 3 | Direct Labor: According to current payroll schedule and adjusted for net accrual days, with 3% increase each year |
| 4 | Freight In: 1.0% of Sales |
| 5 | Outside Processing: 0.1% of Sales |
| 6 | Production Supplies: 2.0% of Sales |
| 7 | Insurance covers property, liability,  health, dental, vision, and life, net of employee contributions, and net of affiliate reimbursements in July and August |
| 8 | Utilities includes electricity, propane, alarm, and water |
| 9 | Rent: Estimated monthly payment subject to mortgage refinancing |
| 10 | Lease Expense includes factory equipment leases and office equipment leases |
| 11 | Factory Expense includes waste removal, janitorial supplies, water inspection services, and lanscaping |
| 12 | Installations: 0.1% of Sales |
| 13 | Freight Out: 2.0% of Sales |
| 14 | Auto Expense includes sprinter van lease, car allowance for direct sales reps, employee travel allocation, including gas, car rentals, and tolls/parking |
| 15 | Commissions: 0.5% of Sales |
| 16 | Computer Expense includes monthly server cost, web hosting fees, outsourced IT provider services, and computer maintenance |
| 17 | Advertising: $267,000 for the Year |
| 18 | Promotional: $60k for the Year |
| 19 | Salaries: S&M and G&A reflect Post-Restructuring levels, with 3% increase each year for non-insider employees |
| 20 | Legal and Accounting normalized at $85k per year, 2021 includes 6 months of consulting fees at $30k per month |
| 21 | Dues and Subsciptions includes subscriptions to construction bidding platform, CRM platform, and digital marketing platform |
| 22 | Interest Expense includes estimated interest payment to Aquesta, NC payment plan, and CA payment plan |
| 23 | Bank Charges includes general bank charges, credit card fees and payroll processing fees |
| 24 | Bad Debt Expense estimated at 0.25% of Net Sales |
| 25 | Taxes: 21% Federal Tax Rate, and 2.5% NC State Income Tax Rate, reserved monthly |
| 26 | Rounders and SFP are assumed to have break-even cash flow for this analysis |
| 27 | **Cash Flow Bridge items include:** |
| | a) monthly payment to Aquesta |
| | b) NC payment plan on remaining past due taxes, termed out 5 years at 3.0% interest |
| | c) CA payment plan on past due taxes, termed out 5 years at 3.0% interest |
| | d) assumes NOL ($710k) is received Jan 2021 and proceeds are applied against IRS in full and pro-rata to NC and CA |
| | e) income tax reserve |

# EXHIBIT 1-B

# Financial Projections Related to Aquesta Bank Option 2

MWH: 10725.001; 00024049.4

| UCS, Inc. - Exhibit 1B | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Income Statement** | Forecast Jan-21 | Forecast Feb-21 | Forecast Mar-21 | Forecast Apr-21 | Forecast May-21 | Forecast Jun-21 | Forecast Jul-21 | Forecast Aug-21 | Forecast Sep-21 | Forecast Oct-21 | Forecast Nov-21 | Forecast Dec-21 | 2021B | % of sales |
| **Total Revenue** | $ 1,063,624 | $ 1,023,705 | $ 1,183,211 | $ 1,100,316 | $ 907,256 | $ 962,257 | $ 881,991 | $ 690,099 | $ 905,034 | $ 893,760 | $ 959,997 | $ 928,750 | $ 11,500,000 | 100.0% |
| | | | | | | | | | | | | | | |
| Materials | 319,087 | 307,112 | 354,963 | 330,095 | 272,177 | 288,677 | 264,597 | 207,030 | 271,510 | 268,128 | 287,999 | 278,625 | 3,450,000 | 30.0% |
| Applied Labor-OH | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Direct Labor | 162,974 | 155,213 | 178,495 | 170,735 | 162,974 | 170,735 | 170,735 | 170,735 | 170,735 | 162,974 | 170,735 | 178,495 | 2,025,533 | 17.6% |
| Freight In | 10,636 | 10,237 | 11,832 | 11,003 | 9,073 | 9,623 | 8,820 | 6,901 | 9,050 | 8,938 | 9,600 | 9,288 | 115,000 | 1.0% |
| **Total Cost of Shipment** | $ 492,697 | $ 472,562 | $ 545,291 | $ 511,833 | $ 444,223 | $ 469,034 | $ 444,152 | $ 384,665 | $ 451,295 | $ 440,039 | $ 468,334 | $ 466,408 | $ 5,590,533 | 48.6% |
| | | | | | | | | | | | | | | |
| Outside Processing | 1,424 | 1,370 | 1,584 | 1,473 | 1,214 | 1,288 | 1,181 | 924 | 1,211 | 1,196 | 1,285 | 1,243 | 15,393 | 0.1% |
| Production Supplies | 21,272 | 20,474 | 23,664 | 22,006 | 18,145 | 19,245 | 17,640 | 13,802 | 18,101 | 17,875 | 19,200 | 18,575 | 230,000 | 2.0% |
| R & D Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 0.3% |
| Payroll Taxes | 22,168 | 21,206 | 24,461 | 23,376 | 22,168 | 23,376 | 23,253 | 23,376 | 23,376 | 22,168 | 23,376 | 24,338 | 276,644 | 2.4% |
| Depreciation | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 159,409 | 1.4% |
| Insurance | 43,225 | 45,805 | 48,575 | 45,805 | 43,225 | 48,405 | 27,195 | 34,805 | 45,805 | 43,225 | 45,805 | 43,225 | 515,101 | 4.5% |
| Utilities | 6,453 | 6,265 | 19,599 | 7,063 | 7,256 | 20,669 | 6,915 | 8,158 | 10,329 | 17,983 | 6,602 | 9,210 | 126,501 | 1.1% |
| Rep & Maint | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 | 0.8% |
| Rent | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 27,775 | 333,300 | 2.9% |
| Property Taxes | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 38,090 | 0.3% |
| Lease Expense | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 63,981 | 0.6% |
| Factory Expense | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 62,918 | 0.5% |
| Licenses & Fees | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 | 0.1% |
| Employee Benefit (401k) | 3,273 | 2,618 | 2,618 | 2,618 | 3,273 | 2,618 | 3,273 | 2,618 | 2,618 | 3,273 | 2,618 | 3,273 | 34,689 | 0.3% |
| Computer Exp | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 | 0.1% |
| Installations | 1,330 | 1,280 | 1,479 | 1,375 | 1,134 | 1,203 | 1,102 | 863 | 1,131 | 1,117 | 1,200 | 1,161 | 14,375 | 0.1% |
| **Total Overhead Expense** | 166,847 | 168,752 | 186,618 | 171,420 | 166,149 | 181,442 | 148,262 | 154,278 | 167,210 | 174,540 | 169,819 | 165,663 | 2,021,001 | 17.6% |
| **Total COGS** | 659,545 | 641,314 | 731,909 | 683,252 | 610,372 | 650,476 | 592,414 | 538,944 | 618,505 | 614,579 | 638,153 | 632,071 | 7,611,533 | 66.2% |
| **Gross Profit/(Loss)** | $ 404,079 | $ 382,391 | $ 451,303 | $ 417,064 | $ 296,884 | $ 311,780 | $ 289,577 | $ 151,155 | $ 286,529 | $ 279,180 | $ 321,844 | $ 296,680 | $ 3,888,467 | 33.8% |
| | | | | | | | | | | | | | | |
| Salaries | 54,555 | 51,957 | 59,750 | 57,153 | 54,555 | 57,153 | 57,153 | 57,153 | 57,153 | 54,555 | 57,153 | 59,750 | 678,038 | 5.9% |
| Depreciation | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Freight Out | 21,272 | 20,474 | 23,664 | 22,006 | 18,145 | 19,245 | 17,640 | 13,802 | 18,101 | 17,875 | 19,200 | 18,575 | 230,000 | 2.0% |
| Telephone | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Trade Shows | 3,300 | 3,450 | 4,300 | 7,955 | 20,325 | 9,360 | 7,100 | 1,000 | - | 3,000 | 3,750 | 19,700 | 83,240 | 0.7% |
| Auto Expense | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 131,354 | 1.1% |
| Travel and Ent | 20,000 | 16,000 | 16,000 | 16,000 | 20,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 208,000 | 1.8% |
| Commissions | 5,318 | 5,119 | 5,916 | 5,502 | 4,536 | 4,811 | 4,410 | 3,450 | 4,525 | 4,469 | 4,800 | 4,644 | 57,500 | 0.5% |
| Cash Discount | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 1,724 | 0.0% |
| Computer Exp | 9,829 | 4,829 | 6,329 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 4,829 | 6,329 | 68,946 | 0.6% |
| Advertising | 37,000 | 5,000 | 40,000 | 5,000 | 30,000 | 5,000 | 5,000 | 5,000 | 50,000 | 50,000 | 30,000 | 5,000 | 267,000 | 2.3% |
| Promotional | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| **Total Sales and Marketing** | 167,364 | 122,918 | 172,049 | 134,534 | 168,480 | 133,988 | 132,221 | 117,324 | 168,197 | 170,817 | 151,821 | 146,088 | $ 1,785,802 | 15.5% |

**UCS, Inc. - Exhibit 1B**

**Income Statement**

| | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | 2021B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | |
| Salaries | 80,290 | 76,466 | 87,936 | 84,113 | 80,290 | 84,113 | 84,113 | 84,113 | 84,113 | 80,290 | 84,113 | 87,936 | 997,887 | 8.7% |
| Depreciation | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 50,462 | 0.4% |
| Office Exp | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Legal and Accounting | 35,000 | 35,000 | 35,000 | 55,000 | 35,000 | 35,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 265,000 | 2.3% |
| Dues and Subscriptions | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 61,556 | 0.5% |
| Contribution | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Penalty Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Interest Exp | 6,191 | 6,179 | 6,167 | 6,155 | 6,143 | 6,131 | 6,119 | 6,106 | 6,094 | 6,082 | 6,070 | 6,057 | 73,495 | 0.6% |
| Bank Charges | 8,808 | 8,211 | 9,008 | 8,594 | 8,027 | 7,903 | 7,900 | 6,543 | 7,617 | 7,959 | 7,892 | 7,736 | 96,199 | 0.8% |
| Bad Debt Expense | - | - | - | - | - | 14,375 | - | - | - | - | - | 14,375 | 28,750 | 0.3% |
| Management Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| **Total G&A Expense** | 141,995 | 137,562 | 157,706 | 165,567 | 141,165 | 167,117 | 114,837 | 113,467 | 127,419 | 111,036 | 114,780 | 140,699 | 1,633,349 | 14.2% |
| **Total Operating Expense** | 309,359 | 260,480 | 329,756 | 300,101 | 309,644 | 301,104 | 247,058 | 230,791 | 295,616 | 281,853 | 266,601 | 286,787 | 3,419,151 | 29.7% |
| **Operating Income/(Loss)** | 94,720 | 121,911 | 121,547 | 116,963 | (12,760) | 10,676 | 42,519 | (79,636) | (9,087) | (2,673) | 55,243 | 9,893 | 469,316 | 4.1% |
| **Net Income Before Taxes/(Loss)** | 94,720 | 121,911 | 121,547 | 116,963 | (12,760) | 10,676 | 42,519 | (79,636) | (9,087) | (2,673) | 55,243 | 9,893 | 469,316 | 4.1% |
| Fed Income Tax | | | | | | | | | | | | | - | 0.0% |
| ST Income Tax | | | | | | | | | | | | 11,733 | 11,733 | 0.1% |
| **Total Income Taxes** | - | - | - | - | - | - | - | - | - | - | - | 11,733 | 11,733 | 0.1% |
| **Total Income Tax** | - | - | - | - | - | - | - | - | - | - | - | 11,733 | 11,733 | 0.1% |
| **Net Income/(Loss)** | 94,720 | 121,911 | 121,547 | 116,963 | (12,760) | 10,676 | 42,519 | (79,636) | (9,087) | (2,673) | 55,243 | (1,840) | 457,583 | 4.0% |
| **EBITDA** | 118,401 | 145,580 | 145,204 | 140,607 | 10,872 | 34,296 | 66,127 | (56,040) | 14,497 | 20,898 | 78,801 | 33,439 | 752,682 | 6.5% |

note: 2021B includes $180,000 in consulting fees

**UCS Cash Flow Bridge**

| | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | 2021B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| EBITDA | 118,401 | 145,580 | 145,204 | 140,607 | 10,872 | 34,296 | 66,127 | (56,040) | 14,497 | 20,898 | 78,801 | 33,439 | 752,682 |
| (-) Federal Income Tax Reserve | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - |
| (-) State Income Tax Reserve | 978 | 978 | 978 | 978 | 978 | 978 | 978 | 978 | 978 | 978 | 978 | 978 | 11,733 |
| (-) Aquesta Operating Loans Payment | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 64,954 |
| (-) IRS Payment Plan / Downpayment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 42,453 |
| (-) NC Payment Plan / Downpayment | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 42,453 |
| (-) CA Payment Plan / Downpayment | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 24,695 |
| **Net Cash Flow Available for Plan Payments** | 106,415 | 133,593 | 133,217 | 128,621 | (1,114) | 22,310 | 54,141 | (68,026) | 2,511 | 8,912 | 66,815 | 21,453 | 608,847 |

**CASH FLOW SWEEP**

| | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 | 2021B |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash, BB | 535,243 | 643,406 | 778,747 | 425,000 | 555,368 | 556,002 | 425,000 | 480,888 | 414,610 | 418,868 | 429,527 | 498,090 | |
| Net Cash Flow (+/-) | 106,415 | 133,593 | 133,217 | 128,621 | (1,114) | 22,310 | 54,141 | (68,026) | 2,511 | 8,912 | 66,815 | 21,453 | |
| Cash Flow from SFP, NC LLC | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | (19,223) | |
| Cash Flow from Rounders Pit Foam, LLC | | | | | | | | | | | | | |
| Quarterly Cash Sweep - BK Plan | - | - | (488,712) | - | - | (155,059) | - | - | - | - | - | (75,320) | |
| **Cash, EB** | 643,406 | 778,747 | 425,000 | 555,368 | 556,002 | 425,000 | 480,888 | 414,610 | 418,868 | 429,527 | 498,090 | 425,000 | |
| Min Cash Balance | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | |

| **Total Unsecured - Critical A/P Balance** | 1,399,953 |
|---|---|

| Unsecured Critical Vendors Paydown | Jan-21 | Feb-21 | Mar-21 | Apr-21 | May-21 | Jun-21 | Jul-21 | Aug-21 | Sep-21 | Oct-21 | Nov-21 | Dec-21 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BB | 1,399,953 | 1,399,953 | 1,399,953 | 911,241 | 911,241 | 911,241 | 756,183 | 756,183 | 756,183 | 756,183 | 756,183 | 756,183 |
| Paydown | - | - | (488,712) | - | - | (155,059) | - | - | - | - | - | (75,320) |
| **EB** | 1,399,953 | 1,399,953 | 911,241 | 911,241 | 911,241 | 756,183 | 756,183 | 756,183 | 756,183 | 756,183 | 756,183 | 680,863 |

| UCS, Inc. - Exhibit 1B | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | | 2022B | % of sales |
| Income Statement | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Revenue | $ 1,109,868.16 | $ 1,068,213.98 | $ 1,234,655.40 | $ 1,148,156.07 | $ 946,702.04 | $ 1,004,093.93 | $ 920,338.69 | $ 720,103.30 | $ 944,383.49 | $ 932,618.72 | $ 1,001,735.64 | $ 969,130.59 | | $ 12,000,000 | 100.0% |
| | | | | | | | | | | | | | | | |
| Materials | 332,960 | 320,464 | 344,447 | 370,397 | 284,011 | 301,228 | 276,102 | 216,031 | 283,315 | 279,786 | 300,521 | 290,739 | | 3,600,000 | 30.0% |
| Applied Labor-OH | - | - | - | - | - | - | - | - | - | - | - | - | | - | 0.0% |
| Direct Labor | 167,863 | 159,870 | 183,850 | 167,863 | 175,857 | 175,857 | 167,863 | 183,850 | 135,889 | 207,831 | 175,857 | 175,857 | | 2,078,305 | 17.3% |
| Freight In | 11,099 | 10,682 | 12,347 | 11,482 | 9,467 | 10,041 | 9,203 | 7,201 | 9,444 | 9,326 | 10,017 | 9,691 | | 120,000 | 1.0% |
| Total Cost of Shipment | $ 511,922 | $ 491,016 | $ 566,593 | $ 523,791 | $ 469,334 | $ 487,126 | $ 453,168 | $ 407,082 | $ 428,648 | $ 496,942 | $ 486,395 | $ 476,287 | | $ 5,798,305 | 48.3% |
| | | | | | | | | | | | | | | | |
| Outside Processing | 1,486 | 1,430 | 1,653 | 1,537 | 1,267 | 1,344 | 1,232 | 964 | 1,264 | 1,248 | 1,341 | 1,297 | | 16,062 | 0.1% |
| Production Supplies | 22,197 | 21,364 | 24,693 | 22,963 | 18,934 | 20,082 | 18,407 | 14,402 | 18,888 | 18,652 | 20,035 | 19,383 | | 240,000 | 2.0% |
| R & D Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | | 30,000 | 0.3% |
| Payroll Taxes | 22,863 | 21,751 | 25,088 | 22,741 | 23,976 | 23,976 | 22,741 | 25,088 | 18,415 | 28,301 | 23,976 | 23,853 | | 282,767 | 2.4% |
| Depreciation | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | | 159,409 | 1.3% |
| Insurance | 45,805 | 45,805 | 48,575 | 43,225 | 45,805 | 48,405 | 27,195 | 34,805 | 45,805 | 45,805 | 45,805 | 43,225 | | 517,682 | 4.3% |
| Utilities | 6,453 | 6,265 | 19,599 | 7,063 | 7,256 | 20,669 | 6,915 | 8,158 | 10,329 | 17,983 | 6,602 | 9,210 | | 126,501 | 1.1% |
| Rep & Maint | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | | 96,000 | 0.8% |
| Rent | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | 28,331 | | 339,966 | 2.8% |
| Property Taxes | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | | 38,090 | 0.3% |
| Lease Expense | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | 5,677 | 7,707 | 2,612 | | 63,981 | 0.5% |
| Factory Expense | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | | 62,918 | 0.5% |
| Licenses & Fees | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | | 15,000 | 0.1% |
| Employee Benefit (401k) | 2,697 | 2,697 | 2,697 | 3,371 | 2,697 | 2,697 | 3,371 | 2,697 | 2,697 | 3,371 | 2,697 | 3,371 | | 35,056 | 0.3% |
| Computer Exp | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | | 9,600 | 0.1% |
| Installations | 1,387 | 1,335 | 1,543 | 1,435 | 1,183 | 1,255 | 1,150 | 900 | 1,180 | 1,166 | 1,252 | 1,211 | | 15,000 | 0.1% |
| Total Overhead Expense | 171,147 | 170,937 | 189,041 | 170,592 | 171,407 | 183,621 | 149,269 | 157,302 | 163,771 | 182,205 | 171,996 | 166,743 | | 2,048,031 | 17.1% |
| Total COGS | 683,069 | 661,953 | 755,634 | 694,384 | 640,741 | 670,747 | 602,437 | 564,384 | 592,419 | 679,147 | 658,390 | 643,030 | | 7,846,336 | 65.4% |
| Gross Profit/(Loss) | $ 426,799 | $ 406,261 | $ 479,021 | $ 453,772 | $ 305,961 | $ 333,347 | $ 317,901 | $ 155,719 | $ 351,964 | $ 253,472 | $ 343,345 | $ 326,100 | | $ 4,153,664 | 34.6% |
| | | | | | | | | | | | | | | | |
| Salaries | 56,191 | 53,516 | 61,543 | 56,191 | 58,867 | 58,867 | 56,191 | 61,543 | 45,488 | 69,570 | 58,867 | 58,867 | | 695,703 | 5.8% |
| Depreciation | - | - | - | - | - | - | - | - | - | - | - | - | | - | 0.0% |
| Freight Out | 22,197 | 21,364 | 24,693 | 22,963 | 18,934 | 20,082 | 18,407 | 14,402 | 18,888 | 18,652 | 20,035 | 19,383 | | 240,000 | 2.0% |
| Telephone | - | - | - | - | - | - | - | - | - | - | - | - | | - | 0.0% |
| Trade Shows | 3,300 | 3,450 | 4,300 | 7,955 | 20,325 | 9,360 | 7,100 | 1,000 | - | 3,000 | 3,750 | 19,700 | | 83,240 | 0.7% |
| Auto Expense | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | 10,946 | | 131,354 | 1.1% |
| Travel and Ent | 16,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 20,000 | | 208,000 | 1.7% |
| Commissions | 5,549 | 5,341 | 6,173 | 5,741 | 4,734 | 5,020 | 4,602 | 3,601 | 4,722 | 4,663 | 5,009 | 4,846 | | 60,000 | 0.5% |
| Cash Discount | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | | 1,724 | 0.0% |
| Computer Exp | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | | 63,546 | 0.5% |
| Advertising | 37,000 | 5,000 | 40,000 | 5,000 | 30,000 | 5,000 | 5,000 | 5,000 | 50,000 | 50,000 | 30,000 | 5,000 | | 267,000 | 2.2% |
| Promotional | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | | 60,000 | 0.5% |
| Total Sales and Marketing | 161,157 | 125,590 | 175,128 | 138,769 | 169,778 | 136,748 | 132,219 | 122,464 | 157,517 | 186,804 | 154,579 | 150,214 | | 1,810,967 | 15.1% |

**UCS, Inc. - Exhibit 1B**

**Income Statement**

| | Jan-22 Forecast | Feb-22 Forecast | Mar-22 Forecast | Apr-22 Forecast | May-22 Forecast | Jun-22 Forecast | Jul-22 Forecast | Aug-22 Forecast | Sep-22 Forecast | Oct-22 Forecast | Nov-22 Forecast | Dec-22 Forecast | 2022B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries | 81,245 | 77,376 | 88,982 | 81,245 | 85,113 | 85,113 | 81,245 | 88,982 | 65,769 | 100,589 | 85,113 | 85,113 | 1,005,885 | 8.4% |
| Depreciation | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 50,462 | 0.4% |
| Office Exp | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Legal and Accounting | 5,000 | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 85,000 | 0.7% |
| Dues and Subscriptions | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 61,556 | 0.5% |
| Contribution | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Penalty Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Interest Exp | 6,045 | 6,032 | 6,020 | 6,008 | 5,995 | 5,983 | 5,970 | 5,957 | 5,945 | 5,932 | 5,919 | 5,907 | 71,713 | 0.6% |
| Bank Charges | 8,642 | 8,433 | 9,265 | 9,231 | 7,826 | 8,113 | 8,092 | 6,693 | 7,814 | 8,153 | 8,101 | 8,336 | 98,699 | 0.8% |
| Bad Debt Expense | - | - | - | - | - | 15,000 | - | - | - | - | - | 15,000 | 30,000 | 0.3% |
| Management Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| **Total G&A Expense** | 112,636 | 108,547 | 128,862 | 133,188 | 115,639 | 138,803 | 112,012 | 118,337 | 109,122 | 131,379 | 115,839 | 138,950 | 1,463,315 | 12.2% |
| **Total Operating Expense** | 273,793 | 234,136 | 303,990 | 271,957 | 285,418 | 275,551 | 244,230 | 240,802 | 266,639 | 318,184 | 270,418 | 289,164 | 3,274,282 | 27.3% |
| **Operating Income/(Loss)** | 153,006 | 172,125 | 175,031 | 181,815 | 20,543 | 57,796 | 73,671 | (85,082) | 85,325 | (64,712) | 72,927 | 36,936 | 879,381 | 7.3% |
| **Net Income Before Taxes/(Loss)** | 153,006 | 172,125 | 175,031 | 181,815 | 20,543 | 57,796 | 73,671 | (85,082) | 85,325 | (64,712) | 72,927 | 36,936 | 879,381 | 7.3% |
| | | | | | | | | | | | | | | |
| Fed Income Tax | | | | | | | | | | | | 60,493 | 60,493 | 0.5% |
| ST Income Tax | | | | | | | | | | | | 21,985 | 21,985 | 0.2% |
| **Total Income Taxes** | - | - | - | - | - | - | - | - | - | - | - | 82,477 | 82,477 | 0.7% |
| **Total Income Tax** | - | - | - | - | - | - | - | - | - | - | - | 82,477 | 82,477 | 0.7% |
| **Net Income/(Loss)** | 153,006 | 172,125 | 175,031 | 181,815 | 20,543 | 57,796 | 73,671 | (85,082) | 85,325 | (64,712) | 72,927 | (45,541) | 796,904 | 6.6% |
| | | | | | | | | | | | | | | |
| **EBITDA** | 176,540 | 195,647 | 198,541 | 205,312 | 44,027 | 81,268 | 97,130 | (61,636) | 108,759 | (41,290) | 96,336 | 60,332 | 1,160,965 | 9.7% |

*note: 2021B includes $180,000 in consulting fees*

**UCS Cash Flow Bridge**

| | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **EBITDA** | 176,540 | 195,647 | 198,541 | 205,312 | 44,027 | 81,268 | 97,130 | (61,636) | 108,759 | (41,290) | 96,336 | 60,332 | 1,160,965 |
| (-) Federal Income Tax Reserve | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 5,041 | 60,493 |
| (-) State Income Tax Reserve | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 1,832 | 21,985 |
| (-) Aquesta Operating Loans Payment | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 64,954 |
| (-) IRS Payment Plan / Downpayment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - |
| (-) NC Payment Plan / Downpayment | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 42,453 |
| (-) CA Payment Plan / Downpayment | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 24,695 |
| **Net Cash Flow Available for Plan Payments** | 158,658 | 177,765 | 180,659 | 187,430 | 26,146 | 63,386 | 79,249 | (79,517) | 90,878 | (59,172) | 78,454 | 42,450 | 946,385 |
| | | | | | | | | | | | | | |
| **CASH FLOW SWEEP** | | | | | | | | | | | | | |
| Cash, BB | 425,000 | 585,406 | 764,918 | 425,000 | 614,177 | 642,071 | 548,667 | 629,663 | 551,893 | 644,518 | 587,094 | 667,296 | |
| Net Cash Flow (+/-) | 158,658 | 177,765 | 180,659 | 187,430 | 26,146 | 63,386 | 79,249 | (79,517) | 90,878 | (59,172) | 78,454 | 42,450 | |
| Cash Flow from SFP, NC LLC | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | (19,223) | |
| Cash Flow from Rounders Pit Foam, LLC | | | | | | | | | | | | | |
| Quarterly Cash Sweep - BK Plan | - | - | (522,325) | - | - | (158,538) | - | - | - | - | - | - | |
| **Cash, EB** | 585,406 | 764,918 | 425,000 | 614,177 | 642,071 | 548,667 | 629,663 | 551,893 | 644,518 | 587,094 | 667,296 | 690,523 | |
| | | | | | | | | | | | | | |
| Min Cash Balance | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | | |

**Total Unsecured - Critical A/P Balance**

| Unsecured Critical Vendors Paydown | Jan-22 | Feb-22 | Mar-22 | Apr-22 | May-22 | Jun-22 | Jul-22 | Aug-22 | Sep-22 | Oct-22 | Nov-22 | Dec-22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BB | 680,863 | 680,863 | 680,863 | 158,538 | 158,538 | 158,538 | 0 | 0 | 0 | 0 | 0 | 0 |
| Paydown | | | (522,325) | - | - | (158,538) | - | - | - | - | - | - |
| EB | 680,863 | 680,863 | 158,538 | 158,538 | 158,538 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |

| UCS, Inc. - Exhibit 1B — Income Statement | Forecast Jan-23 | Forecast Feb-23 | Forecast Mar-23 | Forecast Apr-23 | Forecast May-23 | Forecast Jun-23 | Forecast Jul-23 | Forecast Aug-23 | Forecast Sep-23 | Forecast Oct-23 | Forecast Nov-23 | Forecast Dec-23 | 2023B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Revenue | $ 1,156,112.67 | $ 1,112,722.90 | $ 1,286,099.37 | $ 1,195,995.90 | $ 986,147.96 | $ 1,045,931.18 | $ 958,686.14 | $ 750,107.60 | $ 983,732.80 | $ 971,477.83 | $ 1,043,474.62 | $ 1,009,511.03 | $ 12,500,000 | 100.0% |
| | | | | | | | | | | | | | | |
| Materials | 346,834 | 333,817 | 385,830 | 358,799 | 295,844 | 313,779 | 287,606 | 225,032 | 295,120 | 291,443 | 313,042 | 302,853 | 3,750,000 | 30.0% |
| Applied Labor-OH | | | | | | | | | | | | | - | 0.0% |
| Direct Labor | 172,899 | 164,666 | 189,366 | 164,666 | 189,366 | 181,132 | 172,899 | 189,366 | 172,899 | 181,132 | 181,132 | 172,899 | 2,132,421 | 17.1% |
| Freight In | 11,561 | 11,127 | 12,861 | 11,960 | 9,861 | 10,459 | 9,587 | 7,501 | 9,837 | 9,715 | 10,435 | 10,095 | 125,000 | 1.0% |
| Total Cost of Shipment | $ 531,294 | $ 509,610 | $ 588,056 | $ 535,424 | $ 495,071 | $ 505,371 | $ 470,092 | $ 421,899 | $ 477,856 | $ 482,290 | $ 504,609 | $ 485,847 | $ 6,007,421 | 48.1% |
| | | | | | | | | | | | | | | |
| Outside Processing | 1,547 | 1,489 | 1,721 | 1,601 | 1,320 | 1,400 | 1,283 | 1,004 | 1,317 | 1,300 | 1,397 | 1,351 | 16,731 | 0.1% |
| Production Supplies | 23,122 | 22,254 | 25,722 | 23,920 | 19,723 | 20,919 | 19,174 | 15,002 | 19,675 | 19,430 | 20,869 | 20,190 | 250,000 | 2.0% |
| R & D Expense | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 | 0.2% |
| Payroll Taxes | 23,453 | 22,313 | 25,610 | 22,313 | 25,733 | 24,470 | 23,453 | 25,733 | 23,330 | 24,593 | 24,593 | 23,330 | 288,925 | 2.3% |
| Depreciation | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 13,284 | 159,409 | 1.3% |
| Insurance | 45,805 | 45,805 | 45,995 | 45,805 | 45,825 | 45,825 | 29,776 | 34,805 | 43,225 | 45,805 | 45,805 | 43,225 | 517,682 | 4.1% |
| Utilities | 6,453 | 6,265 | 19,599 | 7,063 | 7,256 | 20,669 | 6,915 | 8,158 | 10,329 | 17,983 | 6,602 | 9,210 | 126,501 | 1.0% |
| Rep & Maint | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 | 0.8% |
| Rent | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 28,897 | 346,765 | 2.8% |
| Property Taxes | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 3,174 | 38,090 | 0.3% |
| Lease Expense | 3,116 | 7,707 | 2,612 | 3,116 | 7,707 | 2,612 | 2,612 | 6,559 | 1,464 | 1,968 | 6,559 | 1,464 | 47,494 | 0.4% |
| Factory Expense | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 5,243 | 62,918 | 0.5% |
| Licenses & Fees | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 | 0.1% |
| Employee Benefit (401k) | 2,777 | 2,777 | 2,777 | 3,472 | 2,777 | 2,777 | 3,472 | 2,777 | 2,777 | 3,472 | 2,777 | 3,472 | 36,107 | 0.3% |
| Computer Exp | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 800 | 9,600 | 0.1% |
| Installations | 1,445 | 1,391 | 1,608 | 1,495 | 1,233 | 1,307 | 1,198 | 938 | 1,230 | 1,214 | 1,304 | 1,262 | 15,601 | 0.1% |
| Total Overhead Expense | 170,868 | 173,151 | 188,793 | 171,932 | 174,703 | 183,128 | 151,031 | 158,125 | 166,494 | 178,913 | 173,056 | 166,652 | 2,056,847 | 16.5% |
| Total COGS | 702,162 | 682,761 | 776,849 | 707,357 | 669,775 | 688,499 | 621,123 | 580,024 | 644,351 | 661,204 | 677,665 | 652,500 | 8,064,268 | 64.5% |
| Gross Profit/(Loss) | $ 453,951 | $ 429,962 | $ 509,250 | $ 488,639 | $ 316,373 | $ 357,432 | $ 337,563 | $ 170,084 | $ 339,382 | $ 310,274 | $ 365,810 | $ 357,011 | $ 4,435,732 | 35.5% |
| | | | | | | | | | | | | | | |
| Salaries | 57,877 | 55,121 | 63,389 | 55,121 | 63,389 | 60,633 | 57,877 | 63,389 | 57,877 | 60,633 | 60,633 | 57,877 | 713,818 | 5.7% |
| Depreciation | | | | | | | | | | | | | - | 0.0% |
| Freight Out | 23,122 | 22,254 | 25,722 | 23,920 | 19,723 | 20,919 | 19,174 | 15,002 | 19,675 | 19,430 | 20,869 | 20,190 | 250,000 | 2.0% |
| Telephone | | | | | | | | | | | | | - | 0.0% |
| Trade Shows | 3,300 | 3,450 | 4,300 | 7,955 | 20,325 | 9,360 | 7,100 | 1,000 | - | 3,000 | 3,750 | 19,700 | 83,240 | 0.7% |
| Auto Expense | 10,946 | 10,946 | 10,946 | 10,946 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 9,523 | 119,965 | 1.0% |
| Travel and Ent | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 16,000 | 16,000 | 20,000 | 208,000 | 1.7% |
| Commissions | 5,781 | 5,564 | 6,430 | 5,980 | 4,931 | 5,230 | 4,793 | 3,751 | 4,919 | 4,857 | 5,217 | 5,048 | 62,500 | 0.5% |
| Cash Discount | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 144 | 1,724 | 0.0% |
| Computer Exp | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 4,829 | 4,829 | 6,329 | 63,946 | 0.5% |
| Advertising | 37,000 | 5,000 | 40,000 | 5,000 | 30,000 | 5,000 | 5,000 | 5,000 | 50,000 | 50,000 | 30,000 | 5,000 | 267,000 | 2.1% |
| Promotional | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Total Sales and Marketing | 163,999 | 128,308 | 182,260 | 134,895 | 173,863 | 142,136 | 129,439 | 123,637 | 173,465 | 173,415 | 155,965 | 148,810 | $ 1,830,193 | 14.6% |

**UCS, Inc. - Exhibit 1B**

| Income Statement | Forecast Jan-23 | Forecast Feb-23 | Forecast Mar-23 | Forecast Apr-23 | Forecast May-23 | Forecast Jun-23 | Forecast Jul-23 | Forecast Aug-23 | Forecast Sep-23 | Forecast Oct-23 | Forecast Nov-23 | Forecast Dec-23 | 2023B | % of sales |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries | 82,228 | 78,312 | 90,059 | 78,312 | 90,059 | 86,144 | 82,228 | 90,059 | 82,228 | 86,144 | 86,144 | 82,228 | 1,014,146 | 8.1% |
| Depreciation | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 4,205 | 50,462 | 0.4% |
| Office Exp | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 | 0.5% |
| Legal and Accounting | 5,000 | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 10,000 | 5,000 | 5,000 | 5,000 | 85,000 | 0.7% |
| Dues and Subscriptions | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 2,500 | 2,500 | 10,389 | 61,556 | 0.5% |
| Contribution | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Penalty Fees | - | - | - | - | - | - | - | - | - | - | - | - | - | 0.0% |
| Interest Exp | 5,894 | 5,881 | 5,868 | 5,855 | 5,843 | 5,830 | 5,817 | 5,804 | 5,791 | 5,778 | 5,765 | 5,751 | 69,876 | 0.6% |
| Bank Charges | 8,873 | 8,656 | 9,523 | 9,470 | 8,023 | 8,322 | 8,284 | 6,843 | 8,011 | 8,348 | 8,310 | 8,538 | 101,199 | 0.8% |
| Bad Debt Expense | | | | | | 15,625 | | | | | | 15,625 | 31,250 | 0.3% |
| Management Fees | | | | | | | | | | | | | - | 0.0% |
| **Total G&A Expense** | 113,700 | 109,555 | 130,045 | 130,343 | 120,630 | 140,514 | 113,034 | 119,411 | 125,624 | 116,974 | 116,923 | 136,737 | 1,473,489 | 11.8% |
| **Total Operating Expense** | 277,699 | 237,862 | 312,305 | 265,238 | 294,493 | 282,651 | 242,473 | 243,048 | 299,089 | 290,389 | 272,888 | 285,546 | 3,303,682 | 26.4% |
| Operating Income/(Loss) | 176,252 | 192,100 | 196,945 | 223,401 | 21,880 | 74,782 | 95,090 | (72,964) | 40,293 | 19,885 | 92,921 | 71,465 | 1,132,050 | 9.1% |
| Net Income Before Taxes/(Loss) | 176,252 | 192,100 | 196,945 | 223,401 | 21,880 | 74,782 | 95,090 | (72,964) | 40,293 | 19,885 | 92,921 | 71,465 | 1,132,050 | 9.1% |
| Fed Income Tax | | | | | | | | | | | | 237,731 | 237,731 | 1.9% |
| ST Income Tax | | | | | | | | | | | | 28,301 | 28,301 | 0.2% |
| **Total Income Taxes** | - | - | - | - | - | - | - | - | - | - | - | 266,032 | 266,032 | 2.1% |
| **Total Income Tax** | - | - | - | - | - | - | - | - | - | - | - | 266,032 | 266,032 | 2.1% |
| **Net Income/(Loss)** | 176,252 | 192,100 | 196,945 | 223,401 | 21,880 | 74,782 | 95,090 | (72,964) | 40,293 | 19,885 | 92,921 | (194,567) | 866,018 | 6.9% |
| **EBITDA** | 199,636 | 215,470 | 220,303 | 246,746 | 45,212 | 98,101 | 118,396 | (49,671) | 63,573 | 43,152 | 116,175 | 94,705 | 1,411,797 | 11.3% |

*note: 2021B includes $180,000 in consulting fees*

**UCS Cash Flow Bridge**

| | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **EBITDA** | 199,636 | 215,470 | 220,303 | 246,746 | 45,212 | 98,101 | 118,396 | (49,671) | 63,573 | 43,152 | 116,175 | 94,705 | 1,411,797 | |
| (-) Federal Income Tax Reserve | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 19,811 | 237,731 | |
| (-) State Income Tax Reserve | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 2,358 | 28,301 | |
| (-) Aquesta Operating Loans Payment | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 5,413 | 64,954 | |
| (-) IRS Payment Plan / Downpayment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | - | |
| (-) NC Payment Plan / Downpayment | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 3,538 | 42,453 | |
| (-) CA Payment Plan / Downpayment | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 2,058 | 24,695 | |
| **Net Cash Flow Available for Plan Payments** | 166,458 | 182,292 | 187,125 | 213,568 | 12,034 | 64,923 | 85,219 | (82,849) | 30,395 | 9,974 | 82,997 | 61,528 | 1,013,663 | |
| **CASH FLOW SWEEP** | | | | | | | | | | | | | | |
| Cash, BB | 690,523 | 858,728 | 1,042,768 | 1,231,640 | 1,446,956 | 1,460,737 | 1,527,408 | 1,614,374 | 1,533,272 | 1,565,415 | 1,577,136 | 1,661,881 | | |
| Net Cash Flow (+/-) | 166,458 | 182,292 | 187,125 | 213,568 | 12,034 | 64,923 | 85,219 | (82,849) | 30,395 | 9,974 | 82,997 | 61,528 | | |
| Cash Flow from SFP, NC LLC | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | 1,748 | (19,223) | | |
| Cash Flow from Rounders Pit Foam, LLC | | | | | | | | | | | | | | |
| Quarterly Cash Sweep - BK Plan | | | | | | | | | | | | - | | |
| **Cash, EB** | 858,728 | 1,042,768 | 1,231,640 | 1,446,956 | 1,460,737 | 1,527,408 | 1,614,374 | 1,533,272 | 1,565,415 | 1,577,136 | 1,661,881 | 1,704,186 | | |
| Min Cash Balance | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | 425,000 | | | |

**Total Unsecured - Critical A/P Balance**

| Unsecured Critical Vendors Paydown | Jan-23 | Feb-23 | Mar-23 | Apr-23 | May-23 | Jun-23 | Jul-23 | Aug-23 | Sep-23 | Oct-23 | Nov-23 | Dec-23 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BB | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | | |
| Paydown | - | - | - | - | - | - | - | - | - | - | - | - | | |
| **EB** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | **0** | | |

| | Exhibit 1B - Key Assumptions |
|---|---|
| 1 | Total Revenue: $11.5m for 2021, $12.0m for 2022, $12.5m for 2023 |
| 2 | Materials: 30.0% of sales |
| 3 | Direct Labor: According to current payroll schedule and adjusted for net accrual days, with 3% increase each year |
| 4 | Freight In: 1.0% of Sales |
| 5 | Outside Processing: 0.1% of Sales |
| 6 | Production Supplies: 2.0% of Sales |
| 7 | Insurance covers property, liability,  health, dental, vision, and life, net of employee contributions, and net of affiliate reimbursements in July and August |
| 8 | Utilities includes electricity, propane, alarm, and water |
| 9 | Rent: Estimated monthly payment per proposed lease |
| 10 | Lease Expense includes factory equipment leases and office equipment leases |
| 11 | Factory Expense includes waste removal, janitorial supplies, water inspection services, and lanscaping |
| 12 | Installations: 0.1% of Sales |
| 13 | Freight Out: 2.0% of Sales |
| 14 | Auto Expense includes sprinter van lease, car allowance for direct sales reps, employee travel allocation, including gas, car rentals, and tolls/parking |
| 15 | Commissions: 0.5% of Sales |
| 16 | Computer Expense includes monthly server cost, web hosting fees, outsourced IT provider services, and computer maintenance |
| 17 | Advertising: $267,000 for the Year |
| 18 | Promotional: $60k for the Year |
| 19 | Salaries: S&M and G&A reflect Post-Restructuring levels, with 3% increase each year for non-insider employees |
| 20 | Legal and Accounting normalized at $85k per year, 2021 includes 6 months of consulting fees at $30k per month |
| 21 | Dues and Subsciptions includes subscriptions to construction bidding platform, CRM platform, and digital marketing platform |
| 22 | Interest Expense includes estimated interest payment to Aquesta, NC payment plan, and CA payment plan |
| 23 | Bank Charges includes general bank charges, credit card fees and payroll processing fees |
| 24 | Bad Debt Expense estimated at 0.25% of Net Sales |
| 25 | Taxes: 21% Federal Tax Rate, and 2.5% NC State Income Tax Rate, reserved monthly |
| 26 | Rounders and SFP are assumed to have break-even cash flow for this analysis |
| 27 | **Cash Flow Bridge items include:** |
| | a) monthly payment to Aquesta |
| | b) NC payment plan on remaining past due taxes, termed out 5 years at 3.0% interest |
| | c) CA payment plan on past due taxes, termed out 5 years at 3.0% interest |
| | d) income tax reserve |

# EXHIBIT 2

# LIQUIDATION ANALYSIS

| United Canvas & Sling, Inc. - Exhibit 2 | | | | | |
|---|---|---|---|---|---|
| **Effective Date** | | | October 30, 2020 | | |
| **Assets** | **Gross Amount** | **% Realizable** | **Amount Realizable** | | |
| Net Cash | 761,223 | 100% | 761,223 | | |
| Net AR < 90 Days Outstanding | 928,849 | 80% | 743,079 | | |
| Net AR > 90 Days Outstanding | 88,433 | 0% | 0 | | |
| Deposit - FSA Account | 2,500 | 100% | 2,500 | | |
| Inventory (as of 9/30/2020) | | | | | |
| Raw Materials - Sewing | 251,109 | 25% | 62,777 | | |
| Raw Materials - Metals | 624,927 | 25% | 156,232 | | |
| Buy/Sells | 39,695 | 50% | 19,848 | | |
| Finished Goods | 375,000 | 50% | 187,500 | | |
| Fixed Assets - NFLV | N/A | N/A | 783,800 | **(FN 1)** | *Crestmark Appraisal* |
| Automobile | 26,985 | 80% | 21,588 | | |
| **Total Realizable Assets - UCS** | | | **2,738,547** | **(A)** | |
| Secured Debt - UCS Loans Principal Balance | | | (1,194,698) | **(X)** | |
| **Net Assets - UCS** | | | **1,543,849** | | |
| **Rounders Pit Foam LLC** | | | | | |
| Net Cash | 7,625 | 100% | 7,625 | | |
| Net AR < 90 Days Outstanding | 0 | 90% | 0 | | |
| Net AR > 90 Days Outstanding | 1,000 | 0% | 0 | | |
| Inventory | | | | | |
| Raw Materials | 1,299 | 25% | 325 | | |
| Buy/Sells | 681 | 50% | 340 | | |
| Finished Goods | 15,143 | 50% | 7,571 | | |
| Machinery and Equipment | 6,000 | 50% | 3,000 | | |
| **Total Realizable Assets - Rounders** | | | **18,861** | **(B)** | |
| Secured Debt - Rounders | | | 0 | **(Y)** | |
| **Net Assets - Rounders** | | | **18,861** | | |
| **Schwartz Family Properties NC, LLC** | | | | | |
| Net Cash | 50 | 100% | 50 | | |
| Rent Receivable | 336,539 | 0% | 0 | | |
| Fixed Assets | | | | | |
| Property - 511 Hoffman Road | 2,100,000 | | | **(FN 2)** | *BPO 5/15/20* |
| Less: | | | | | |
| Deferred Maintenance | (364,580) | | | | |
| Broker Fees - 6.0% of Sale Price | (104,125) | | | | |
| Carrying Costs - 2 Years | (207,828) | | | | |
| Closing Costs | (20,000) | | | | |
| Net Proceeds from Sale of Building | 1,403,467 | | 1,403,467 | | |
| **Total Realizable Assets - SFP NC LLC** | | | **1,403,517** | **(C)** | |
| Secured Debt - Property Mortgage Principal Balance | | | (3,625,061) | **(Z)** | |
| **Net Assets - SFP NC, LLC** | | | **(2,221,545)** | | |

| United Canvas & Sling, Inc. -Exhibit 2 | | |
|---|---|---|
| **Effective Date** | October 30, 2020 | |

| **Liquidation Summary** | | |
|---|---|---|
| Total Realizable Assets - UCS, Rounders, SFP | 4,160,925 | **(A) + (B) + (C)** |
| | | |
| **Estimated Liquidaiton Costs** | | |
| Trustee's Commission | | |
| 25% of first $5,000 | 1,250 | |
| 10% of next $5,000 to $50,000 | 4,500 | |
| 5% of next $50,000 to $1,000,000 | 50,000 | |
| 3% of remaining balance | 93,178 | |
| Total Trustee's Commission | 148,928 | |
| | | |
| Additional Liquidation/Collection Costs | 43,459 | **(FN 3)**   10% fee inventory liquidation |
| | | |
| **Total Estimated Liquidation Costs** | **192,387** | |
| | | |
| **Total Estimated Proceeds Available** | **3,968,538** | |
| **After Liquidation Costs** | | |
| | | |
| Total Secured Debt  - UCS, Rounders, SFP | (4,819,759) | **(X) + (Y) + (Z)** |
| | | |
| **Total Estimated Net Proceeds Available** | **(851,221)** | |
| **After Secured Debt is Paid** | | |
| | | |
| **Net Available to Unsecured Creditors** | **0** | |

| **2 Years Carrying Costs for Real Estate** | |
|---|---|
| **Property Tax** | **42,000** |
| **Insurance** | **98,388** |
| **Lawn Maint.** | **5,760** |
| **Utilities (Sprinklers, Electricity, Propane)** | **61,680** |
| **Total** | **207,828** |

# EXHIBIT 3

# CRITICAL VENDOR AND SERVICE PROVIDER LIST

United Canvas & Sling, Inc. - Exhibit 3

**CRITICAL VENDOR & SERVICE PROVIDER CLAIMS - UCS**

| | Amount |
|---|---|
| CAPITOL FOAM PRODUCTS | 369,888.55 |
| MCGUIREWOODS LLP | 121,363.92 |
| ALSTON & BIRD LLP | 89,770.21 |
| VALUE VINYLS | 77,675.75 |
| HIGHLAND FOAM, INC. | 63,563.48 |
| SEATTLE TEXTILES | 47,235.90 |
| AEGIS LOGISTICS GROUP | 31,790.56 |
| SAIA | 31,288.91 |
| POTTER & COMPANY, P.A. | 29,660.00 |
| PALZIV NORTH AMERICA | 13,241.68 |
| USA TEAM HANDBALL | 12,800.00 |
| SENTRY INSURANCE | 11,406.46 |
| NCDEQ | 9,683.68 |
| USTFCCCA | 9,050.00 |
| CRC MACHINE & FABRICATION | 9,028.80 |
| WM. C. REYNOLDS CO., INC. | 9,000.00 |
| R & L CARRIERS, INC | 8,923.64 |
| MCMASTER-CARR SUPPLY CO. | 8,796.92 |
| MOORE & VAN ALLEN, PLLC | 8,493.25 |
| JOHNSON CONTROLS | 7,909.71 |
| UFP SALISBURY,LLC | 7,860.51 |
| LINK COLOR N.A., INC. | 7,392.68 |
| SABIC INNOVATIVE PLASTICS | 6,796.80 |
| STACY DRAGILA | 6,556.00 |
| ALLIED CASTER & EQUIPMENT CO. | 6,304.74 |
| STAR EXTRUDED SHAPES INC | 6,285.49 |
| VALCO/VALLEY TOOL & DIE, INC. | 5,702.02 |
| MICHAEL CHAPPELL | 5,593.24 |
| INET45 BUSINESS SOLUTIONS | 4,727.08 |
| OLYMPIC FOREST PRODUCTS | 4,500.00 |
| APTEAN | 4,405.48 |
| PIEDMONT CORRUGATED SPECIALTY CO? | 3,883.54 |
| FRANKFURT KURNIT KLEIN & SELZ PC | 3,860.00 |
| DUNLAP INDUSTRIES, INC. | 3,442.25 |
| QYCELL CORPORATION | 2,977.70 |
| MIDWEST SPECIALITIES INC/FLEXARM/FLEXCNC | 2,949.86 |
| LEWIS SYSTEMS & SERVICE, INC. | 2,865.24 |
| INFINISOURCE | 2,260.00 |
| PITNEY BOWES GLOBAL FINANCIAL SERVICES LLC | 1,879.47 |
| P3 COST ANALYSTS | 1,716.39 |
| THE LOCAL GOVERNMENT PURCHASING COOPERATIVE | 1,456.24 |
| DELL BUSINESS CREDIT | 1,343.94 |
| EVERYPOINT LOGISTICS SOLUTIONS | 1,295.00 |
| KEYSTONE MANUFACTURING & SUPPLY CO. | 1,203.61 |
| BLOCK DIVISION INC | 1,010.50 |
| SAFETY-KLEEN SYSTEMS, INC | 953.57 |
| CAVALIER INC | 926.72 |
| RODECO COMPANY | 904.00 |
| RED CLASSIC | 750.00 |
| SPARCON INC. | 750.00 |
| KONECRANES | 658.05 |
| PIEDMONT MACHINE & MANUFAACTURING | 378.00 |
| MORAN REEVES & CONN | 325.00 |
| CRITICAL TOOL | 192.49 |
| R.S. HUGHES | 173.00 |
| AAA GARAGE DOORS | 170.00 |
| SABA ADHESIVES & SEALANTS | 143.68 |
| QUALITY FASTENERS,INC. | 93.50 |
| **TOTAL - UCS** | **1,075,257.21** |

United Canvas & Sling, Inc. - Exhibit 3

**CRITICAL VENDOR & SERVICE PROVIDER CLAIMS - Rounders**

|  | Amount |
|---|---|
| ANA YILIAN MONGE | 6,373.50 |
| POTTER & COMPANY, P.A. | 3,500.00 |
| CAPITAL FOAM PRODUCTS INC | 2,078.85 |
| FRANKFURT KURNIT KLEIN + SELZ | 938.00 |
| R & L CARRIERS | 918.52 |
| **TOTAL - Rounders** | **13,808.87** |
|  |  |

**CRITICAL VENDOR & SERVICE PROVIDER CLAIMS - SFP**

|  | Amount |
|---|---|
| SENTRY INSURANCE | 49,194.00 |
| POTTER & COMPANY, P.A. | 3,150.00 |
| **TOTAL - SFP** | **52,344.00** |