FILED & JUDGMENT ENTERED
Steven T. Salata

January 19 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **UNITED CANVAS & SLING, INC.,** *et al.* | ) | Case No. 20-30781 |
| | ) | Jointly Administered[1] |
| | ) | |
| Debtors. | ) | |

**ORDER CONFIRMING AMENDED JOINT PLAN OF REORGANIZATION**

This matter came before the Court with respect to confirmation of the *Amended Joint Plan of Reorganization* dated December 4, 2020 (the "Joint Plan")[2] of United Canvas & Sling, Inc. ("UCS"), Rounders Pit Foam, LLC ("RPF"), and Schwartz Family Properties North Carolina LLC ("SFP," and together with UCS and RPF, the "Debtors"), (Doc. 160), as modified by the *Modification of Plan* dated January 7, 2021, (Doc. 184), (the "Plan Modification"), and the *Modification of Plan* dated January 11, 2021, (Doc. 187), (the "Second Plan Modification," which shall be referred to collectively with the Joint Plan and the Plan Modification as, the "Joint Plan"); the Court having held a joint hearing on January 12, 2021 (the "Hearing") to consider

---

[1] The following debtors' cases are being jointly administered: United Canvas & Sling, Inc. (Case No. 20-30781), Schwartz Family Properties North Carolina, LLC (Case No. 20-30782), and Rounders Pit Foam, LLC (Case No. 20-30783).
[2] All capitalized terms not otherwise defined herein shall have the meanings set forth in Joint Plan.

MWH: 10725.001; 00024328.2

(1) final approval of the *Disclosure Statement Regarding Amended Joint Plan of Reorganization* dated December 4, 2020 (the "Disclosure Statement") related to the Joint Plan, (Doc. 160), (2) confirmation of the Joint Plan, (3) the *Limited Objection to Debtor Amended Plan* filed by Balboa Capital Corp. (the "Balboa Objection"), (Doc. 178), and (4) the *United States of America's Limited Objection to Confirmation of Amended Chapter 11 Plan* filed by the United States of America on behalf of the Internal Revenue Service (the "IRS Objection"), (Doc. 181); the Court having heard and considered: (a) the arguments of counsel in support of confirmation of the Joint Plan and approval of the Disclosure Statement; (b) all testimony submitted or offered and evidence admitted at the Hearing and in the Bankruptcy Case to date; (c) the *Report of Voting on Amended Joint Plan of Reorganization* (the "Ballot Report"), (Doc. 185), and (d) the terms of the Joint Plan and the Disclosure Statement; the Court finding that: (i) approval of the Disclosure Statement and confirmation of the Joint Plan is warranted and is in the best interests of Debtors, their estates, their creditors, and all parties in interest, and (ii) notice of the Hearing was sufficient under the circumstances; the Court being fully advised in the premises, after due and proper notice and hearing, based on the pleadings and the record in this case, the Ballot Report, the evidence presented, the arguments, representations and statements of counsel, the stipulations of the parties announced on the record at the Hearing, all other matters brought before the Court, and for good cause shown, the Court finds that: (x) the Disclosure Statement is due to be finally approved pursuant to Bankruptcy Code section 1125(a), and (y) the Joint Plan is due to be confirmed pursuant to Bankruptcy Code section 1129.

Based on the foregoing, the Court hereby finds, determines, and concludes as follows:[3]

---

[3] This Confirmation Order constitutes this Court's findings of fact and conclusions of law under FED. R. CIV. P. 52, as made applicable by FED. R. BANKR. P. 7052 and 9014. Any and all findings of fact shall constitute findings of fact even if they are stated as conclusions of law, and any and all conclusions of law shall constitute conclusions of law even if they are stated as findings of fact.

A. Confirmation of the Joint Plan and approval of the Disclosure Statement constitute core proceedings under 28 U.S.C. § 157(b)(2), over which this Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. § 1334.

B. On August 25, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are managing their assets and financial affairs as debtors in possession. Michael Martinez, Esq. is the Subchapter V Trustee for debtor RPF.

C. By Order dated December 16, 2020, [Doc. 162], (the "Conditional Approval Order"), the Court approved, on a conditional basis, the Disclosure Statement as containing adequate information under Bankruptcy Code section 1125(a). Pursuant to the Conditional Approval Order, and in compliance with Rule 3017(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors transmitted to the Bankruptcy Administrator, all creditors entitled to vote on the Joint Plan, and all parties requesting notice, copies of the Joint Plan, the Disclosure Statement, the appropriate ballot to accept or reject the Joint Plan, and the Conditional Approval Order, which provided notice of the confirmation hearing (the "Confirmation Hearing Materials"). The Court approved the Confirmation Hearing Materials as including good and sufficient notice of the hearing on confirmation of the Joint Plan and the time within which parties must file acceptances, rejections and objections to the Joint Plan. The Debtors transmitted the Confirmation Hearing Materials to all creditors and parties in interest. The notice provided was sufficient under Bankruptcy Rules 2002 and 3017. Good and sufficient notice has been given of the deadline for filing ballots accepting or rejecting the Joint Plan, the deadline for filing objections to confirmation of the Joint Plan, and the hearing scheduled to consider confirmation of the Joint Plan. No further notice is due or required.

D.   On January 7, 2021, the Debtors filed the Plan Modification, (Doc. 184), pursuant to which Section 3.11 of the Joint Plan was amended and restated regarding the treatment of the Class 11 Allowed Secured Claim of Mercedes Benz Financial Services. The Joint Plan, together with the modifications contained in the Plan Modification, shall constitute the Joint Plan pursuant to Bankruptcy Code section 1127(a).

E.   On January 11, 2021, the Debtors filed the Second Plan Modification, (Doc. 187), pursuant to which Section 3.3.2 of the Joint Plan was amended and restated regarding the treatment of the Class 3 Allowed Secured Claim of Marlin Leasing. The Joint Plan, together with the modifications contained in the Second Plan Modification, shall constitute the Joint Plan pursuant to Bankruptcy Code section 1127(a).

F.   During the Hearing, the Debtors announced a resolution of the IRS Objection. With respect to the IRS Objection, the IRS withdrew its objection after the Debtors clarified that Section 9.8 of the Joint Plan was not intended to release nondebtor parties from trust fund recovery penalty liability, if any.

G.   During the Hearing, the Debtors announced a resolution of the Balboa Objection and a stipulation regarding Balboa Capital's treatment under the Joint Plan. The Debtors and Balboa Capital agreed to the following resolution of the Balboa Objection and Balboa Capital's consensual treatment pursuant to Section 3.5 of the Joint Plan, which shall constitute a modification of the Debtors' Joint Plan. The Debtors and Balboa Capital agreed to the following: (a) Balboa Capital withdrew the Balboa Objection and agreed to change its vote to an acceptance of the Joint Plan in exchange for the following Joint Plan treatment expressly conditioned upon the terms set forth herein; (b) debtor UCS will pay Balboa Capital the six (6) remaining quarterly payments of $2,560.85/quarter commencing on February 6, 2021 in full

satisfaction of all obligations under the Contract with account number ending 004 (the six payments shall be due on February 6, 2021, May 6, 2021, August 6, 2021, November 6, 2021, February 6, 2022, and May 6, 2022); (c) Balboa Capital consents to non-debtor affiliate New Nevada Plastics LLC ("NNP") paying the remaining payments at the non-default rate due under the Contracts with account numbers ending 000 & 001 to Balboa Capital, without prejudice to any of Balboa Capital's rights or claims against debtor UCS in the event of a post-confirmation default by NNP and debtor UCS reserves all defenses to any rights or claims asserted by Balboa Capital in the event of a post-confirmation default by NNP; (d) neither the Debtors nor NNP will pay attorney's fees to Balboa Capital absent an uncured post-confirmation default; (e) NNP will complete a Balboa Capital lease application and execute a cross corporate guaranty of the Debtor's obligations for the Contracts with account numbers ending 000 & 001, and payments on these two Contracts must be made by ACH draft; (f) Balboa Capital will be provided with proof of insurance in place for the collateral on all three Contracts with Balboa Capital named as loss payee; (g) With respect to Contracts with account numbers ending 000 & 001, the Debtors or NNP will provide Balboa Capital with pictures of the equipment subject to those two Contracts; (h) Balboa Capital shall retain its liens and all rights in the event of an uncured default on all three Contracts; (i) UCS or NNP, as applicable, will get one (1) notice of default with ten (10) days to cure; upon an uncured default or a second default, regardless of whether it is cured, Balboa Capital is entitled to assert its state law rights including repossession of the collateral; and (j) with respect to Contracts with account numbers ending 000 and 001, payments in the respective amounts of $7,683.77 and $2,227.60, shall continue to be due and paid on their regularly scheduled dates until said Contract is paid in full.

H. Article 3 of the Joint Plan divides Creditors and holders of Equity Interests into twelve (12) classes. Voting by class occurred as follows:

1. Class 1 consists of Allowed Secured Tax Claims. Class 1 is impaired under the Joint Plan. No holders of Class 1 Claims timely voted on the Joint Plan. Accordingly, there are no members in Class 1 of the Joint Plan or, alternatively, the holders of Allowed Class 1 Claims are deemed to have accepted the Joint Plan.

2. Class 2 consists of the Allowed Secured Claims of Aquesta Bank. Class 2 is impaired under the Joint Plan. Of the creditors holding Class 2 Claims who voted on the Joint Plan, 100% in number and 100% in amount accepted the Joint Plan. Accordingly, Class 2 has accepted the Joint Plan.

3. Class 3 consists of the Allowed Secured Claim of Marlin Leasing. Class 3 is impaired under the Joint Plan. No holders of Class 3 Claims timely voted on the Joint Plan. Accordingly, there are no members in Class 3 of the Joint Plan or, alternatively, the holders of Allowed Class 3 Claims are deemed to have accepted the Joint Plan.

4. Class 4 consists of the Allowed Secured Claim of CIT Bank. Class 4 is impaired under the Joint Plan. No holders of Class 4 Claims timely voted on the Joint Plan. Accordingly, there are no members in Class 4 of the Joint Plan or, alternatively, the holders of Allowed Class 4 Claims are deemed to have accepted the Joint Plan.

5. Class 5 consists of the Allowed Secured Claim of Balboa Capital Corp. Class 5 is impaired under the Joint Plan. Of the creditors holding Class 5 Claims who voted on

the Joint Plan, 100% in number and 100% in amount accepted the Joint Plan. Accordingly, Class 5 has accepted the Joint Plan.[4]

6. Class 6 consists of the Allowed Secured Claim of TCF Equipment Finance. Class 6 is impaired under the Joint Plan. No holders of Class 6 Claims timely voted on the Joint Plan. Accordingly, there are no members in Class 6 of the Joint Plan or, alternatively, the holders of Allowed Class 6 Claims are deemed to have accepted the Joint Plan.

7. Class 7 consists of all Allowed General Unsecured Claims. Class 7 is impaired under the Joint Plan. Of the creditors holding Class 7 Claims who voted on the Joint Plan, 100% in number and 100% in amount accepted the Joint Plan. Accordingly, Class 7 has accepted the Joint Plan.

8. Class 8 consists of all Allowed Insider Claims. Class 8 is impaired under the Joint Plan. Of the creditors holding Class 8 Claims who voted on the Joint Plan, 100% in number and 100% in amount accepted the Joint Plan. Accordingly, Class 8 has accepted the Joint Plan.

9. Class 9 consists of all Allowed Intercompany Claims. Class 9 is impaired under the Joint Plan. The Debtors, the Joint Plan proponents, are the holders of Intercompany Claims and are deemed to accept the Joint Plan. Accordingly, Class 9 has accepted the Joint Plan.

10. Class 10 consists of all Employee Claims. Class 10 is impaired under the Joint Plan. Of the creditors holding Class 10 Claims who voted on the Joint Plan, 100% in

---

[4] Balboa Capital Corp. initially cast a ballot rejecting the Joint Plan and objected to confirmation of the Joint Plan. As set forth in Section G above, Balboa Capital changed its vote and accepted the Joint Plan in exchange for the agreed Joint Plan treatment identified in Section G above.

number and 100% in amount accepted the Joint Plan. Accordingly, Class 10 has accepted the Joint Plan.

11. Class 11 consists of the Allowed Secured Claim of Mercedes Benz Financial Services. Class 11 is impaired under the Joint Plan. Of the creditors holding Class 11 Claims who voted on the Joint Plan, 100% in number and 100% in amount accepted the Joint Plan. Accordingly, Class 11 has accepted the Joint Plan.

12. Class 12 consists of all Equity Interests in the Debtors. Class 12 is impaired under the Joint Plan. Of the holders of interests holding Class 12 Equity Interests who voted on the Joint Plan, 100% in number and 100% in amount accepted the Joint Plan. Accordingly, Class 12 has accepted the Joint Plan.

I. The Joint Plan, including the plan modifications, complies with the applicable provisions of the Bankruptcy Code.

J. The Debtors, the proponents of the Joint Plan, have complied with the applicable provisions of the Bankruptcy Code.

K. The Joint Plan has been proposed in good faith and not by any means forbidden by law.

L. Any payment made or to be made by Debtors for services or costs and expenses in or in connection with Debtors' Chapter 11 Cases, or in connection with the Joint Plan and incident to Debtors' Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable.

M. The Debtors have: (i) disclosed the identity and affiliations of the individuals proposed to serve, after confirmation of the Joint Plan, as a director, officer, or voting trustee of

the Debtors, and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy.

N. The Debtors have disclosed the identity of any insider that will be employed or retained by the Reorganized Debtors, and the nature of any compensation for such insider.

O. The Joint Plan does not provide for any rate change that would require approval of a government regulatory commission with jurisdiction over the rates of the Debtors.

P. With respect to each impaired class of claims or interests under the Joint Plan, each holder of a claim or interest of such class (i) has accepted the Joint Plan; or (ii) will receive or retain under the Joint Plan on account of such claim or interest property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

Q. With respect to each class of claims or interests, such class has accepted the Joint Plan, or such class is not impaired under the Joint Plan.

R. At least one class of claims that is impaired under the Joint Plan has accepted the Joint Plan, determined without including any acceptance of the Joint Plan by an insider.

S. Unless the holder of an Allowed Claim has agreed otherwise, the Joint Plan provides for the treatment of priority claims: (i) as set forth in Section 1129(a)(9)(A)-(D) of the Bankruptcy Code, or (ii) there are no claimants with the type of claims set forth in Section 1129(a)(9)(A)-(D) of the Bankruptcy Code.

T. Confirmation of the Joint Plan is not likely to be followed by liquidation, or the need for further financial reorganization of Debtors under the Joint Plan, except to the extent liquidation is proposed in the Joint Plan.

U. All fees payable under 28 U.S.C. § 1930, as determined by the Court at the hearing on confirmation of the Joint Plan, have been paid or the Joint Plan provides for the payment of all such fees on the Effective Date or when due.

V. Bankruptcy Code sections 1114, 1129(a)(14), 1129 (a)(15), and 1129(c) do not apply to the Debtors.

W. Pursuant to the Confirmation Order and the Joint Plan, all transfers of property have been or will be made in accordance with applicable provisions of nonbankruptcy law that govern the transfer of property that is not a moneyed, business, or commercial corporation or trust.

X. The Joint Plan was not proposed for the purpose of avoiding taxes. Accordingly, the Joint Plan does not violate Section 1129(d) of the Bankruptcy Code and is due to be confirmed.

Y. Pursuant to Section 506(a) of the Bankruptcy Code, the value of the collateral securing the secured claim of TCF Equipment Finance ("TCF") in Class 6 of the Joint Plan is $5,000.

Z. The proposed settlement set forth in the Plan Term Sheet is reasonable, fair and equitable. The proposed settlement should be approved because it: (i) resolves potential litigation and appeals with Aquesta Bank over a contested cramdown plan, (ii) favorably avoids the uncertainty, costs and delay related to litigating the same, (iii) provides for $150,000 of working capital to be paid to debtor UCS, and (iv) paves the way for the Debtors to emerge from bankruptcy and to make meaningful distributions to pre-petition creditors.

NOW, THEREFORE, based upon the foregoing findings of fact and conclusions of law, the representations and stipulations of the parties, and the record of the confirmation hearing,

which is incorporated into this Confirmation Order by reference, it is hereby **ORDERED, ADJUDGED and DECREED**, as follows:

1. Pursuant to Bankruptcy Code section 1125, the Disclosure Statement contains adequate information and the procedures used to solicit votes in favor of the Joint Plan conform to all applicable requirements of the Bankruptcy Code, and therefore the Disclosure Statement is approved on a final basis in all respects.

2. The Joint Plan, as modified herein, is hereby CONFIRMED, pursuant to Section 1129(a) of the Bankruptcy Code. All objections to the Joint Plan were either withdrawn, resolved or are hereby overruled. This Order incorporates, approves, ratifies and authorizes each term and condition of the Joint Plan and the transactions contemplated therein. The Joint Plan, as modified by the Plan Modification and the Second Plan Modification, and as set forth herein, is the Joint Plan under Bankruptcy Code section 1127(a). The terms of the Joint Plan, the Plan Modification, all exhibits thereto, and all other relevant and necessary documents, shall be effective and binding as of the Effective Date of the Joint Plan.

3. All modifications or amendments to the Joint Plan since the solicitation, as embodied in the form of the Plan Modification and the Second Plan Modification, or otherwise filed with the Court or disclosed in open Court at or prior to the Confirmation Hearing or set forth herein, are approved pursuant to Bankruptcy Code section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation.

4. The Plan Term Sheet is hereby approved pursuant to Federal Rule of Bankruptcy Procedure 9019.

5. This Court shall retain exclusive jurisdiction to interpret and enforce the provisions of the Joint Plan and this Order and for the purposes described in Article 12 of the Joint Plan in all respects.

6. The Debtors are hereby authorized and directed to take all such action and execute all such documents, agreements, assumptions, assignments, instruments, documents of title, and releases, as Debtors may deem necessary or appropriate in accordance with the Joint Plan to implement, effectuate, and consummate the Joint Plan. This Order shall constitute such authority as may be required and may be recorded in all applicable registries of deeds or similar repositories of public records. No further evidence of such authority or approval other than a certified copy of this Order shall be required or necessary.

7. The terms of the Joint Plan shall solely govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder. The classifications set forth on any Ballots tendered in connection with voting on the Joint Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Joint Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification or amount of such Claims under the Joint Plan for distribution purposes; (c) may not be relied upon by any holders of Claims as representing the actual classification of such Claims under the Joint Plan for distribution purposes; and (d) shall not bind the Debtors.

8. Pursuant to Section 2.2 of the Joint Plan, all requests for the allowance and payment of administrative expenses pursuant to Bankruptcy Code section 503(b) shall be filed within thirty (30) days from the date of the entry of this Order (the "<u>Administrative Claims Bar Date</u>"). Any Person that fails to file and serve a request for an Administrative Claim is hereby forever barred, estopped, and enjoined from asserting such claim against the Debtors, their

assets, or from participating in distributions under the Joint Plan on account thereof. The Administrative Claims Bar Date shall not apply to the fees and expenses of estate professionals, which are specifically addressed in decretal paragraph 9 below.

9. Pursuant to Section 2.2 of the Joint Plan, any estate professional seeking an allowance, pursuant to Bankruptcy Code sections 327, 328, 330, 331, 503(b), 507(a)(1) and/or 1103 of Bankruptcy Code, of interim and/or final compensation or reimbursement of expenses incurred on or before the date of the entry of this Order for professional services rendered to Debtors or in relation to these Chapter 11 Cases ("Professional Fees and Expenses") shall file an application for allowance of such Professional Fees and Expenses (an "Application"), not later than thirty (30) days from the entry of this Order (the "Professional Fee Bar Date"). The Professional Fee Bar Date shall not apply to fees and expenses of professionals incurred after the date of the entry of this Order.

10. The Debtors are authorized and directed to modify or amend any corporate governance documents or any other documents necessary or appropriate to effectuate the terms of the Joint Plan, without further Court approval. The Debtors are authorized to consummate the Joint Plan at any time after the entry of this Confirmation Order.

11. This Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof. Notwithstanding Bankruptcy Rules 3020(e), 6004(g) or 7062, or otherwise, immediately upon the entry of this Order, the terms of the Joint Plan and this Order shall be, and hereby are, immediately effective and enforceable and deemed binding upon Debtors, any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are Impaired under the Joint Plan or whether the holders of such Claims or Interests accepted, deemed to have accepted, rejected or deemed to have rejected the Joint Plan),

all Persons and entities that are party to or subject to the settlements, compromises, exculpations, and releases described in the Joint Plan or herein, each Person or entity acquiring property under the Joint Plan, and any and all non-debtor parties to executory contracts and unexpired leases with Debtors and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, of any of the foregoing.

12. The failure to reference or discuss any particular provision of the Joint Plan in this Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision in the Joint Plan.  To the extent that any inconsistency exists between the Joint Plan and this Order, the terms and conditions of this Order shall govern.  The failure specifically to include or to refer to any particular provision of the Joint Plan in this Order shall not diminish or impair the effectiveness of any such provision.

13. Pursuant to Bankruptcy Rule 2002(f)(7) and 3020(c) and as soon as reasonably practical, the Debtors shall give notice of the entry of this Order by serving a copy of this Order on all holders of Claims or Equity Interests and on such other parties in interest who were served with notice of the Hearing.

14. The interest rate to be paid to the holders of Allowed Priority Tax Claims and Allowed Secured Tax Claims classified in Sections 2.4 and 3.1 of the Joint Plan shall be the fixed rate of 3% *per annum*.

15. The Allowed Secured Claim of TCF Equipment Finance, as set forth in Class 6 of the Joint Plan, in the amount of $5,000.00 shall be paid with interest at a rate of 4.25% *per annum* for a period of sixty (60) months.  Since the monthly payments of $92.65 are *de minimis*

distributions under Section 6.3 of the Joint Plan, the Debtors are authorized to pay the Allowed Secured Claim of TCF Equipment Finance by making 20 equal quarterly installment payments of $277.95/quarter.

16.     In accordance with section 1146(a) of the Bankruptcy Code, no stamp tax (e.g., deed stamps) or similar tax may be charged in connection with the transfer of any assets (including specifically the sale and transfer of the real property owned by debtor SFP or, to the extent necessary, the sale of the operating assets of the Debtors after a payment default) by any register of deeds or other governmental entity.

17.     Except as otherwise expressly provided in this Order or in the Joint Plan, all persons or entities who have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim against the Debtors or the Estates, (ii) the enforcement, attachment, collection or recovery by any manner or means of any Judgment, award, decree or order against the Debtors or the Estates with respect to any such Claim, (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtors or the Estates or any property or interest therein that formerly was property of the Estates with respect to any such Claims, (iv) with respect to any Claims, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or the Estates or against the property or interests in property of any of them, (v) commencing or continuing in any manner any action or other proceeding of any kind against a customer of the Debtors to collect or recover on any Claim against the Debtors or the Estates and (vi) pursuing any Claim or Cause of Action released in the Joint Plan or the Plan Term Sheet.

18. To implement the releases given by the Debtors and their Estates pursuant to the terms of the Plan and the Plan Term Sheet, the Debtors, any subsequently appointed trustee, Creditors or any other party in interest shall be prohibited and enjoined from commencing or pursuing claims, demands, losses, liabilities, obligations, expenses, damages, judgments, executions and causes of action of any nature whatsoever, whether at law or in equity, either now accrued or hereafter maturing and whether known or unknown, whether future, nonpossessory, contingent, speculative or derivative, whether owned or controlled by the Debtors or that the Debtors have standing to pursue on behalf of the Estates or their Creditors against Aquesta Bank, the Estate of Jeffrey Schwartz, Iris Schwartz, Adam Schwartz, Lawrence Schwartz, Jason Schwartz, and Zachary Schwartz.

19. Pursuant to 11 U.S.C. §§105(a) and 1123(b)(3), and Section 7.6 of the Joint Plan, the Court hereby appoints ABTV Receivership Services, LLC ("ABTVRS") to serve as the Plan Administrator. In the role of Plan Administrator, ABTVRS shall serve as a court-appointed entity to oversee the operations of the Reorganized Debtors and their management and to monitor compliance with the Joint Plan. ABTVRS shall report to Aquesta Bank on a monthly basis regarding the Debtors' compliance with the Joint Plan as set forth in Section II. p. of the Plan Term Sheet. ABTVRS shall be compensated on an hourly rate basis as Plan Administrator at rates for timekeepers negotiated with the Reorganized Debtors, provided that such hourly rates shall not exceed $475 per hour.

20. Pursuant to Section 7.7 of the Joint Plan, Larry Schwartz is barred from acting as an officer or director of the Reorganized Debtors and shall not hold himself out as having any authority to bind the Reorganized Debtors. The officers and directors of the Reorganized Debtors may not delegate their power and duties as officers and directors to Larry Schwartz.

| | |
|---|---|
| *This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order.* | *United States Bankruptcy Court* |